1              UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NORTH CAROLINA
2                    WESTERN DIVISION

3

4    CELLECTIS S.A.,              )
                                  )
5                                 )
                  PLAINTIFF,      )
6                                 )
            VS                    ) CASE NO. 5:08-CV-119-H
7                                 )
                                  )
8    PRECISION BIOSCIENCES, INC., )
                                  )
9                 DEFENDANT.      )

10

11

12                      MOTION TO COMPEL / MOTION TO STAY

13                      JUNE 16, 2010

14                 HONORABLE DAVID W. DANIEL, PRESIDING

15

16   APPEARANCES:

17        MR. PAUL RICHTER
          KENYON & KENYON
18        ATTORNEYS AT LAW
          ONE BROADWAY
19        NEW YORK, NY   10004-1007
          (FOR THE PLAINTIFF)
20
          MR. RICHARD S. GRESALFI
21        KENYON & KENYON
          ATTORNEYS AT LAW
22        ONE BROADWAY
          NEW YORK, NY   10004-1007
23        (FOR THE PLAINTIFF)

24

25

```
1    APPEARANCES:  (CONT.)

2         MS. ANNE ELISE HEROLD LI
          KENYON & KENYON
3         ATTORNEYS AT LAW
          ONE BROADWAY
4         NEW YORK, NY   10004-1007
          (FOR THE PLAINTIFF)
5
          MR. JAMES L. GALE
6         SMITH, MOORE & LEATHERWOOD
          ATTORNEYS AT LAW
7         TWO HANNOVER SQUARE
          SUITE 2800
8         434 FAYETTEVILLE STREET
          RALEIGH, NC   27601
9         (FOR THE PLAINTIFF)

10        MR. DAVID BASSETT
          WILMERHALE
11        ATTORNEYS AT LAW
          60 STATE STREET
12        BOSTON, MA   02109
          (FOR THE DEFENDANT)
13
          MS. VINITA FERRERA
14        WILMERHALE
          ATTORNEYS AT LAW
15        60 STATE STREET
          BOSTON, MA   02109
16        (FOR THE DEFENDANT)

17        MR. ALLEN C. NUNNALLY
          WILMERHALE
18        ATTORNEYS AT LAW
          60 STATE STREET
19        BOSTON, MA   02109
          (FOR THE DEFENDANT)
20
          MR. ROBERT JOSEPH MORRIS
21        SMITH, ANDERSON, BLOUNT, DORSETT,
              MITCHELL & JERNIGAN, LLP
22        ATTORNEYS AT LAW
          2500 WACHOVIA CAPITOL CENTER
23        P. O. BOX 2611
          RALEIGH, NC   27602-2611
24        (FOR THE DEFENDANT)

25   SHARON K. KROEGER, COURT REPORTER
     MACHINE SHORTHAND REPORTER, COMPUTER AIDED TRANSCRIPTION
```

1          THE COURT:  GOOD MORNING, LADIES AND

2     GENTLEMEN.

3          MR. RICHTER:  GOOD MORNING, YOUR HONOR.

4          MR. BASSETT:  GOOD MORNING, YOUR HONOR.

5          THE COURT:  ALL RIGHT.  MS. BUNN, IF YOU WOULD

6     PLEASE CALL THE CELLECTIS VERSUS PRECISION CASE THE

7     MOTION HEARINGS.

8          THE CLERK:  THE COURT CALLS THE CASE OF

9     CELLECTIS VERSUS PRECISION BIOSCIENCES, INC., CASE NUMBER

10    5:08-CV-119-H.

11         THE COURT:  ALL RIGHT.  LADIES AND GENTLEMEN,

12    MY NAME IS MAGISTRATE JUDGE DAVID DANIEL.  THIS IS THE

13    FIRST TIME I HAVE HAD THE PLEASURE WITH MEETING WITH SOME

14    OF YOU.  THE LOCAL COUNSEL I KNOW.

15         AT THIS TIME, MR. GALE, I AM GOING TO ASK YOU

16    TO INTRODUCE WHO YOU HAVE WITH YOU ON THE BEHALF OF THE

17    PLAINTIFFS TODAY.

18         MR. GALE:  THANK YOU, YOUR HONOR.  I HAVE

19    RICHARD GRESALFI FROM KENYON AND KENYON.

20         MR. GRESALFI:  GOOD MORNING, YOUR HONOR.

21         MR. GALE:  THIS IS PAUL RICHTER.

22         MR. RICHTER:  GOOD MORNING, YOUR HONOR.

23         MR. GALE:  AND ANNE LI.

24         MS. LI:  GOOD MORNING, YOUR HONOR.

25         THE COURT:  GOOD MORNING, MS. LI.

1           MR. GALE:  AND THEN DAVID GOMEZ FROM OUR

2    OFFICE WHO IS NOT A LAWYER, BUT HE IS JUST RUNNING THE

3    TECHNOLOGY.

4           THE COURT:  ALL RIGHT.  VERY GOOD.  MR. GOMEZ,

5    YOU MAY BE THE MOST IMPORTANT PERSON HERE.  SO NICE TO

6    HAVE YOU.  PLEASE BE SEATED.

7           ALL RIGHT.  MR. MORRIS, WHO DO YOU HAVE?

8           MR. MORRIS:  GOOD MORNING, YOUR HONOR.  JOEY

9    MORRIS FROM THE SMITH, ANDERSON FIRM HERE IN RALEIGH, AND

10   WE HAVE WITH US TODAY DAVID BASSETT FROM WILMERHALE IN

11   NEW YORK, VINITA FERRERA AND ALLEN NUNNALLY, ALSO FROM

12   WILMERHALE IN BOSTON.

13          THE COURT:  VERY GOOD.  NICE TO HAVE YOU DOWN.

14   WE TURNED UP THE HEAT FOR ALL OF OUR OUT OF TOWN GUESTS

15   TO MAKE IT AS UNPLEASANT AS WE CAN FOR YOU.  BUT

16   ACTUALLY, IT'S A VERY NICE PLACE, BUT YOU HAVE CAUGHT IT

17   AT ITS VERY WORST.

18          WE ARE HERE TODAY AT MR. BASSETT OR WHO IS

19   PRESENTING ON BEHALF OF --

20          MR. MORRIS:  MR. BASSETT AND MS. FERRERA WILL

21   BE PRESENTING FOR PRECISION TODAY.

22          THE COURT:  MR. BASSETT AND MS. FERRERA, ON

23   YOUR MOTIONS TO COMPEL AND STAY THE PROCEEDINGS PENDING

24   THE RESOLUTION OF THE REEXAMINATION OF THE TWO PATENTS AT

25   ISSUE.  AS SUCH, YOU HAD REQUESTED THIS HEARING.  WE

1    LOOKED -- IT HAS BEEN SOME TIME SINCE THE MOTIONS WERE

2    FILED BASED ON THE PROCEDURAL HISTORY OF THE CASE.

3              I THOUGHT IT WOULD BE HELPFUL THAT TYPICALLY

4    WE WOULDN'T HOLD MOTION HEARINGS.  I THOUGHT IT WOULD BE

5    HELPFUL TO HAVE THAT TODAY.  THAT BEING SAID, IT IS YOUR

6    MOTIONS, AND TO SOME DEGREE, I AM GOING TO LET YOU GO

7    FORWARD ON THAT AND MAKE WHATEVER PRESENTATION YOU DEEM

8    APPROPRIATE, AND I HAVE GOT A FEW QUESTIONS FOR YOU AS

9    WELL AS FOR THE PLAINTIFFS AFTER THEY HAVE RESPONDED TO

10   YOUR PRESENTATION.

11             MR. BASSETT:  THANK YOU, YOUR HONOR.  IF IT --

12   I THINK OUR PREFERENCE WOULD BE TO FIRST ARGUE THE MOTION

13   TO STAY AND THEN THE MOTION TO COMPEL.

14             THE COURT:  I CAN UNDERSTAND WHY YOU WANT TO

15   DO THAT.

16             MR. BASSETT:  IF YOU DON'T WANT, IF THERE IS

17   NO NEED TO GET TO THE MOTION TO COMPEL AFTER HEARING THE

18   MOTION TO STAY, THAT WOULD BE FINE.

19             THE COURT:  I FELT LIKE THAT WOULD BE YOUR

20   POSITION.

21             MR. BASSETT:  YOUR HONOR, AGAIN, I AM DAVID

22   BASSETT FROM WILMERHALE HERE ON BEHALF OF THE DEFENDANT

23   PRECISION BIOSCIENCES.

24             THE MOST CRITICAL POINT TO NOTE AS WE APPEAR

25   HERE TODAY REGARDING THE MOTION TO STAY IS THAT EVERY

1    SINGLE CLAIM BEING ASSERTED BY CELLECTIS AGAINST

2    PRECISION IN THIS LITIGATION TODAY STANDS REJECTED BY THE

3    PATENT OFFICE.

4              AND IN RESPONSE TO THOSE REPEATED REJECTIONS

5    BY THE PATENT OFFICE, THE PATENTEE HAS ATTEMPTED TO MAKE

6    SUBSTANTIVE AMENDMENTS TO EACH OF THE CLAIMS CELLECTIS IS

7    ASSERTING AGAINST PRECISION IN THIS LITIGATION.

8              IN LIGHT OF THE NOW NEAR CERTAINTY THAT ALL OF

9    THE PATENT CLAIMS AT ISSUE IN THIS LITIGATION WILL EITHER

10   BE REJECTED BY THE PATENT OFFICE OR IN THE BEST CASE

11   SCENARIO FOR CELLECTIS WILL EMERGE FROM REEXAM WITH

12   SUBSTANTIVE AMENDMENTS, IT IS OUR POSITION THAT IT MAKES

13   LITTLE OR NO SENSE FOR THE PARTIES AND THIS COURT TO

14   INCUR THE COSTS AND INCONVENIENCE OF PROCEEDING WITH THIS

15   LITIGATION, OF COMPLETING FACT DISCOVERY, OF ARGUING AND

16   DECIDING CLAIM CONSTRUCTION, OF EXCHANGING THREE ROUNDS

17   OF EXPERT REPORTS, TAKING EXPERT DEPOSITIONS, BRIEFING,

18   ARGUING, AND DECIDING SUBSTANTIVE MOTIONS, DISPOSITIVE

19   MOTIONS, AND IMPANELING A JURY AND PREPARING FOR AND

20   PRESENTING A MULTI-WEEK TRIAL, ESPECIALLY WHEN ALL OF

21   THAT COST AND EFFORT THAT IS LIKELY TO BE RENDERED MOOT

22   BY THE REEXAM PROCESS THAT IS MOVING AHEAD IN THE PATENT

23   OFFICE WITH DISPATCH.

24              YOUR HONOR, THIS LITIGATION SHOULD BE STAYED.

25   BUT FIRST, PERHAPS A BRIEF BACKGROUND ON THE REEXAM

STATUS AS IT RELATES TO THIS MOTION.

AS THE COURT KNOWS, TWO PATENTS ARE AT ISSUE IN THIS LITIGATION -- THE '545 PATENT AND THE '605 PATENT. AND THE PATENT OFFICE HAS NOW ENTERED ACTIONS CLOSING PROSECUTION ON BOTH OF THOSE PATENTS, REJECTING EVERY SINGLE CLAIM THAT IS AT ISSUE IN THIS LITIGATION AS ANTICIPATED OR OBVIOUS IN LIGHT OF HIGHLY MATERIAL PRIOR ART THAT THE PATENTEE FAILED TO DISCLOSE TO THE PATENT OFFICE IN THE ORIGINAL PROSECUTIONS.

AND THE PATENT OFFICE HAS REJECTED EACH OF THOSE CLAIMS. EVEN IN THE FACE OF PROPOSED SUBSTANTIVE AMENDMENTS PROPOSED BY THE PATENTEE DESIGNED TO SALVAGE THE VALIDITY OF THOSE CLAIMS. AND EVERY INDICATION FROM THE PATENT OFFICE IS THAT THESE REJECTIONS WILL BE MAINTAINED GOING FORWARD.

NOW, CELLECTIS ARGUES TO THIS COURT THAT IT BELIEVES THAT THE PATENTEE SHOULD PREVAIL IN THE REEXAM PROCESS. AND I AM SURE IT DOES BELIEVE THAT. BUT TO DATE, YOUR HONOR, THAT BELIEF HAS ABSOLUTELY NO BASIS IN ANYTHING THAT HAS HAPPENED IN THE REEXAM PROCESS IN THE PATENT OFFICE WHERE EVERY SINGLE ACTION BY THE PATENT OFFICE HAS, IN FACT, BEEN DIRECTLY TO THE CONTRARY.

FOR BOTH PATENTS, THE PATENT OFFICE GRANTED PRECISION'S PETITION FOR REEXAM. EVERY SINGLE ASSERTED CLAIM HAS BEEN REJECTED, NOT ONCE, BUT TWICE, AS

1    ANTICIPATED FOR OBVIOUS OTHER PRIOR ART, AND THE PATENT

2    OFFICE HAS NOW ENTERED ACTIONS CLOSING PROSECUTION ON

3    BOTH PATENTS.

4           IN RESPONSE TO THESE REPEATED OFFICE ACTIONS

5    REJECTING AS INVALID THE VERY CLAIMS THAT CELLECTIS

6    ASSERTS IN THIS LITIGATION, THE PATENTEE HAS RESORTED TO

7    SUBSTANTIVELY AMENDING THE CLAIMS IN AN EFFORT TO AVOID

8    THE PRIOR ART THE PATENT OFFICE HAS FOUND INVALIDATES

9    THOSE PATENTS, BUT EVEN THOUGH SUBSTANTIVE AMENDMENTS

10   HAVE NOT SALVAGED THE CLAIMS IN REEXAM.

11          NOW, CELLECTIS ARGUES TO THIS COURT THOSE

12   AMENDMENTS ARE NOT SUBSTANTIVE.  BUT THE ARGUMENTS MADE

13   BY THE PATENTEE THEMSELVES DRAIN THE REEXAM AND PROVES

14   THE CONTRARY.  AND A BIT OF DETAIL ABOUT THE REEXAMS WILL

15   ILLUSTRATE THE POINT, I BELIEVE, YOUR HONOR.

16          BOTH PATENTS AT ISSUE IN THIS CASE ARE

17   DIRECTED TO METHODS OF USING SOMETHING CALLED GROUP I

18   INTRON-ENCODED ENDONUCLEASES TO PRODUCE A DOUBLE-STRANDED

19   BREAK IN DNA AT THE PARTICULAR SITE TO ALLOW INSERTION OF

20   A GENE OF INTEREST INTO THAT DNA.

21          NOW, ON THEIR FACE, THE CLAIMS IN BOTH PATENTS

22   COVER ALL CELLS, AND YOUR HONOR, CELLS ARE GENERALLY

23   DIVIDED INTO TWO BASIC CATEGORIES:  PROKARYOTES, WHICH

24   ARE SIMPLE ONE CELL, SINGLE CELLED CREATURES WITHOUT A

25   NUCLEUS.  AND THEN THERE IS EUKARYOTES, WHICH ARE THE

1    MORE COMPLEX CELLULAR ORGANISMS THAT HAVE A NUCLEUS.

2            EVERY CELL IS EITHER A PROKARYOTE OR A

3    EUKARYOTE, BUT ON THEIR FACE, THE CLAIMS IN THESE PATENTS

4    COVER BOTH.

5            ALSO, ALL OF THE CLAIMS ON THEIR FACE COVER

6    ALL DNA WHETHER OR NOT IT APPEARS IN THE CHROMOSOME OF A

7    CELL OR NOT.

8            NOW, THE REEXAM OF THE '545 PATENT STARTED IN

9    JULY OF 2009 WHEN PRECISION FILED ITS INTER PARTES REEXAM

10   REQUEST.  ON SEPTEMBER 17 OF LAST YEAR, ALL ASSERTED

11   CLAIMS OF THE '545 PATENT WERE REJECTED BY THE PATENT

12   OFFICE.  AND THE ONLY INDEPENDENT CLAIM THAT IS ASSERTED

13   IN THIS LITIGATION, WHICH IS CLAIM 7 OF THE '545 PATENT,

14   WAS REJECTED AS ANTICIPATED BY TWO PRIOR ART REFERENCES,

15   WON CALLED QUIRK, NAMED AFTER THE PRIMARY AUTHOR, AND

16   BELL-PEDERSEN, ANOTHER PIECE OF PRIOR ART.

17           NEITHER QUIRK NOR BELL-PEDERSEN WERE DISCLOSED

18   TO THE PATENT OFFICE DURING THE ORIGINAL PROSECUTION BY

19   THE PATENTEE.  AND BOTH DESCRIBE EXPERIMENTS IN

20   PROKARYOTIC CELLS AND NOT EUKARYOTIC CELLS.

21           SO ON NOVEMBER 17 OF LAST YEAR, THE PATENT

22   OWNER ATTEMPTED TO ADD A NEW CLAIM TO THE '545 PATENT.

23   IT WAS LIMITED TO EUKARYOTIC CELLS IN AN ATTEMPT TO AVOID

24   THE PRIOR ART OF QUIRK AND BELL-PEDERSEN WHICH WAS

25   LIMITED TO PROKARYOTES OR DESCRIBED AS PROKARYOTES.

1          ON FEBRUARY 18 OF THIS YEAR, THE PTO ISSUED AN

2     ACTION CLOSING PROSECUTION OF THE '545 PATENT, CONTINUING

3     TO REJECT ALL ASSERTED CLAIMS AS ANTICIPATED AND

4     REJECTING THE NEW EUKARYOTIC CLAIM AS OBVIOUS OVER THE

5     PRIOR ART.

6          ON APRIL 19 OF THIS YEAR, THE PATENT OWNER

7     FILLED ITS RESPONSE TO THE ACTION CLOSING PROSECUTION,

8     BUT IT DID SOMETHING SIGNIFICANT.  THE PATENT OWNER DID

9     NOT MAKE A SUBSTANTIVE RESPONSE TO THE PATENT OFFICE

10    REJECTIONS TO THE CLAIMS.  INSTEAD, IT ATTEMPTED TO AMEND

11    ALL OF THE CLAIMS FOR THE '545 PATENT TO LIMIT THEM TO

12    EUKARYOTIC CELLS.

13         AND TWO SIGNIFICANT POINTS COME FROM THAT

14    RESPONSE, YOUR HONOR.  BY ATTEMPTING TO ADD THE

15    EUKARYOTIC LIMITATION TO ALL OF THE CLAIMS TO AVOID THE

16    PRIOR ART, THE PATENT OWNER NECESSARILY ADMITTED THAT

17    THAT AMENDMENT WAS SUBSTANTIVE.

18         SECONDLY, THE PATENT OFFICE HAS ALREADY

19    REJECTED CLAIMS LIMITED TO EUKARYOTES AS OBVIOUS OVER THE

20    PRIOR ART, SO IT SEEMS HIGHLY UNLIKELY THAT THESE

21    AMENDMENTS ARE GOING TO SALVAGE THESE CLAIMS, THE

22    VALIDITY OF THESE CLAIMS FOR ANY REEXAM.

23         THE REEXAM OF THE '605 PATENT FILED A SIMILAR

24    PACT OR POSITION.  PRECISION FILED ITS INTER PARTES

25    REEXAM PETITION IN JULY OF 2009.

1          ON SEPTEMBER 17, THE PTO ISSUED AN OFFICE

2   ACTION REJECTING ALL CLAIMS, AS ANTICIPATED, BY QUIRK,

3   BELL-PEDERSEN AND TWO OTHER PIECES OF PRIOR ART,

4   DELAHODDE AND DURRENBERGER, NONE OF WHICH HAVE BEEN

5   DISCLOSED BY THE PATENTEES DURING THE ORIGINAL

6   PROSECUTION.

7          ON NOVEMBER 17 OF LAST YEAR, THE PATENT OWNERS

8   RESPONDED BY AMENDING THE CLAIM TO RECITE FIRST, THAT

9   THE BREAKS THAT THEY CLAIM OCCURRED IN THEIR INVENTION

10  UNDER THEIR METHOD OF THEIR INVENTION MUST OCCUR IN

11  CHROMOSOMAL DNA, NOT NON-CHROMOSOMAL DNA.

12          AND AGAIN, TO LIMIT THE CLAIMS TO EUKARYOTIC

13  CELLS, ALL DONE IN AN EFFORT TO AVOID THE PRIOR ART THAT

14  THE PATENT OFFICE FOUND IN INVALIDATING THE PATENT.

15  AGAIN, NECESSARILY PROVING THAT THOSE AMENDMENTS WERE

16  INTENDED TO AND ARE, IN FACT, SUBSTANTIVE AMENDMENTS.

17          JUST LAST WEEK, ON JUNE 7, THE PTO ISSUED AN

18  ACTION CLOSING PROSECUTION OF THE '605 PATENT AND

19  MAINTAINING ITS REJECTIONS OF ALL CLAIMS OF THE '605

20  PATENT AS INVALID.

21          SO, YOUR HONOR, THE MOST LIKELY SCENARIO NOW

22  IS THAT ALL ASSERTED CLAIMS IN THIS LITIGATION WILL BE

23  FINALLY REJECTED BY THE PATENT OFFICE AS ANTICIPATED OR

24  OBVIOUS OVER THE PRIOR ART.

25          BUT CELLECTIS RESPONDS, WAIT A MINUTE, THE

1    REJECTION BY THE PATENT OFFICE IS NOT YET FINAL, THE

2    PATENT OWNER HAS A RIGHT TO APPEAL IN THE PATENT OFFICE.

3    AND THAT IS TRUE, YOUR HONOR.  BUT THE BEST CASE SCENARIO

4    FOR CELLECTIS NOW ON THE '545 PATENT IS THAT THE NARROWER

5    CLAIMS WITH THE EUKARYOTIC AMENDMENT WILL ISSUE.

6              BUT IN THAT UNLIKELY SCENARIO, ALL CURRENT

7    CLAIMS OF THE '545 PATENT, WHICH DO NOT HAVE EUKARYOTIC

8    LIMITATIONS, WILL BE CANCELED BY THE PATENT OFFICE AND

9    NEW CLAIMS, NARROWER CLAIMS, WILL ISSUE.

10             LIKEWISE, THE BEST CASE SCENARIO UNDER THE

11   '605 PATENT FOR CELLECTIS IS ESSENTIALLY THE SAME.  THAT

12   IT WOULD WIN THE APPEAL ON THE AMENDED CLAIMS ADDING

13   CHROMOSOMAL AND EUKARYOTIC LIMITATIONS TO THE CLAIMS, BUT

14   IT WOULD AGAIN THEN BE ENTITLED TO NO DAMAGES ON THE

15   CURRENT CLAIMS BECAUSE THEY WOULD BE CANCELED BY THE

16   PATENT OFFICE.

17             IT THUS MAKES NO SENSE, WE BELIEVE, TO

18   CONTINUE TO LITIGATE, TO CONTINUE THIS LITIGATION

19   REGARDING THE ORIGINAL CLAIMS ASSERTED BY CELLECTIS WHICH

20   ARE MOST LIKELY TO BE REJECTED AS INVALID, AND AT THE

21   BEST CASE, WILL BE AMENDED IN A WAY THAT WOULD MOOT THE

22   RESULTS OF THIS ENTIRE LITIGATION.

23             NOW, YOUR HONOR, THE RESULTS OF THIS REEXAM

24   PROCESS ARE NOT PARTICULARLY SURPRISING GIVEN THE

25   PATENTEES IMPROPER ATTEMPT TO HIDE THE MOST RELEVANT

1    PRIOR ART FROM THE PATENT OFFICE.  IT'S NOTED, YOUR

2    HONOR, THESE TWO PATENTS ARE DIRECTED TO METHODS OF USING

3    GROUP I INTRON-ENCODED ENDONUCLEASES TO PRODUCE A

4    DOUBLE-STRANDED BREAK IN THE DNA TO ALLOW INSERTION OF A

5    GENE OF INTEREST.

6              BUT THE INVENTION THAT WAS ORIGINALLY

7    DESCRIBED BY THE INVENTORS WAS SEVERELY LIMITED.  IT

8    WOULD ONLY WORK IF THE NATURALLY OCCURRING RECOGNITION

9    SITE FOR THE GROUP I INTRON-ENCODED ENDONUCLEASES

10   HAPPENED TO BE PRESENT IN THE DNA SO THAT THAT GROUP I

11   INTRON-ENCODED ENDONUCLEASES WOULD KNOW WHERE TO CUT AND

12   THIS WAS A RARE THING IN NATURE.  IT ESSENTIALLY REQUIRED

13   A TRIAL AND ERROR EFFORT TO FIND THIS RECOGNITION SITE IN

14   DNA, OR IT REQUIRED THE INSERTION OF THAT RECOGNITION

15   SITE INTO THE DNA, SEVERELY LIMITING THE PRACTICAL

16   APPLICATION OF THE CLAIMED INVENTION.

17             BUT THEN, ABOUT A DECADE LATER, THE SCIENTISTS

18   AT PRECISION DEVELOPED A REVOLUTIONARY BREAKTHROUGH THAT

19   ALLOWED SCIENTISTS TO CUT THE DNA AT VIRTUALLY ANY

20   DESIRED LOCATION, WHETHER OR NOT THE NATURAL RECOGNITION

21   SITE EXISTED IN THE DNA.  THESE SO CALLED ENGINEERED

22   ENDONUCLEASES WERE MUCH MORE FLEXIBLE, PRACTICAL AND

23   USEFUL, AND PRESENTED A HUGE COMPETITIVE THREAT TO

24   CELLECTIS WITH ITS OLDER, CRUDER TRIAL AND ERROR

25   TECHNIQUE THAT RELIED ON THE PRESENCE OF THE NATURALLY

1    OCCURRING RECOGNITION SITE.

2            BECAUSE CELLECTIS COULD NOT BEAT PRECISION IN

3    THE MARKETPLACE, IT TRIED TO BEAT IT IN THE PATENT

4    OFFICE.  AT ALMOST THE VERY MOMENT THAT CELLECTIS

5    EXCLUSIVELY LICENSED THE PATENTS AT ISSUE IN THIS

6    LITIGATION, THE PATENT OWNERS, FOR THE VERY FIRST TIME,

7    STARTED SEEKING FAR BROADER PATENT CLAIMS THAT WERE NO

8    LONGER LIMITED TO ENDONUCLEASES THAT RECOGNIZED ONLY

9    NATURALLY OCCURRING RECOGNITION SITES.  BUT THE ONLY WAY

10   THE PATENT OWNER COULD GET THOSE BROADER CLAIMS WAS BY

11   NOT DISCLOSING THE HIGHLY RELEVANT PRIOR ART --

12   QUIRK, BELL-PEDERSON, AND THE OTHER REFERENCES THAT I

13   HAVE REFERRED TO -- EVEN THOUGH THE EVIDENCE IS CLEAR

14   PATENT OWNERS KNEW ABOUT THAT PRIOR ART.

15           NOW THAT THESE HIGHLY RELEVANT PIECES OF ART

16   HAVE BEEN BROUGHT TO THE PTO'S ATTENTION BY PRECISION IN

17   THE REEXAMS, THE RESULTS ARE ENTIRELY PREDICTABLE.

18           THE OVERLY BROAD CLAIMS OF THE '545 AND '605

19   PATENTS HAVE BEEN REJECTED AS ANTICIPATED BY THAT PRIOR

20   ART.  AND THE PATENTEE COULD ONLY ATTEMPT TO SALVAGE

21   THOSE PATENTS BY NOW TRYING TO AMEND THE CLAIMS TO AVOID

22   THAT PREVIOUSLY UNDISCLOSED PRIOR ART.  SO FAR, THOSE

23   EFFORTS HAVE BEEN UNSUCCESSFUL.

24           SO, IN LIGHT OF THE STATE OF AFFAIRS AND THE

25   REEXAM, AS I SAID, WE BELIEVE IT MAKES NO SENSE TO MOVE

FORWARD WITH THIS LITIGATION, YOUR HONOR, LIMITED TO THE
ORIGINAL, UNAMENDED, NOW REJECTED CLAIMS FROM THE '545
AND '605 PATENTS.  IT MAKES NO SENSE TO INCUR THE COSTS,
INCONVENIENCE, AND LIKELY WASTED EFFORT OF MOVING FORWARD
THROUGH EXPERT DISCOVERY, CLAIM CONSTRUCTION, DISPOSITIVE
MOTIONS, TRIAL PREP AND TRIAL AND WHEN ALL OF THAT COST
AND EFFORT WILL ALMOST CERTAINLY BE MOOTED BY THE REEXAM
PROCESS.

NOW, CELLECTIS ARGUES THAT IT WOULD BE
IRREPARABLY HARMED BY A STAY, BUT IT IS WRONG, YOUR
HONOR.  FIRST, CELLECTIS WOULD ALSO BENEFIT FROM THE
CONSERVATION OF SOURCES THAT WOULD RESULT FROM A STAY.
SECOND, CELLECTIS CAN ALWAYS RESUME IN ITS PURSUIT OF
PAST DAMAGES FOR PATENT INFRINGEMENT IN THE UNLIKELY
EVENT THAT ITS CLAIMS SURVIVE THE APPEAL IN THE PATENT
OFFICE.

BUT GIVEN ITS SUBSTANTIVE AMENDMENTS TO THE
CLAIMS, EVEN IF THE CLAIMS SURVIVE IN SOME FORM, THE
CURRENT CLAIMS ARE MOST LIKELY TO BE CANCELED AND
CELLECTIS WOULD BE ENTITLED TO NO PAST DAMAGES UNDER 35
U.S.C. SECTION 252, AND WOULD ONLY BE ENTITLED TO DAMAGES
ON THE AMENDED CLAIMS GOING FORWARD UNDER 35 U.S.C.
SECTION 307(B).  SO THERE IS NO IRREPARABLE HARM FROM
THAT DELAY.

BUT THEN CELLECTIS ARGUES THAT IT WOULD BE

1    DENIED ITS RIGHT TO SEEK AN INJUNCTION SINCE THE CURRENT

2    CLAIMS EXPIRE IN 2012.

3              AS A THRESHOLD MATTER, YOUR HONOR, I WOULD

4    SUGGEST THIS ARGUMENT RINGS RATHER HOLLOW GIVEN THAT

5    CELLECTIS HAS NEVER SOUGHT A TRO OR A PRELIMINARY

6    INJUNCTION IN THIS LITIGATION.  IT CERTAINLY STRONGLY

7    INDICATES THAT, IN FACT, CELLECTIS DOES NOT BELIEVE IT IS

8    SUFFERING FROM IRREPARABLE HARM.

9              MOREOVER, CELLECTIS IS HIGHLY UNLIKELY TO BE

10   ENTITLED TO ANY INJUNCTION ON THE CURRENT CLAIMS IN ANY

11   EVENT GIVEN THE SUBSTANTIVE AMENDMENTS THAT HAVE BEEN

12   MADE TO THOSE CLAIMS.

13             AND CELLECTIS SEEKS TO IGNORE THE SEVERE

14   PREJUDICE THAT PRECISION WOULD SUFFER IF A STAY IS NOT

15   GRANTED.  YOUR HONOR, PRECISION IS A SMALL COMPANY WITH

16   ONLY ABOUT A DOZEN EMPLOYEES.  AND DISCOVERY HAS REVEALED

17   THAT CELLECTIS' INTENT ALL ALONG WAS TO USE THE CRUSHING

18   COST OF LITIGATION TO HELP DEFEAT PRECISION IN THIS

19   LITIGATION.

20             AND YOUR HONOR, I WOULD SUGGEST THAT THAT

21   TACTIC SHOULD NOT BE ENDORSED BY THIS COURT.  EVEN MORE

22   SEVERELY IS A PREJUDICE THAT COULD RESULT IF PRECISION IS

23   FORCED TO PAY DAMAGES OR IF IT'S ENJOINED BASED ON THE

24   CURRENT CLAIMS BEING ASSERTED BY CELLECTIS IF THE PATENT

25   IS ULTIMATELY FOUND INVALID IN THE FINAL RESULT IN THE

1    REEXAM, OR IF THOSE CLAIMS ARE LATER CANCELED DUE TO

2    SUBSTANTIVE AMENDMENTS.

3            PRECISION WOULD HAVE NO RECOURSE OR REMEDY FOR

4    THAT SEVERE AND PERHAPS FATAL HARM, YOUR HONOR.  BUT, OF

5    COURSE, THIS IS PRECISELY THE RESULT THAT CELLECTIS SEEKS

6    TO ACHIEVE IN OPPOSING THIS MOTION FOR A STAY.  IT CAN

7    ONLY WIN NOW BY RUSHING FORWARD TO TRIAL ON OLD PATENT

8    CLAIMS THAT HAVE BEEN REJECTED BY THE PATENT OFFICE AND

9    SUBSTANTIVELY AMENDED BY THE PATENT OWNER IN THE HOPES

10   THAT IT COULD WIN A JURY TRIAL BEFORE THE PTO PROCESS IS

11   COMPLETED.  THIS SHOULD NOT BE ALLOWED, YOUR HONOR.

12           CELLECTIS THEN ARGUES THAT REEXAM WON'T

13   RESOLVE MOST OF THE ISSUES IN THIS LITIGATION.  AGAIN, IT

14   IS WRONG.  THE PRIMARY OVERRIDING ISSUE IN THIS

15   LITIGATION, WITHOUT A DOUBT, IS CELLECTIS' CLAIM OF

16   PATENT INFRINGEMENT BY PRECISION.  THE REEXAM PROCESS

17   WILL RESOLVE OR AT A MINIMUM GIVE STRONG GUIDANCE ON

18   WHETHER THE CURRENT CLAIMS ASSERTED BY CELLECTIS ARE

19   VALID.

20           THE REEXAM PROCESS WILL ALSO DETERMINE THE

21   PROPER SCOPE OF THE CLAIMS OF THE '545 AND '605 PATENTS

22   WHICH GOES DIRECTLY TO THE QUESTION OF INFRINGEMENT.  BUT

23   THE REEXAM PROCESS ALSO GOES DIRECTLY TO CELLECTIS' OTHER

24   CLAIMS AND THE OTHER CLAIMS AT ISSUE IN THIS LITIGATION.

25           FIRST, IT'S RELEVANT TO CELLECTIS' STRAINED

1    CLAIMS OF LIBEL PER SE, UNFAIR COMPETITION AND CLAIMS

2    UNDER THE LANHAM ACT, WHICH ARE ALL BASED ON THE CONTENT

3    OF SOME OF PRECISION'S PRESS RELEASES WHICH MERELY SAID

4    THAT IF THE PATENT OFFICE APPLIED THE SAME LOGIC TO THE

5    PATENTS-IN-SUIT IN THIS LITIGATION THAT IT HAD APPLIED TO

6    TWO RELATED PATENTS THAT THE PATENT OFFICE HAD REJECTED

7    AS INVALID, THAT THE PATENTS-IN-SUIT SHOULD ALSO BE

8    REJECTED AS INVALID, WHICH IS EXACTLY WHAT HAPPENED IN

9    THE REEXAMS OF THE PATENTS-IN-SUIT.

10        SO, YOUR HONOR, THERE WAS NO LIBEL.  THERE WAS

11   JUST A PREDICTION LABELED AS SUCH IN THE PRESS RELEASE

12   THAT TURNED OUT TO BE TRUE.  THE REEXAM WILL ALSO GO TO

13   PRECISION'S DEFENSE OF INEQUITABLE CONDUCT.  THE PATENT

14   OFFICE'S REJECTION OF THE '545 AND '605 PATENT BASED ON

15   PREVIOUSLY UNDISCLOSED PRIOR ART ESTABLISHES THE CLEAR

16   MATERIALITY OF THAT PRIOR ART.

17        DISCOVERY HAS ESTABLISHED THAT THE PATENTEES

18   WERE AWARE OF THAT HIGHLY MATERIAL PRIOR ART, BUT FAILED

19   TO DISCLOSE IT TO THE PATENT OFFICE.  THERE IS NO DISPUTE

20   THAT THOSE PRIOR ART REFERENCES WERE NOT DISCLOSED BY THE

21   PATENTEES.

22        HIGHLY MATERIAL PRIOR ART, PLUS HIGH

23   MATERIALITY, PLUS A FAILURE TO DISCLOSE TO THE PATENT

24   OFFICE CAN EQUAL A PRESUMPTION OF AN INTENT TO DECEIVE

25   THE PATENT OFFICE, ALL OF WHICH ADDS UP TO INEQUITABLE

1    CONDUCT.  SO THE REEXAM PROCESS IS, IN FACT, HIGHLY

2    RELEVANT TO THE INEQUITABLE CONDUCT OFFENSE.

3              BUT, YOUR HONOR, EVEN IF THE REEXAM PROCESS

4    DOES NOT RESOLVE ALL OF THE ISSUES IN THIS LITIGATION,

5    THERE IS LITTLE DOUBT THAT THE PROCESS WILL CERTAINLY

6    SIMPLIFY THE ISSUES IN THIS LITIGATION.  AT A BARE

7    MINIMUM, THE COURT AND THE JURY WOULD BENEFIT FROM THE

8    PATENT OFFICE'S VIEWS ON THE PRIOR ART THAT WAS

9    PREVIOUSLY UNCONSIDERED BY THE PATENT OFFICE AND WHICH IS

10   HIGHLY TECHNICAL IN NATURE.

11             FINALLY, YOUR HONOR, CELLECTIS ARGUES THAT THE

12   MOTION FOR A STAY SHOULD BE DENIED BECAUSE PRECISION

13   WAITED TOO LONG TO FILE ITS REQUEST FOR A REEXAM AND ITS

14   MOTION FOR A STAY.

15             AS A THRESHOLD MATTER, YOUR HONOR, IT IS WORTH

16   NOTING THAT CONTRARY TO CELLECTIS' FALSE SUGGESTION THAT

17   THIS CASE IS ALMOST READY FOR TRIAL, THERE IS STILL MUCH

18   TO DO IN THIS LITIGATION.  A LOT OF FACT DISCOVERY HAS

19   OCCURRED IN THIS CASE, FOR SURE, BUT WELL OVER HALF OF

20   THIS CASE REMAINS TO BE COMPLETED, SO A STAY WILL STILL

21   SERVE THE ENDS OF JUDICIAL EFFICIENCY.

22             AS I HAVE NOTED BEFORE, WE STILL HAVE TO

23   COMPLETE FACT DISCOVERY, EXPERT DISCOVERY INCLUDING

24   EXCHANGES OF REPORTS AND DEPOSITIONS, DISPOSITIVE

25   MOTIONS, CLAIM CONSTRUCTION, RULINGS AND ARGUMENTS, AND

1    THEN, OF COURSE, PREPARING FOR A JURY TRIAL AND

2    IMPANELING A JURY, AND ALL THAT THAT ENTAILS.

3         AS THE COURT IN THE EASTERN DISTRICT OF

4    MICHIGAN OBSERVED IN THE 2009 <u>INSITUFORM</u> CASE WHICH WE

5    CITED IN OUR BRIEFS, (QUOTE) "THE DISCOVERY COSTS

6    INCURRED TO DATE WILL NOT BE RECOUPED BY DENYING A STAY

7    AND PROCEEDING TO TRIAL, NOR WILL THE COMPLETED DISCOVERY

8    PROVE USELESS IF THE PATENTS ARE HELD VALID AND THE STAY

9    LIFTED." (CLOSED QUOTE).

10        BUT CELLECTIS STILL ARGUES THE MOTION FOR STAY

11   SHOULD BE DENIED PRIMARILY BECAUSE THE REEXAM REQUEST WAS

12   NOT FILED UNTIL JULY 2009 AND SUGGESTS THAT THAT TIMING

13   WAS PART OF SOME NEFARIOUS PLOT BY PRECISION.  THAT IS

14   SIMPLY NOT TRUE.

15        THE SIMPLE FACT IS THAT PRECISION WAITED TO

16   REQUEST THE REEXAM BECAUSE IT ORIGINALLY THOUGHT THAT

17   THIS LITIGATION WOULD PROVIDE FASTER MEANS FOR RESOLUTION

18   OF THIS BASELESS SUIT.  PRECISION DID NOT WANT THE PALL

19   OF THIS LAWSUIT HANGING OVER IT ANY LONGER THAN

20   NECESSARY.  THEN, THE PTO QUICKLY REJECTED CLAIMS OF

21   OTHER RELATED PATENTS IN REEXAM.

22        SO PRECISION SOUGHT REEXAM ON THE

23   PATENTS-IN-SUIT AS WELL TO SEE IF A SPEEDIER RESOLUTION

24   COULD BE REACHED IN THE PATENT OFFICE, AND INDEED, THE

25   REJECTIONS AND ACTIONS CLOSING PROSECUTION CAME MUCH

1    FASTER THAN WE EXPECTED, BRINGING US TO WHERE WE ARE

2    TODAY.

3            IF CELLECTIS IS SO CONCERNED ABOUT THE TIMING

4    AND DELAY, WHY DIDN'T IT FILE ITS COMPLAINT FOR PATENT

5    INFRINGEMENT SOONER?  WHY HAS IT ENGAGED IN EXTENSIVE

6    DELAYS IN PROVIDING ADEQUATE DISCOVERY IN THIS CASE WHICH

7    HAS NECESSITATED THE EXTENSION OF THE SCHEDULING IN THIS

8    CASE.  AND WHY HAVE THE PATENT OWNERS SOUGHT REPEATED

9    EXTENSIONS IN THE REEXAM PROCESS?

10           THE FACT IS, YOUR HONOR, THAT IF WE BROUGHT

11   THIS MOTION TO STAY IMMEDIATELY AFTER THE GRANTING OF THE

12   REEXAM, CELLECTIS WOULD HAVE ARGUED THAT MOTION WAS

13   PREMATURE.  INSTEAD, PRECISION DID THE CONSERVATIVE,

14   RESPONSIBLE THING.  WE WAITED FOR THE SUBSTANTIVE

15   REJECTIONS FROM THE PATENT OFFICE.  NOW WE HAVE ACTIONS

16   CLOSING PROSECUTION ON BOTH PATENTS.  THAT IS WHEN WE

17   FILED THE MOTION.

18           THERE CAN NOW BE NO DOUBT THE CONTINUING TO

19   LITIGATE PATENT CLAIMS IN THE CURRENT FORM WILL BE A

20   WASTE OF TIME, OF MONEY, AND JUDICIAL RESOURCES.

21           YOUR HONOR, IN CONCLUSION, IF A MOTION FOR

22   STAY IS GRANTED, THE NEED FOR ANY TRIAL IN THIS CASE IS

23   MOST LIKELY TO BE OBVIATED COMPLETELY.  BUT EVEN IF A

24   TRIAL NEEDS TO GO FORWARD AFTER A STAY, THE COURT WILL

25   THEN HAVE THE BENEFIT OF A PATENT OFFICE'S EXPERIENCED

1  VIEW ON HIGHLY TECHNICAL PATENTS THAT HAVE NOT PREVIOUSLY

2  BEEN CONSIDERED BY THE PATENT OFFICE.  THE CLAIM LANGUAGE

3  WILL FINALLY BE SET IN STONE AND NOT BE A MOVING TARGET.

4           AND FOR ALL OF THESE REASONS, THIS LITIGATION

5  SHOULD BE STAYED UNTIL AFTER THE COMPLETION OF THE

6  REEXAMS AND THE PATENTS AND THE PATENTS-IN-SUIT.

7  THANK YOU.

8           THE COURT:  MR. BASSETT, LET ME ASK YOU A FEW

9  QUESTIONS AND WE'LL LET YOUR COLLEAGUES HAVE THEIR CHANCE

10  AT THE PODIUM.

11           MR. BASSETT:  SURE.

12           THE COURT:  WHAT DISCOVERY NEEDS TO -- YOU

13  CONTEND THE CASE IS ONLY HALF OVER AND THAT THERE IS

14  SIGNIFICANT DISCOVERY.

15           WHAT DISCOVERY WOULD YOU ANTICIPATE YOU WOULD

16  NEED?  AND DIDN'T DISCOVERY END LIKE TEN MONTHS AGO?

17           MR. BASSETT:  WELL, UNDER -- YES, YOUR HONOR.

18           THE COURT:  THE SCHEDULING ORDER IS CURRENTLY

19  EXISTING.

20           MR. BASSETT:  BUT FOR WHAT IS RELATED TO THE

21  MOTIONS TO COMPEL, YOU ARE RIGHT, YOUR HONOR.  THE FACT

22  DISCOVERY PORTION OF THIS CASE IS NEARLY OR ALMOST AT AN

23  END.  BUT THAT THEN LEADS TO THE EXPERT DISCOVERY WHICH

24  INVOLVES THREE ROUNDS OF EXPERT REPORTS.

25           THE COURT STILL HASN'T RULED ON THE MOTION ON

1    CLAIM CONSTRUCTION WHICH WILL PERHAPS NEED TO BE ARGUED

2    AND DECIDED.  ONCE THAT HAPPENS, THERE WILL BE

3    SUBSTANTIVE MOTIONS, INCLUDING POTENTIALLY DISPOSITIVE

4    MOTIONS, PERHAPS OTHER RELATED DISCOVERY MOTIONS.

5                THE COURT:  SO THE SCHEDULING ORDER REALLY

6    DOESN'T MEAN MUCH IS WHAT YOU ARE --

7                MR. BASSETT:  NO, YOUR HONOR.  OBVIOUSLY, IT

8    MEANS A LOT.

9                THE COURT:  I AM NOT TRYING TO BAIT YOU IN

10   THAT.

11               MR. BASSETT:  IT MEANS A LOT, YOUR HONOR.  THE

12   ORDER THE --

13               THE COURT:  I WAS HOPING I GOT THAT ANSWER.

14   YOU HAD THE CORRECT ANSWER.

15               MR. BASSETT:  THE MOTIONS TO COMPEL, YOUR

16   HONOR, HAVE BEEN PENDING, AND WE FILED THEM NEAR THE END

17   OF THE FACT DISCOVERY, SO THAT IS THE PIECE THAT WE ARE

18   IN.

19               THE COURT:  OKAY.  LET ME ASK YOU, YOU SAID

20   THAT THE '454 PATENT, THERE WAS A JUNE 7 ORDER -- I AM

21   SORRY -- REJECTING '605, THE JUNE 7 ORDER THAT JUST CAME

22   DOWN.

23               MR. BASSETT:  IT WAS THE ACTION CLOSING

24   PROSECUTION OF THE '605 PATENT.

25               THE COURT:  '605; OKAY.

```
 1                MR. BASSETT:  THAT'S RIGHT.

 2                THE COURT:  SO CELLECTIS' REMEDY ON THAT IS TO

 3     APPEAL THAT.

 4                MR. BASSETT:  WELL, NO, YOUR HONOR.  ONCE YOU

 5     GET THE ACTION CLOSING PROSECUTION, THEY HAVE A CHANCE TO

 6     RESPOND TO THAT ACTION CLOSING PROSECUTION WHICH IS WHAT

 7     THEY DID IN THE '545 PATENT.

 8                THE COURT:  OKAY.

 9                MR. BASSETT:  AND AS YOU WILL RECALL, WHAT

10     THEY DID IN THAT RESPONSE WAS TRY TO AMEND ALL THE

11     CLAIMS.

12                THE COURT:  OKAY.

13                MR. BASSETT:  SO THEY WOULD HAVE ONE MORE

14     CHANCE TO RESPOND BEFORE THEY WOULD HAVE TO APPEAL.

15                THE COURT:  I THINK THAT IS LEADING ME AND ALL

16     THAT HAPPENED LAST SEPTEMBER WITH REGARD TO THE --

17                MR. BASSETT:  '545.

18                THE COURT:  '545.

19                MR. BASSETT:  THAT'S RIGHT.

20                THE COURT:  AND THERE STILL HAS BEEN NO

21     RULING.  I AM TRYING TO SEE WHAT THE PTO, WHAT KIND OF

22     TIME FRAME YOU WOULD ANTICIPATE, UNDERSTANDING THAT YOU

23     ARE NOT A FORTUNE TELLER.

24                MR. BASSETT:  RIGHT.  RIGHT.  YOUR HONOR, THE

25     '545 PATENT, THE RESPONSE TO THE ACTION CLOSING
```

1    PROSECUTION WAS FILED -- LET ME MAKE SURE I GET THAT DATE

2    CORRECT -- ON APRIL 19, WHICH IS ABOUT A MONTH AGO, YOUR

3    HONOR.  I WOULD EXPECT THAT THE PATENT OFFICE WILL

4    RESPOND IN LESS THAN TWO MORE MONTHS TO THAT.

5              THE COURT:  SO HOW LONG DO YOU THINK IT WOULD

6    TAKE, YOUR BEST GUESS, FOR THE PTO TO ULTIMATELY RESOLVE

7    THESE MATTERS.

8              MR. BASSETT:  JUST A MOMENT, YOUR HONOR.  I AM

9    CONSULTING WITH FOLKS THAT KNOW MORE ABOUT THIS.

10             THE COURT:  I UNDERSTAND.  IT'S A SHOT IN THE

11   DARK.  I UNDERSTAND.

12             MR. BASSETT:  YOUR HONOR, WE AGREE.  I THINK

13   THAT OUR SENSE IS THE FINAL RESOLUTION WITH THE PATENT

14   OFFICE WOULD PROBABLY BE IN FOUR MONTHS OR LESS, BUT THEN

15   SUBJECT TO THE RIGHT OF APPEAL, WHICH THERE IS NO CONTROL

16   OR ABILITY TO PREDICT THE TIME FRAME ON THAT, BUT THAT

17   COULD BE OBVIOUSLY A MATTER OF ANOTHER PERIOD OF TIME OF

18   SIX MONTHS TO A YEAR, I WOULD SAY.

19             THE COURT:  OKAY.

20             MR. BASSETT:  BECAUSE THEY CAN APPEAL

21   INTERNALLY IN THE PATENT OFFICE AND THEN THERE IS A

22   POTENTIAL APPEAL TO A COURT, AND YOU KNOW.

23             THE COURT:  SO IT'S A LENGTHY PERIOD.

24             MR. BASSETT:  WELL, I MEAN, YES, BUT IT'S ALSO

25   SOMETHING LESS THAN YEARS, I WOULD SAY, YOUR HONOR.

1              THE COURT:  OKAY.  ALL RIGHT.  SO YOU THOUGHT

2      THAT WHEN YOU FILED THE CASE YOUR ARGUMENT WITH REGARD TO

3      THE LATE FILING OF THE REEXAMINATION REQUEST AS WELL AS

4      THESE OTHER, YOU THOUGHT THAT THIS LITIGATION WOULD

5      PROCEED MORE QUICKLY THAN THE PTO REEXAMINATION PROCESS?

6              MR. BASSETT:  THAT WAS OUR ORIGINAL THOUGHT,

7      YOUR HONOR.  AND PART OF IT WAS, OF COURSE, AS YOU WILL

8      PERHAPS RECALL, WE FILED A MOTION TO DISMISS THE CASE

9      BASED ON THE FAILURE TO JOIN THE PATENT OWNER TO THIS

10     LITIGATION WHICH WE WERE ERRONEOUSLY FAIRLY CONFIDENT

11     ABOUT, SO WE THOUGHT THERE WOULD BE A WAY TO GET THIS

12     CASE RESOLVED RELATIVELY QUICKLY, BUT THEN OBSERVED THAT

13     THE PATENT OFFICE PROCESS WAS MOVING MUCH MORE QUICKLY

14     THAN ANTICIPATED WHICH LEAD TO THE RECALCULATION ON OUR

15     PART ABOUT WHAT IS THE QUICKEST WAY TO GET THIS THING

16     RESOLVED.

17             THE COURT:  NOW, IN LIGHT OF WHERE WE ARE,

18     TELL ME IF I WERE TO SCHEDULE A MARKMAN HEARING

19     RELATIVELY SOON, TELL ME HOW FUTILE THAT WOULD BE IN

20     LIGHT OF WHERE WE STAND WITH THE PTO TODAY WITH THE

21     REEXAMINATION.

22             MR. BASSETT:  YOUR HONOR, I THINK IT WOULD BE

23     A WASTE OF EFFORT.  THE ORIGINAL CLAIMS, AS I SAID, ARE

24     BROADER THAN THE CLAIMS THAT ARE NOW PENDING IN THE

25     PATENT OFFICE.  TO MAKE CLEAR, WHEN I TALKED ABOUT THE

1    APPEAL PROCESS ON THESE REEXAM PETITIONS, THE APPEALS

2    WOULD BE OF THE AMENDED CLAIMS ONLY.

3              SO IF THEY APPEAL, THERE IS NO CHANCE THAT

4    WHAT IS GOING TO EMERGE FROM THE PATENT OFFICE ARE THE

5    PATENT CLAIMS THAT ARE INDEED ASSERTED IN THIS

6    LITIGATION.

7              NOW, CERTAINLY WHAT CELLECTIS IS GOING TO TRY

8    TO DO IS ARGUE IN THAT CLAIM CONSTRUCTION PROCESS TO TRY

9    TO GET THEIR CLAIM CONSTRUCTION TO COME OUT TO BE THE

10   SAME AS THE AMENDED CLAIMS IN THE PATENT OFFICE.  SO THAT

11   THEY CAN SAY, WELL, SEE, THEY ARE ALL THE SAME.  THIS

12   REALLY ISN'T A BIG CHANGE.

13             BUT, YOUR HONOR, THAT IS FAR FROM CERTAIN THAT

14   THAT IS THE CORRECT CONSTRUCTION.  IN FACT, WE STRONGLY

15   DISAGREE THAT THAT IS THE CORRECT CONSTRUCTION.  THE ONLY

16   THING THAT IS MOTIVATING CELLECTIS, IN OUR VIEW, TO ARGUE

17   FOR THESE NARROWER CLAIM CONSTRUCTIONS IS TO TRY TO AVOID

18   PRIOR ART THAT CLEARLY INVALIDATES THEIR PATENT.

19             THE COURT:  OKAY.  ALL RIGHT, MR.

20   BASSETT.  THANK YOU.

21             MR. BASSETT:  THANK YOU.

22             THE COURT:  ALL RIGHT.

23             MR. BASSETT:  WOULD YOU LIKE TO HEAR ARGUMENT

24   NOW ON THE MOTION TO COMPEL?

25             THE COURT:  I WANT TO LET THE PLAINTIFF

1    RESPOND.  I FEEL LIKE THEY HAVE TAKEN A LOT OF BODY BLOWS

2    HERE AND PROBABLY NEED TO RESPOND AND VENT, SO MR.

3    RICHTER.

4              MR. RICHTER:  THANK YOU, YOUR HONOR.  WE HAVE

5    A POWERPOINT PRESENTATION TO SORT OF GUIDE OUR ARGUMENT.

6              BEFORE I GET TO THE SLIDES, YOUR HONOR, I

7    THOUGHT I WOULD SPEND A COUPLE OF MINUTES TALKING ABOUT

8    THE TECHNOLOGY.  MR. BASSETT DESCRIBED IT -- AND I KNOW

9    IT'S VERY COMPLEX BY NECESSITY BECAUSE IT IS A VERY

10   EXCITING AND CUTTING EDGE AREA OF SCIENCE.

11             I COMPLETELY DISAGREE WITH MR. BASSETT'S

12   DESCRIPTION THAT PRECISION WERE THE PIONEERS HERE.  IN

13   FACT, THIS TECHNOLOGY WAS DEVELOPED AT THE INSTITUT

14   PASTEUR IN THE 90'S.  ONE OF THE PASTEUR SCIENTISTS, DR.

15   ANDRE CHOULIKA, LEFT PASTEUR AND STARTED CELLECTIS AND

16   BASED HIS ENTIRE COMPANY ON THE PATENT SUBJECT MATTER

17   THAT HE DEVELOPED WHILE AT PASTEUR, WHICH IS WHY HE TOOK

18   THE LICENSE FROM PASTEUR.  AND HE IS REALLY THE CREATOR

19   OF THE CONCEPT OF USING THESE GROUP I INTRON-ENCODED

20   ENDONUCLEASES ALONG WITH OTHER INVENTORS AS A GENETIC

21   ENGINEERING TOOL.

22             AND THE WAY THEY WORK IS THAT THEY OCCUR

23   NATURALLY, IN NATURE, IN YEAST, FOR EXAMPLE, AND THEY ARE

24   VERY EXCITING ENZYMES BECAUSE UNLIKE RESTRICTION ENZYMES,

25   WHICH YOU MAY HAVE HEARD OF, WHICH RECOGNIZES A VERY

1    SMALL NUMBER OF BASE PAIRS IN CELLS THAT IT'S INTENDED TO

2    OPERATE ON, THESE GROUP I INTRON-ENCODED ENDONUCLEASES

3    RECOGNIZE VERY LARGE, YOU KNOW, APPROXIMATELY 20 BASE

4    PAIR SEQUENCES, WHICH DON'T OCCUR THAT OFTEN.

5              SO WHEN YOU USE THEM AS A GENETIC ENGINEERING

6    TOOL, YOU CAN VERY SITE SPECIFICALLY CLEAVE A SPECIFIC

7    INTENDED AREA IN A GENE, FOR EXAMPLE, THAT YOU KNOW YOU

8    WANT TO ALTER BY PUTTING A DIFFERENT FOREIGN DNA IN THERE

9    TO ADVANTAGEOUSLY CHANGE THE BIOLOGY OF THAT CELL.

10             CELLECTIS ALSO DEVELOPED THE TECHNIQUES OF

11   ALTERING THE NATURALLY OCCURRING GROUP I INTRON-ENCODED

12   ENDONUCLEASES SO THAT THEY WOULD RECOGNIZE NATURALLY

13   OCCURRING SITES IN CELLS, AND THIS HAS A VERY PROFOUND

14   EFFECT IN A LOT OF AREAS OF SCIENCE.

15             FOR EXAMPLE, YOU CAN ALTER A CORN CELL TO

16   ADVANTAGEOUSLY RESIST A PESTICIDE.  AND CELLECTIS, THAT

17   IS THEIR AREA OF TECHNOLOGY.  AND WE BELIEVE THAT

18   DISCOVERY HAS SHOWN THAT, IN FACT, PRECISION IS NOT THE

19   LEADER IN THIS.  IF FACT, THEY COPIED CELLECTIS'

20   TECHNOLOGY AND THEY WILLFULLY INFRINGED THESE PATENTS,

21   AND THAT IS WHY WE ARE HERE TODAY.

22             AND I WOULD LIKE TO START OUR PRESENTATION

23   WITH THE POINT THAT MR. BASSETT FOCUSED ON AT THE

24   BEGINNING OF HIS, WHICH IS A LITTLE OUT OF ORDER OF THE

25   WAY WE PLANNED IT, BUT I THINK IT'S VERY IMPORTANT

1    BECAUSE IT GOES TO THE PREJUDICE THAT CELLECTIS WOULD

2    SUFFER IF A STAY WAS IMPOSED AT THIS POINT ALONG WITH

3    WHAT ACTUALLY IS OCCURRING IN THE PATENT OFFICE WHICH

4    I THINK IS DIFFERENT THAN WHAT MR. BASSETT PRESENTED.

5            AND IF YOU LOOK AT SLIDE 12, YOUR HONOR, THIS

6    IS THE AMENDMENT THAT MR. BASSETT MENTIONED IN THE '545

7    PATENT TO CLAIM 7.  THE METHOD WAS AMENDED FROM ALL CELLS

8    TO EUKARYOTIC CELLS WHICH ESSENTIALLY EXCLUDES BACTERIA

9    OR SINGLE CELLS, BUT IT WOULD INCLUDE YEAST AND MAMMALIAN

10   CELLS.  AND IT WOULD EXCLUDE THE PROKARYOTES, WHICH ARE

11   BACTERIA AND OTHER SINGLE CELLS.

12           SO THAT CLAIM 7 WAS AMENDED JUST AS MR.

13   BASSETT SAID, BUT WHAT HE FAILED TO POINT OUT IS THAT

14   SOME OF THE ASSERTED CLAIMS ARE DEPENDENT FROM CLAIM 7,

15   AND THOSE INCLUDE ON THE NEXT SLIDE, SLIDE 13, CLAIMS 10

16   AND 12, CLAIM 10 RECITES "THE METHOD OF CLAIM 7, WHEREIN

17   SAID ORGANISM IS YEAST".  AND CLAIM 12 RECITES, "THE

18   METHOD OF CLAIM 7, WHEREIN SAID ORGANISM IS A MAMMAL."

19           NOW, YEAST AND MAMMALS, BY DEFINITION, ARE

20   EUKARYOTES.  SO WHEN YOU AMEND CLAIM 7, IF THE

21   INDEPENDENT CLAIM IS TO RECITE ONLY EUKARYOTES, YOU

22   HAVEN'T DONE ANYTHING TO CLAIMS 10 AND 12.  THOSE ARE

23   ORIGINAL CLAIMS.

24           IF YOU CAN PICTURE IT AS A VENN DIAGRAM, SO

25   THE ORIGINAL VENN DIAGRAM PRIOR TO THE AMENDMENT OF CLAIM

1    7, IS A BIG CIRCLE, AND THEN THERE IS A TINY CIRCLE

2    INSIDE THAT THAT RECITES ONLY MAMMALIAN CELLS.

3              THE AMENDMENT TO EUKARYOTIC CELLS IN THE '545

4    PATENT SHRINKS THE BIG CIRCLE A LITTLE BIT BECAUSE NOW

5    THE BIG CIRCLE DOESN'T INCLUDE BACTERIA, BUT THE LITTLE

6    CIRCLE TO MAMMALS AND THE OTHER LITTLE CIRCLES TO YEAST,

7    THOSE DIDN'T CHANGE AT ALL BECAUSE THEY WERE ALWAYS

8    EUKARYOTES.

9              SO THOSE WERE ORIGINAL CLAIMS.  WE ARE

10   ENTITLED TO PAST DAMAGES ON THOSE CLAIMS.  WE ARE

11   ENTITLED TO AN INJUNCTION ON THOSE CLAIMS.  AND WE WOULD

12   BE STRIPPED OF ALL OF THAT IF THE CASE WOULD BE STAYED

13   RIGHT NOW PREMATURELY.

14             AND THIS IS SIGNIFICANT, YOUR HONOR, BECAUSE

15   IF YOU GO PLEASE TO SLIDE 17, MORE THAN JUST AN ACADEMIC

16   EXERCISE, DISCOVERY HAS REVEALED, IN FACT, THAT THERE IS

17   AN ENTIRE PROJECT AT PRECISION, PROJECT X, WHICH IS BASED

18   ON INFRINGING THAT UNAMENDED CLAIM TO MAMMALIAN CELLS.

19   AND WE HAVE TESTIMONY THAT WE TOOK FROM A PRECISION

20   SCIENTIST ON THAT POINT WHERE, IN OUR VIEW, HE MATCHED UP

21   AN EXPERIMENT IN HIS LABORATORY NOTEBOOK WITH HIS

22   TESTIMONY TO CLAIM 7 OF THE '545 PATENT.

23             AND IF YOU LOOK AT THEIR BUSINESS PLAN, THEY

24   INDICATE QUITE CLEARLY AT THE SECOND BULLET POINT THAT

25   THEY ARE ENGAGED IN EXPERIMENTS WITH BACTERIA, YEAST,

1    MAMMALIAN CELL LINES, PLANTS AND AGAINST VIRUSES.

2            SO THERE IS NO QUESTION THAT WE HAVE CLAIMS

3    THAT CAN EMERGE FROM THE PATENT OFFICE REEXAMINATION IN

4    UNAMENDED FORM WHICH WOULD ENTITLE US TO BOTH PAST

5    DAMAGES AND AN INJUNCTION.

6            THE SAME IS TRUE WITH RESPECT TO THE '605

7    PATENT, YOUR HONOR, AND IF YOU COULD PLEASE GO TO SLIDE

8    14.  NOW, I THINK AT THE END OF MR. BASSETT'S

9    PRESENTATION YOU ASKED HIM, YOUR HONOR, WHETHER A MARKMAN

10   HEARING WOULD BE FUTILE AT THIS POINT.

11           I TAKE THE COMPLETELY OPPOSITE POSITION.  IT

12   IS FAR FROM FUTILE.  IN FACT, IT IS NECESSARY TO

13   DETERMINE THE SCOPE OF THE ORIGINAL CLAIMS BECAUSE THERE

14   IS A BIG DISPUTE OVER THAT.  UNLESS THE CLAIMS, ANY -- A

15   MERE AMENDMENT TO THE CLAIMS IN REEXAM DOES NOT

16   CONSTITUTE A SUBSTANTIAL CHANGE TO THE CLAIMS SUCH THAT

17   YOU WOULD NOT BE ENTITLED TO PAST DAMAGES OR AN

18   INJUNCTION.

19           IN OUR VIEW, THE '545 PATENT, THERE IS NO

20   QUESTION.  I THINK WE HAVE JUST DEMONSTRATED THAT THEY

21   ARE JUST WRONG ON THE FACTS IN THEIR SUPPLEMENTAL BRIEF

22   OF LAST WEEK.  WE CAN'T HAVE ORIGINAL CLAIMS.  WE ARE

23   ENTITLED TO AN INJUNCTION.  WE ARE ENTITLED TO PAST

24   DAMAGES.  IN FACT, WE BELIEVE THAT WE HAVE PROVED THAT

25   THEY HAVE INFRINGED THAT ORIGINAL CLAIM.

1          IN THE '605 PATENT, THE QUESTION IS A LITTLE

2    MORE SUBTLE BECAUSE THE WORD "CHROMOSOMAL" DOES NOT

3    EXPRESSLY APPEAR IN THE ORIGINAL CLAIMS.  HOWEVER, WE

4    HAVE A WORLD RECOGNIZED EXPERT, DR. BARRY STODDARD, WHO

5    AGREES WITH OUR CLAIM CONSTRUCTION THAT WHEN YOU READ THE

6    CLAIM IN THE '605 PATENT, CHROMOSOMAL IS INHERENT IN THAT

7    CLAIM, AND THAT INSERTION OF THE WORD "CHROMOSOMAL" DOES

8    NOTHING TO ALTER THE SCOPE OF THE CLAIM.  IT IS NOT A

9    SUBSTANTIAL AMENDMENT BECAUSE THE ENTIRE PATENT IS

10   DIRECTED TO CREATING TRANSGENIC ORGANISMS.

11          THAT DOESN'T WORK UNLESS YOU ARE ALTERING THE

12   CHROMOSOMAL DNA BECAUSE YOU NEED THE PROGENY OF THOSE

13   ALTERED CELLS TO PROLIFERATE AND CREATE THE TRANSGENIC

14   CORN, FOR EXAMPLE, THAT YOU ARE TRYING TO PRODUCE.

15          SO THE CLAIM DOESN'T MAKE SENSE IF IT JUST

16   READS ANY DNA.  IT SAYS IN THE DNA ITSELF.  "CHROMOSOMAL"

17   WAS INSERTED CLEARLY FROM THE SLIDE 14, BUT IT WAS SIMPLY

18   TO MAKE EXPRESSED WHAT WAS ALREADY INHERENT.

19          AND SO WE DON'T AGREE THAT THE CLAIMS OF THE

20   '605 PATENT HAVE BEEN SUBSTANTIALLY AMENDED.  WE BELIEVE

21   THAT WE ARE ENTITLED TO PAST DAMAGES AND AN INJUNCTION ON

22   THE '605 PATENT.

23          BUT MORE IMPORTANTLY, IN TERMS OF THE MARKMAN

24   HEARING, YOUR HONOR, THE COURT IS THE ONLY ENTITY THAT

25   CAN DECIDE THAT.  THE COURT DOES NOT HAVE TO ACCEPT ANY

1   CLAIM CONSTRUCTION THAT THE PATENT OFFICE DETERMINES, AND

2   THE PATENT OFFICE CAN'T DETERMINE WHETHER THE CLAIMS HAVE

3   BEEN SUBSTANTIALLY AMENDED.  THAT IS AN ISSUE FOR THE

4   COURT, AND THAT IS DEAD ON IN THE MARKMAN HEARING.

5           WE BELIEVE IF THERE WAS A MARKMAN HEARING, WE

6   WOULD BE PROVED RIGHT WITH RESPECT TO THE '605 PATENT AND

7   THAT WE WOULD STILL BE ENTITLED TO AN INJUNCTION AND PAST

8   DAMAGES ON THAT PATENT.

9           IF YOU CAN TURN PLEASE TO SLIDE 16.  THE

10  SECOND BULLET POINT -- THIS IS A SLIDE WITH REGARD TO

11  FEDERAL CIRCUIT LAW ON THIS VERY ISSUE OF SUBSTANTIVELY

12  AMENDED CLAIMS.  THE FIRST BULLET POINT IS FROM A KAUFMAN

13  CASE, AND IT READS (QUOTE) "AMENDMENTS THAT DO NOT

14  EXPAND, NARROW, OR OTHERWISE ALTER THE MEANING OR SCOPE

15  OF THE CLAIMS ARE SUBSTANTIALLY IDENTICAL TO THE ORIGINAL

16  CLAIMS UNDER SECTION 252."

17          AND SECTION 252 IS THE SECTION OF THE PATENT

18  STATUTE THAT INDICATES THAT IF YOU DO SUBSTANTIALLY

19  AMEND, YOU MAY NOT BE ENTITLED TO PAST DAMAGES OR AN

20  INJUNCTION.

21          BUT CLEARLY THE FEDERAL CIRCUIT HAS FOUND THAT

22  ANY AMENDMENT DOESN'T CONSTITUTE SUBSTANTIAL AMENDMENT.

23  YOU HAVE TO LOOK AT IT.

24          AND THE NEXT BULLET POINT, THE TENNANT CASE,

25  IS DIRECTLY ANALOGOUS TO THE AMENDMENTS IN THE '605

1    PATENT BECAUSE THERE THE PATENT TECHNOLOGY WAS A SWEEPING

2    MACHINE WHICH WAS CITED IN THE ORIGINAL CLAIM THAT

3    RECITED A FIRST WALL AND A SECOND BOTTOM WALL.  AND SO

4    THEY AMENDED THE CLAIM TO RECITE A FIRST BOTTOM WALL

5    EXPRESSLY.

6              AND WHAT THE COURT AND FEDERAL CIRCUIT FOUND

7    THERE WAS THAT INSERTING THE WORD "BOTTOM" AFTER "FIRST"

8    WAS NOT A SUBSTANTIAL AMENDMENT BECAUSE IT WAS INHERENT

9    IN THE ORIGINAL CLAIM.  IF YOU HAVE A FIRST WALL AND A

10   SECOND WALL, SECOND BOTTOM WALL, THEN THE FIRST WALL MUST

11   HAVE BEEN A BOTTOM WALL AS WELL.

12             WE MAKE THE SAME ARGUMENT WITH REGARD TO THE

13   '605 PATENT.  IF YOU ARE ALTERING THE DNA, IN THE DNA, IF

14   YOU ARE CLEAVING IN THE DNA, WHEN YOU LOOK AT THE ENTIRE

15   SPECIFICATION OF OUR PATENT, IT'S CLEAR THAT YOU ARE

16   TALKING ABOUT THE CHROMOSOMAL DNA BECAUSE YOU ARE MAKING

17   TRANSGENIC ORGANISMS.

18             SO WE BELIEVE UNDER FEDERAL CIRCUIT LAW WE ARE

19   ENTITLED TO A FINDING THAT THESE ARE NOT SUBSTANTIAL

20   AMENDMENTS TO THE '605 PATENT.  THERE IS NO DISPUTE THAT

21   THERE -- THERE SHOULDN'T BE ANY DISPUTE THAT WE DIDN'T

22   SUBSTANTIALLY AMEND AT LEAST SOME OF THE CLAIMS IN THE

23   '545 PATENT, AND IF THERE WERE A MARKMAN HEARING, I THINK

24   THAT WOULD PROVIDE A LOT OF CLARITY ON THESE ISSUES

25   BECAUSE THIS COURT IS THE ONLY ENTITY NOW STANDING THAT

1    CAN MAKE THOSE DECISIONS.  IT'S IRRELEVANT TO THE PATENT

2    OFFICE.  THEY CAN'T DO IT.  THEY DON'T HAVE THE POWER TO.

3              SO I WOULD NOW LIKE TO TURN BACK TO SLIDE 2,

4    PLEASE.  SO IN ADDITION TO THE PREJUDICE THAT WE WOULD

5    SUFFER, THERE ARE, OF COURSE, THREE QUESTIONS THAT COURTS

6    HAVE TYPICALLY ASKED WHEN DECIDING WHETHER TO GRANT OR

7    DENY A STAY, AND THOSE ARE THE STAGE OF THE LITIGATION,

8    WILL IT SIMPLIFY ALL OF THE ISSUES IF YOU ALLOW THE

9    PATENT OFFICE TO CONDUCT A REEXAMINATION TO COMPLETION

10   FIRST, AND IS THERE ANY PREJUDICE OR TACTICAL

11   DISADVANTAGE TO THE NON-MOVING PARTY IF THE STAY IS

12   GRANTED.

13             THE NEXT SLIDE SORT OF SUMMARIZES THE AMOUNT

14   OF DISCOVERY THAT HAS OCCURRED.  I DON'T AGREE THAT THE

15   CASE IS ONLY ABOUT HALFWAY THROUGH DISCOVERY.  THE

16   PARTIES EXCHANGED HUNDREDS OF THOUSANDS OF DOCUMENTS.

17             THE COURT:  MR. RICHTER, I HATE TO INTERRUPT

18   YOU, BUT I WILL -- AND I WILL TELL MR. BASSETT -- THE

19   COURT DOESN'T BELIEVE IT IS HALFWAY THROUGH EITHER, BASED

20   ON THE SCHEDULING ORDER.

21             MR. RICHTER:  OKAY.

22             THE COURT;  SO IF EITHER SIDE THINKS THAT WE

23   HAVE GOT 50 PERCENT MORE TO GO IN TERMS OF DISCOVERY,

24   THEN YOU ARE SADLY --

25             MR. BASSETT:  YOUR HONOR, IF I COULD CLARIFY,

1    I MUST HAVE BEEN MISHEARD.  I SAID --

2              THE COURT:  MR. BASSETT, I UNDERSTAND.  I WAS

3    JUST MAKING A QUICK POINT THAT ONE WAY OR THE OTHER THE

4    COURT VIEWS THE CASE IS WELL BEYOND HALFWAY THROUGH, SO

5    ANYWAY.

6              MR. RICHTER:  I WILL MOVE ON THEN, YOUR HONOR.

7    I DON'T THINK THERE IS MUCH MORE THAT NEEDS TO BE SAID

8    ABOUT THIS SLIDE OTHER THAN I WOULD JUST POINT OUT THAT

9    THE ONE AREA OF DISCOVERY THAT IS STILL GOING ON IS THIRD

10   PARTY FACT DISCOVERY FOR PIONEER.

11             AND THE REASON, SINCE YOU DID MENTION THE

12   SCHEDULING ORDER AND THE DATE THAT IS LONG PASSED, THE

13   REASON THAT IS STILL GOING ON IS THAT IS NECESSARY TO OUR

14   EXPERT REPORT ON INFRINGEMENT AND, IN FACT, PIONEER HAS

15   BEEN MONITORING THIS MOTION TO STAY.  AND BEFORE

16   PRECISION EVEN FILED A MOTION, PIONEER WAS INDICATING TO

17   THE IOWA COURT THAT THEY THOUGHT THEY SHOULDN'T HAVE TO

18   GO FORWARD WITH THE FACT DISCOVERY OF THEM UNTIL THIS

19   MOTION WAS DECIDED.

20             WE DIDN'T TELL THEM THAT IT WAS INTENDED TO

21   FILE THIS MOTION, SO OBVIOUSLY THEY MUST HAVE LEARNED IT

22   FROM PRECISION, AND FROM OUR PERSPECTIVE, THEY ARE TRYING

23   TO USE THAT TO SLOW DOWN THE DISCOVERY IN IOWA.

24             THAT HAS SINCE BEEN DECIDED AGAINST THEM.  AND

25   WE ARE TRYING TO MOVE FORWARD WITH THAT, ALTHOUGH IT'S

1    NOT GOING AS QUICKLY AS WE WOULD LIKE.

2             THE FINAL THING I WOULD JUST SAY ON THE

3    SCHEDULE, ALTHOUGH I DON'T BELIEVE IT'S RELEVANT TO THIS

4    MOTION, IS THAT CELLECTIS DISPUTES THAT WE DID ANYTHING

5    TO SLOW DOWN THE DISCOVERY PROCESS.  THAT IS SIMPLY NOT

6    TRUE.  WE HAVE PRODUCED HUNDREDS OF THOUSANDS OF

7    DOCUMENTS.  WE HAVE PRODUCED OUR WITNESSES.  ALL OF THE

8    WITNESSES CAME FROM FRANCE AND APPEARED IN NEW YORK.  WE

9    DID EVERYTHING WE COULD TO FACILITATE EXPEDITIOUS

10   DISCOVERY IN THIS CASE.

11            IF WE CAN GO TO THE NEXT SLIDE, PLEASE.  THE

12   SECOND CONSIDERATION IS, YOU KNOW, WHETHER THE

13   REEXAMINATION WILL ADDRESS ALL THE TRIAL ISSUES.

14   PRECISION HAS TRIED TO DISCOUNT OUR SUPPLEMENTAL COUNTS

15   FOR UNFAIR COMPETITION, LIBEL PER SE, AND THE LANHAM ACT

16   VIOLATIONS.  WE TAKE THOSE COUNTS VERY SERIOUSLY.

17            THE PATENT OFFICE HAS NO BEARING.  THE

18   DETERMINATION OF THE REEXAMINATION HAS NO BEARING ON

19   THOSE COUNTS.

20            PRECISION HAS TRIED TO CONTEND THAT IF THEY

21   ARE RIGHT AND THE REEXAMINATION GOES TO COMPLETION AND

22   ALL THE CLAIMS STAND REJECTED, THAT SOMEHOW EXCUSES THE

23   UNFAIR AND DECEPTIVE STATEMENTS IN THEIR PRESS RELEASES.

24   WE COMPLETELY DISAGREE.  AS SET FORTH IN EXHIBITS O

25   THROUGH S OF OUR OPPOSITION TO THIS MOTION TO STAY, THOSE

1    PRESS RELEASES STAND ON THEIR OWN AS UNFAIR COMPETITION.

2    THEY SUGGESTED TO THE PUBLIC THAT THE PATENT OFFICE HAD

3    DETERMINED THAT CELLECTIS AND PASTEUR HAD ENGAGED IN

4    INEQUITABLE CONDUCT AND FRAUD, AND THE IMPACT OF THEM WAS

5    SEVERE.

6            WITHIN HOURS OF THE PRESS RELEASES GOING OUT,

7    CELLECTIS' STOCK TANKED 20 PERCENT.  IT CAME BACK AFTER

8    THAT, BUT THE DAMAGE HAD BEEN DONE TO CELLECTIS' PATENT

9    AND BUSINESS VALUATION, AND IT APPEARS TO HAVE BEEN

10   INTENDED DAMAGE.  IN SUBSEQUENTLY PRODUCED DOCUMENTS, IT

11   WAS LEARNED THAT PRECISION INTENTIONALLY ATTACKED

12   CELLECTIS' STOCK TICKER TO THE PRESS RELEASE WITH THE

13   IDEA THAT IT WOULD BE MONITORED BY THE INVESTMENT

14   COMMUNITY.

15           AT LEAST ONE OF PRECISION'S OFFICERS INDICATED

16   IN AN E-MAIL THAT HE WAS A LITTLE CONCERNED ABOUT THE

17   SEVERITY OF THE PRESS RELEASE.  HE WASN'T SURE THEY

18   SHOULD DO IT.  AND THEY DID IT ANYWAY.  THEY ATTACHED THE

19   STOCK PRICE, AND THEN IT WAS SHOWN IN ADDITIONAL E-MAILS

20   THAT THEY MONITORED THAT STOCK PRICE AFTER THE PRESS

21   RELEASE TO SEE WHAT AFFECT IT WOULD HAVE.

22           SO WE TAKE THAT VERY SERIOUSLY, THAT THE

23   PATENT OFFICE CANNOT DO ANYTHING TO ALTER THE HISTORY OF

24   THE WAY THOSE PRESS RELEASES WERE MADE AND THE INTENT

25   BEHIND THOSE PRESS RELEASES.  AND WE THINK OUR UNFAIR

1    COMPETITION AND LIBEL PER SE AND LANHAM ACT VIOLATIONS

2    WILL STAND.  THEY STAND ON THEIR OWN.  THEY HAVE NOTHING

3    TO DO WITH THE REEXAMINATION.

4              AND FINALLY ON THIS POINT, WE NOTE THAT

5    PRECISION SORT OF ASSUMES THAT THEY ARE GOING TO WIN IN

6    THE PATENT OFFICE.

7              ONE OTHER POINT ON THE PRESS RELEASES.  THEY

8    WERE, IN FACT -- THERE IS ANOTHER E-MAIL THAT INDICATES

9    THAT THEY WERE, IN FACT, TIMED APPROPRIATELY BECAUSE THEY

10   KNEW THAT CELLECTIS WOULD SHORTLY THEREAFTER HAVE A

11   SHAREHOLDERS' MEETING.  SO THEY WERE DIRECTED AND

12   TARGETED AT THE SHAREHOLDERS WITH AN INTENT TO HARM

13   CELLECTIS, AND THEY WERE UNFAIR AND THEY SUGGESTED THINGS

14   THAT ARE SIMPLY NOT TRUE, AND WE STAND BEHIND AND INTEND

15   TO PURSUE THOSE SUPPLEMENTAL COUNTS.

16             FINALLY, I WOULD JUST SAY, THERE HAS BEEN --

17   IT'S A LITTLE MURKY, I THINK, FROM MR. BASSETT'S

18   PRESENTATION ABOUT THE STATUS OF THE REEXAMINATION.  IT'S

19   POSSIBLE THAT THE REEXAMINATION WILL NOT RESOLVE ANY OF

20   THE ISSUES IF CELLECTIS PREVAILS OR PASTEUR PREVAILS IN

21   THOSE REEXAMINATIONS.

22             NONE OF THE OFFICE ACTIONS IS FINAL.  THEY ARE

23   TITLED AS (QUOTE) "CLOSING PROSECUTION", BUT WE CAN'T --

24   PASTEUR CANNOT APPEAL FROM THOSE OFFICE ACTIONS AS THEY

25   STAND RIGHT NOW.

1          MOREOVER, IT'S NOT DEFINITE THAT THERE WILL

2     ONLY BE ONE MORE SUBMISSION FROM THE PATENT OWNERS.

3     YOU ARE ALLOWED TO PUT A SUBMISSION IN AFTER AN ACTION

4     CLOSING PROSECUTION.  YOU CANNOT APPEAL THAT YET.  YOU

5     CAN PUT A SUBMISSION IN.

6          THE PATENT OFFICE CAN DO ANY ONE OF A NUMBER

7     OF THINGS.  THEY COULD COME BACK AND GIVE YOU A FINAL

8     APPEALABLE OFFICE ACTION, BUT THEY MIGHT NOT DO THAT.

9     THEY MIGHT REOPEN PROSECUTION.  THE PATENT OWNERS MIGHT

10    PUT AN ADDITIONAL PAPER IN AFTER THAT.  THEN PRECISION

11    WOULD BE ENTITLED TO COMMENT ON THAT PAPER.

12         SO IT'S NOT A DEFINITE ONE MORE ACT TO FINAL

13    APPEALABILITY.  THERE IS A WHOLE NUMBER OF THINGS THAT

14    COULD HAPPEN TO DRAG THIS PROCESS OUT FURTHER, AND IF WE

15    PREVAIL, THE PATENT OFFICE WILL HAVE DETERMINED NOTHING

16    THAT HELPS THIS CASE IN ANY WAY.

17         THE NEXT SLIDE SPEAKS TO THE PREJUDICE THAT

18    CELLECTIS WILL SUFFER WITH REGARD TO PRECISION'S DELAY IN

19    FILING FOR REEXAMINATION.  I THINK IT'S IMPORTANT TO NOTE

20    THAT THE FIRST REQUEST FOR REEXAMINATION THAT PRECISION

21    MADE WAS NOT WITH RESPECT TO THE PATENTS-IN-SUIT.  IT WAS

22    WITH RESPECT TO TWO DIFFERENT PATENTS THAT ARE RELATED TO

23    THE PATENTS-IN-SUIT, BUT THEY ARE DIFFERENT STAND ALONE

24    PATENTS.

25         SO FROM OUR PERSPECTIVE, PRECISION WAS

1    ESSENTIALLY USING THE PATENT OFFICE AS A FOCUS GROUP.

2    LET'S TEST OUT OUR ARGUMENTS AND SEE IF THEY WORK.  AND

3    IF THEY DO, THEN WE'LL ACTUALLY GO TO THE REAL DEAL AND

4    REQUEST REEXAMINATION OF THE PATENTS-IN-SUIT.  AND THAT

5    IS EXACTLY WHAT THEY DID AND THAT CONTRIBUTED TO THE

6    DELAY THAT HAS BROUGHT US TO THIS POINT WHERE WE ARE

7    FACED WITH THE POTENTIAL EXPIRATION OF OUR PATENTS IN

8    2012 BEFORE THE REEXAMINATION PROCESS IS EVEN DONE.

9              IF THEY WANTED TO REEXAMINE THE

10   PATENTS-IN-SUIT, THEY SHOULD HAVE DONE THAT INITIALLY.

11   AND THERE IS NO QUESTION THAT THEY KNEW ABOUT THE PRIOR

12   ART BECAUSE IT'S IN THEIR ANSWER TO OUR COMPLAINT.  SO

13   IT'S NOT LIKE A SITUATION WHERE THEY ONLY DISCOVERED THE

14   PRIOR ART LATER ON AND THEY COULDN'T HAVE MADE THE

15   REQUEST FOR REEXAMINATION.  THERE IS SIMPLY NO EXCUSE FOR

16   THE 16 MONTHS DELAY IN REQUESTING REEXAMINATION OF THE

17   PATENTS-IN-SUIT AND AN ADDITIONAL SIX MONTHS BEFORE

18   FILING THIS MOTION.

19             WE HAVE ALREADY COVERED THE ISSUE OF AN

20   INJUNCTION.  I THINK WE HAVE DEMONSTRATED THAT WE ARE

21   STILL ENTITLED TO AN INJUNCTION.  WE ARE ALSO ENTITLED TO

22   AN INJUNCTION IN ADDITION TO THE PATENT CLAIMS.  WE ARE

23   ENTITLED TO AN INJUNCTION ON THE UNFAIR COMPETITION AND

24   LIBEL PER SE AND LANHAM ACT CLAIMS.

25             THE COURT:  DID YOU REQUEST THAT?  IT HASN'T

1    BEEN REQUESTED IN THE MOTION.  IS IT REQUESTED IN YOUR

2    PRAYER FOR RELIEF?

3             MR. RICHTER:  IT'S IN OUR PRAYER FOR RELIEF,

4    YES, YOUR HONOR.

5             AND I THINK THAT IS IMPORTANT, YOUR HONOR, TO

6    POINT OUT THAT COURTS DO, IN FACT, HOLD TRIALS ON CLAIMS

7    THAT ARE UNDER REEXAMINATION WHEN AN INJUNCTION IS BEING

8    SOUGHT, AND I THINK THAT IS IMPORTANT IN THIS CASE TO

9    CLEAR THE AIR.

10            PRECISION AND CELLECTIS ARE CLEARLY

11   COMPETITORS.  THEY ARE COMPETING FOR SOME OF THE SAME

12   CUSTOMERS.  I THINK THE AIR NEEDS TO BE CLEARED WITH

13   RESPECT TO THE UNFAIR COMPETITION STATEMENTS THAT HAVE

14   BEEN MADE AND WITH REGARD TO THE PATENT INFRINGEMENT

15   BECAUSE IF WE WAIT UNTIL THE REEXAMINATION IS DONE, IF

16   THE CASE IS STAYED AND WE WAIT, THAT DAMAGE WILL NEVER BE

17   RECOVERABLE BECAUSE THE PARTIES THAT ENGAGE OR THAT

18   ENGAGE THE CELLECTIS'S OF THE WORLD AND THE PIONEERS OF

19   THE WORLD FOR THEIR ENDONUCLEASES ARE BIG COMPANIES THAT

20   NEED CERTAINTY AS TO WHOM THEIR PARTNERS ARE, AND THEY

21   ARE NOT GOING TO WAIT FOR THE REEXAMINATION IF THIS CASE

22   IS STAYED.  THEY ARE GOING TO MOVE FORWARD.  CELLECTIS IS

23   GOING TO LOSE THOSE CUSTOMERS, POTENTIALLY, AND THAT

24   CAN'T BE COMPENSATED BY MONETARY DAMAGES.  THOSE

25   PARTNERSHIPS ARE GOING TO GO FORWARD AND NOT BE

1    RECOVERABLE.

2              THE NEXT SLIDE JUST DEMONSTRATES GRAPHICALLY

3    THE TIME PERIOD THAT RESULTED IN THIS DELAY.  AND I WILL

4    JUST NOTE A COUPLE OF THE DATES, THAT WE FILED THIS

5    COMPLAINT IN MARCH OF 2008, AND THE REEXAMINATION

6    REQUESTS WERE NOT MADE UNTIL JULY OF 2009.

7              AND THE MOTION TO STAY WAS NOT MADE UNTIL

8    FEBRUARY OF 2010, AFTER THEY -- THE PATENT OFFICE HAD

9    TAKEN SOME ACTION.  SO AGAIN, THAT IS A TOTAL OF 22

10   MONTHS, AND WE BELIEVE IT'S PREJUDICIAL TO CELLECTIS.

11             NOW, ONE QUESTION IS WHY DID THEY DELAY.  YOU

12   KNOW, WHY DID THEY TAKE THAT MANY MONTHS.  AND A

13   POTENTIAL ANSWER TO THAT QUESTION, AND THE REASON THEY

14   MAY WANT TO STAY THIS CASE NOW PENDING THE REEXAM AND

15   WAITING UNTIL OUR PATENTS EXPIRE IS THAT IF THEY HAD

16   REQUESTED THE STAY EARLIER OR THEY HAD REQUESTED THE

17   REEXAMINATION EARLIER AND THEY LOST IN THE PATENT OFFICE,

18   THEN THEY WOULD BE ESTOPPED IN THE TRIAL FROM RAISING ANY

19   OF THE SAME ARGUMENTS THAT THEY MADE OR COULD HAVE MADE

20   DURING THE REEXAMINATION IN THIS TRIAL.

21             SO, IN OTHER WORDS, YOU CAN'T MAKE PRIOR ART

22   ARGUMENTS TO THE PATENT OFFICE, LOSE, AND THEN MAKE THE

23   SAME ARGUMENTS TO A FEDERAL COURT WHEN YOU REQUESTED

24   INTER PARTES EXAMINATION WHICH IS A NEW FORM OF

25   REEXAMINATION.

1          SO WE BELIEVE THAT IS A REASON THAT THEY ARE

2    TRYING TO STAY THIS CASE, WAIT FOR THE PATENTS TO EXPIRE,

3    AND AVOID A TRIAL.  AND THAT IS THE REASON WHY THEY TOOK

4    SO LONG TO REQUEST THAT REEXAMINATION WHEN THEY COULD

5    HAVE DONE IT A LOT EARLIER.

6          THE NEXT SLIDE EXPANDS SORT OF ON WHAT WE

7    BELIEVE THE LIKELY SCHEDULE WOULD BE IN THE

8    REEXAMINATION.  SO OUR PATENTS EXPIRE IN MAY OF 2012.

9    ASSUMING -- EVEN ASSUMING THAT YOU HAVE A FINAL

10   APPEALABLE DECISION FROM THE PATENT OFFICE IN THE

11   REEXAMINATION SOMETIME IN THE SECOND HALF OF 2010, WHICH

12   AGAIN MAY NOT OCCUR.  IT COULD BE THAT THE PATENT OWNERS

13   PREVAIL.  IT COULD BE THAT THE PATENT OFFICE WANTS AN

14   ADDITIONAL ROUND OF SUBMISSIONS FROM THE PATENT OWNER AND

15   FROM PRECISION.  SO THAT THAT MAY NOT EVEN BE A CORRECT

16   ASSUMPTION.  IT MAY BE 2011 BEFORE WE EITHER PREVAIL OR

17   THERE IS A FINAL APPEALABLE DECISION.

18          BUT ASSUMING THAT IS THE CASE, THE

19   REEXAMINATION, IN OUR VIEW, IS NOT LIKELY TO END UNTIL

20   2013 OR 2015, AND THE REASON FOR THAT IS THAT THE INTER

21   PARTES REEXAM IS A VERY NEW PROCEEDING.  I THINK IT WAS

22   ESTABLISHED IN AROUND 2001.  THERE HAVEN'T BEEN THAT

23   MANY.

24          WHEN YOU TALK ABOUT STATISTICS OF THE AVERAGE

25   PENDENCY OF AN INTER PARTES REEXAM, IT'S REPORTED

1    RECENTLY AT 36 AND A HALF MONTHS.  BUT WHEN YOU LOOK

2    BEHIND THOSE STATISTICS -- AND WE HAVE AN ARTICLE FROM

3    MR. R. SHANG WHO DID JUST THAT.  IN FACT, THAT IS MUCH

4    SHORTER THAN IT OTHERWISE WOULD BE IF THE PARTIES WERE

5    ACTUALLY APPEALING THE FINAL REJECTIONS.

6              SO, IN OTHER WORDS, I THINK THERE HAS BEEN

7    ABOUT 700 INTER PARTES REEXAMS SINCE ITS INCEPTION.

8    ACCORDING TO MR. SHANG, ONLY THREE OF THOSE HAVE THUS FAR

9    GONE FROM A FINAL REJECTION TO AN APPEAL TO THE BOARD.

10   IN A COUPLE OF INSTANCES AMONG THOSE THREE, IT TOOK TWO

11   YEARS TO GET A DECISION FROM THE BOARD.  SO THE 36 AND A

12   HALF MONTHS IS REALLY REPORTING ON THE AVERAGE PENDENCY

13   FROM THE REQUEST TO A FINAL REJECTION ALLOWING IT TO

14   APPEAL BECAUSE IN MANY OF THOSE INSTANCES THERE WAS NO

15   APPEAL.

16             AND SO IF YOU -- IF YOU ARE TALKING ABOUT 2011

17   BEFORE WE GET A FINAL, ASSUMING THINGS DON'T GO WELL FOR

18   THE PATENT OWNERS AND YOU GET A FINAL REJECTION, THEN

19   IT'S PROBABLY GOING TO BE 2013 BEFORE THE BOARD FINALLY

20   DECIDES THAT AND THEN ANOTHER YEAR FOR THE FEDERAL

21   CIRCUIT, TYPICALLY, WOULD BE 2014.

22             SO IT'S POSSIBLE THAT WE WILL NEVER HAVE A

23   PATENT IF YOU STAY THE CASE BECAUSE THEY ARE GOING TO

24   EXPIRE IN 2012 ANYWAY, AND THEN WE WOULD LOSE ALL OF OUR

25   RIGHTS TO A POTENTIAL INJUNCTION THAT WE THINK ARE VERY

1    REAL AND PREJUDICIAL IF THEY ARE STRIPPED FROM CELLECTIS.

2            THE NEXT SLIDE JUST SHOWS IN VERY BRIEF

3    SUMMARY SOME OF THE CASES THAT WERE CITED IN OUR BRIEF

4    WHERE COURTS HAVE DENIED STAY REQUESTS IN CIRCUMSTANCES

5    THAT ARE VERY SIMILAR TO THOSE FOUND HERE.

6            AND THE FIRST CASE, THE GEORGE KESSEL CASE,

7    THE COURT NOTED IN DENYING THE STAY THAT ALL OF THE

8    ISSUES WOULD NOT BE SIMPLIFIED BECAUSE THE PTO REEXAM

9    CANNOT ADDRESS THE TRADEMARK CLAIMS THAT WERE ALSO

10   PENDING IN ADDITION TO PATENT INFRINGEMENT CLAIMS.

11           THAT IS ANALOGOUS TO HERE WHERE WE HAVE OUR

12   UNFAIR COMPETITION CLAIMS AND THAT IS A REASON FOR

13   DENYING THE STAY REQUEST HERE.

14           IN THE XEROX CASE, THE DEFENDANT WAS AWARE OF

15   THE REEXAMINATION PRIOR ART IN MARCH OF 1998, BUT DIDN'T

16   FILE A REEXAM REQUEST UNTIL OCTOBER OF 1998 AFTER THE

17   COURT ISSUED AN ADVERSE SUMMARY JUDGMENT DECISION AGAINST

18   IT.  THAT IS AN EVEN SHORTER PERIOD THAN HERE WHERE THE

19   COMPLAINT WAS FILED IN MARCH OF 2008, AND THE REQUEST

20   WASN'T FILED UNTIL JULY OF 2009.

21           AND IT'S ANALOGOUS IN THE SENSE THAT I THINK

22   MR. BASSETT IS INDICATING THAT THEY EXPECTED TO WIN THE

23   MOTION TO DISMISS AND THEY DIDN'T, AND SO NOW THEY ARE

24   PURSUING REEXAMINATION AND THE STAY.

25           AND THEN FINALLY THE BARTEX CASE IS PROBABLY

1    THE CASE MOST CLOSELY ON POINT BECAUSE THERE THE COURT

2    FOUND THAT THE 16 MONTHS DELAY BY FEDEX IN FILING THE

3    PATENT OFFICE REQUEST FOR REEXAMINATION WAS JUST TOO LONG

4    AND THERE WAS PREJUDICE TO THE PLAINTIFF AND THEY,

5    THEREFORE, DENIED THE STAY.

6            IN THAT CASE, THE TRIAL WAS ABOUT NINE MONTHS

7    AWAY FROM THE DECISION, AND I THINK THAT IS -- IT'S HARD

8    TO SAY.  I DON'T KNOW THE COURT'S CALENDAR OR SCHEDULE,

9    BUT I THINK SIX MONTHS FROM NOW WE CAN HAVE A TRIAL IF

10   THE CASE IS NOT STAYED AND THERE WAS A MARKMAN HEARING

11   AND WE COMPLETED EXPERT DISCOVERY.

12           THE NEXT SLIDE SHOWS, BECAUSE THERE ARE SO

13   MANY CASES IN CELLECTIS OR IN PRECISION'S BRIEF THAT WE

14   TRIED JUST TO IN BULLET POINTS DESCRIBE THE KINDS OF

15   FACTS IN THE CASES THAT THEY CITE FOR THE PROPER

16   SITUATION THAT A STAY IS APPROPRIATE AND POINT OUT THAT

17   THOSE FACTS ARE NOT PRESENT IN OUR CASE.

18           FOR EXAMPLE, IN THE ASCII COURT CASE THERE WAS

19   LITTLE OR NO DISCOVERY THAT OCCURRED.  IN THE BROADCAST

20   INNOVATION CASE, THE PLAINTIFF WAS ONLY SEEKING MONETARY

21   DAMAGES AND INJUNCTION WAS NOT SOUGHT, SO THERE WAS NOT

22   THE DEGREE OF PREJUDICE THAT THERE IS HERE.

23           IN THE GIOELLO ENTERS. VS. MATTEL, THE

24   PATENTEE WAS NOT SELLING ANYTHING RECOVERED BY THE

25   PATENTS-IN-SUIT.  THAT IS NOT TRUE.  IN A BUNCH OF CASES,

THE TAP PHARM CASE, THE CORNERSTONE CASE, K.L.A. CASE, A

NUMBER OF OTHERS, THE REEXAMINATION REQUEST WAS MADE TO

THE PATENT OFFICE BEFORE THE LAWSUIT WAS EVEN FILED OR

SHORTLY AFTER IT WAS FILED AS OPPOSED TO THE BIG DELAY

HERE.

IN THE EARHART CASE THE PRIOR ART WAS

DISCOVERED DURING THE COURSE OF THE LITIGATION AS OPPOSED

TO HERE WHERE IT'S CLEAR THEY KNEW ABOUT IT FROM THE

BEGINNING.

IN A NUMBER OF CASES, INCLUDING THE INSITUFORM

CASE THAT MR. BASSETT SINGLED OUT IN HIS PRESENTATION,

THAT PATENTEE KNEW OF THE INFRINGEMENT FOR MANY YEARS.

SO, FOR EXAMPLE, IN INSITUFORM, THE PATENTEE WAS AWARE OF

THE LAWSUIT FOR SIX YEARS, SO IT'S HARD FOR THE PATENTEE

TO SAY I AM PREJUDICED BY STOPPING THE LAWSUIT NOW.

THAT IS NOT TRUE HERE.  WE FILED THE LAWSUIT

WHEN WE KNEW ABOUT IT.

AND FINALLY, THERE WAS A CASE, SORENSON WHERE

THE PATENTS-IN-SUIT WERE EXPIRING BEFORE THE TRIAL COULD

OCCUR.  THAT IS NOT THE CASE HERE.  WE CAN HAVE A TRIAL

BEFORE MAY OF 2012, I WOULD RESPECTFULLY SUBMIT.

AND THEN FINALLY ON SLIDE 10, THERE IS ANOTHER

ISSUE THAT I THINK IS IMPORTANT WITH RESPECT TO EXAMINING

WHY PRECISION -- IT WOULD BE IN THEIR INTEREST TO RUN OUT

THE CLOCK ON THE LIFE OF OUR PATENTS, AND THAT IS THIS.

1          IF WE DO HAVE A TRIAL UNDER 35 U.S.C. 317(B),

2     IF THERE IS A TRIAL AND CELLECTIS PREVAILS AND GETS A

3     JURY VERDICT THAT THE PATENTS ARE NOT INVALID AND THAT

4     WERE TO BE AFFIRMED BY THE FEDERAL CIRCUIT BEFORE THE

5     PATENT OFFICE COMPLETED ITS REEXAMINATION, THE REEXAM

6     WOULD BE SUSPENDED.

7          AND IT'S ONE THING IF YOU REQUEST THE REEXAM

8     EARLY ON, BUT IF YOU WAIT AND DELAY AND SAY, NO, NO,

9     LET'S STOP THE TRIAL, LET'S LET THE PATENT OFFICE DO ITS

10    WORK, THAT IS COMPLETELY UNFAIR WHEN CONGRESS SET IT UP

11    SO IF YOU DID GET AN EARLY TRIAL AND YOU WERE ABLE TO

12    CONVINCE A JURY AND GET A FINDING OF NOT INVALID AND THE

13    FEDERAL CIRCUIT AFFIRMED, THERE SHOULDN'T BE

14    REEXAMINATION ON THE SAME PRIOR ART LITIGATED IN THE

15    FEDERAL COURT.

16          THE COURT:  MR. RICHTER, AGAIN, I HATE TO

17    INTERRUPT, BUT YOU HAVE RAISED AN ISSUE THAT TROUBLES ME.

18    IF I DENY THE MOTION TO STAY AND WE MOVE FORWARD, YOU

19    PREVAIL, AND TRIAL BEFORE THE FEDERAL COURT HAS A RIGHT

20    TO THE PATENT OFFICE COMES BACK AND SAYS THAT YOUR

21    PATENTS ARE INVALID.

22          MR. RICHTER:  THEN, YOUR HONOR --

23          THE COURT:  SO WHAT HAPPENS IN THAT SCENARIO?

24          I UNDERSTAND WHERE YOU PREVAIL AND ALL THAT,

25    BUT WHAT WAS -- IF YOU HAVE AN ADVERSE FINDING IN THE

1    MIDDLE WHILE THE CASE IS STILL PENDING BEFORE THE FEDERAL

2    CIRCUIT ON APPEAL.

3           MR. RICHTER:  YOU WOULD BE ON THE CUTTING EDGE

4    BECAUSE I DON'T BELIEVE THERE IS A CASE ON THAT POINT,

5    BUT I DID READ THE MANUAL OF PATENTS EXAMINING PROCEDURE

6    ON THAT POINT, AND I BELIEVE THERE IS A PROVISION IN

7    THERE THAT ALLOWS THE PATENT OFFICE -- THE PEOPLE THOUGHT

8    THESE RULES THROUGH WHEN THEY SET THEM UP FOR THAT VERY

9    REASON THERE, AND YOU ASK IF YOU HAVE A JURY VERDICT ON A

10   FINDING OF NON-INVALID, THE PATENT OFFICE WILL CONSIDER A

11   REQUEST TO STAY THE FEDERAL EXAMINATION WHILE THE FEDERAL

12   CIRCUIT IS REVIEWING AND DECIDING WHETHER TO AFFIRM.

13          THE COURT:  IT'S THE FLIP SIDE OF WHAT WE HAVE

14   NOW.

15          MR. RICHTER:  YES.  I AGREE.  IT'S THE FLIP

16   SIDE, BUT THEY WOULD ARGUE THEY WANT WHAT WE WANT, BUT WE

17   DIDN'T DELAY, SO THAT IS THE DIFFERENCE.  IT WOULD BE ONE

18   THING IF THEY REQUESTED REEXAM BEFORE THE CASE STARTED,

19   BUT THE FACT THAT THEY DELAYED, WE THINK WE SHOULD NOT BE

20   ESTOPPED FROM GOING FORWARD WITH THIS CASE.  AT LEAST NOT

21   NOW.  IT'S DEFINITELY PREMATURE.

22          I THINK WE ALREADY COVERED THE SUBSTANTIAL

23   AMENDMENT TO THE CLAIMS WHICH WE DISPUTE.  MY FINAL POINT

24   WOULD JUST BE MR. BASSET MADE A LOT OF COMMENTS ABOUT

25   PATENT OWNERS AND CELLECTIS HIDING PRIOR ART, AND DOING

THINGS DECEPTIVE IN FRONT OF THE PATENT OFFICE.  THAT IS

NOT TRUE.

          IF WE CAN GO TO SLIDE 24, PLEASE, ONE OF THEIR

MAJOR REFERENCES THAT THEY CITE IN TERMS OF INVALIDITY

AND TERMS OF SUPPOSEDLY INEQUITABLE CONDUCT WAS GIVEN TO

THE PATENT OFFICE DURING PROSECUTION OF THE APPLICATION

THAT LED TO THE PATENTS-IN-SUIT.  THE BELL-PEDERSON RUNS

ON JULY 23, 2003, WAS GIVEN TO THE PATENT OFFICE.

MOREOVER, THEY HAVE DEPOSED THE PRIMARY INVENTORS AND THE

ATTORNEYS.  THERE IS NO SCINTILLA OF ANY EVIDENCE THAT

ANYBODY INTENTIONALLY DID ANYTHING TO TRY TO DEPRIVE THE

PATENT OFFICE.  IT'S NOT TRUE.

          THIS ISSUE ABOUT BROADENING THE CLAIMS, THE

CLAIMS ARE REVIEWED BY THE PATENT OFFICE UNDER THEIR

RULES AND REGULATIONS AT THE FULL SCOPE AND BREADTH THAT

THEY WERE PRESENTED TO THE PATENT OFFICE.  THAT IS A

REQUIREMENT OF THAT ADMINISTRATIVE BODY.

          IF THERE IS SOMETHING WRONG WITH BROADENING

THE CLAIMS, THEN I DON'T THINK A PATENT OWNER WOULD HAVE

A PROBLEM.  THERE IS NOTHING IMPROPER ABOUT THAT.  PEOPLE

DO IT EVERY DAY.  IT'S ALLOWED FOR UNDER THE PATENT

OFFICE RULES AND PROCEDURES.  THEY REVIEW THE PROCEDURE

TO SEE IF YOU ARE BROADENING BEYOND THE SCOPE OF THE

SPECIFICATION.  THEY SEE IF YOU ARE TRYING TO CLAIM MORE

THAN YOU ARE ENTITLED TO.  THAT WAS MADE.  THE PATENT

1    OFFICE AGREED THAT THEY ARE ENTITLED TO THE FULL BREADTH

2    AND SCOPE OF THE CLAIM THAT THEY SUBMITTED.

3              SO THE IDEA THAT THERE IS SOMETHING UNTOWARD

4    GOING ON IS JUST NOT TRUE OR THAT ANYTHING IS HIDDEN IS

5    JUST NOT TRUE.

6              IF YOU LOOK AT THE NEXT SLIDE, PLEASE, SLIDE

7    25, THE BELL-PEDERSON REFERENCE IS SMACK IN THE MIDDLE OF

8    THE PATENTS-IN-SUIT.  IF THEY WERE TRYING TO HIDE IT,

9    THEY WERE DOING A POOR JOB PUTTING IT IN THE MIDDLE OF

10   THE PATENT.

11             THE SAME THING WITH THE DELAHODDE, ANOTHER

12   REFERENCE THAT PRECISION SAYS WAS IMPROPERLY WITHHELD.

13   IT'S SMACK IN THE MIDDLE OF THE PATENTS-IN-SUIT.  NOBODY

14   WAS TRYING TO HIDE ANYTHING.  NOBODY DID ANYTHING

15   UNTOWARD, AND THERE IS NOTHING TO THAT ALLEGATION AND WE

16   OPPOSE THAT.

17             FINALLY, I WOULD SAY THAT CELLECTIS BELIEVES

18   THAT THERE ARE VERY GOOD ARGUMENTS AGAINST THE REJECTIONS

19   THAT NOW STAND IN THE PATENT OFFICE AND THEY DO EXPECT TO

20   PREVAIL AND THEY CERTAINLY SHOULDN'T BE STRIPPED OF THEIR

21   LITIGATION BECAUSE PRECISION BELIEVES THAT THEY ARE RIGHT

22   AND CELLECTIS IS WRONG.

23             THE COURT:  I WOULD BE DISAPPOINTING YOU AND

24   MR. BASSETT IF YOU DIDN'T THINK YOU WERE GOING TO

25   PREVAIL.  YOUR CLIENTS WOULD BE EVEN MORE DISAPPOINTED.

1          ALL RIGHT.  THANK YOU, MR. RICHTER.  MR.

2     RICHTER, BEFORE I LET YOU YOU STEP DOWN, -- WELL, I CAN

3     LET MR. BASSETT RESPOND BRIEFLY.

4          MR. BASSETT:  THANK YOU, YOUR HONOR.  YES,

5     VERY BRIEFLY, YOUR HONOR, A COUPLE OF POINTS, AND MR.

6     RICHTER, AT THE BEGINNING OF HIS PRESENTATION TALKED

7     ABOUT THE AMENDMENTS OF ADDING "EUKARYOTIC" TO THE

8     INDEPENDENT CLAIM OF '545, NOT ALTERING THE SCOPE OF THE

9     DEPENDENT CLAIM 10 AND CLAIM 12 LIMITING TO MAMMALIAN

10    CELLS.

11         YOUR HONOR, WHAT PRECISION DOES IS WORKS IN

12    PLANT CELLS.  ALL OF ITS COMMERCIAL PRODUCTS AND

13    COMMERCIAL ACTIVITY RELATES TO PLANT CELLS.  CLAIMS 10

14    AND 12 HAVE NOTHING TO DO -- THERE IS NO WAY THEY

15    INFRINGE THOSE CLAIMS WITH THEIR COMMERCIAL PRODUCTS.

16    EVERYTHING ELSE THAT MR. RICHTER CITED TO YOU SHOWING

17    SOME WORK IN THE PROJECT X, THAT IS EXPERIMENTAL AND

18    EXPERIMENTS ARE NOT INFRINGING ACTIVITY.

19         BUT EVEN IF THEY ARE, THERE IS NO DAMAGE.

20    THEY DON'T -- HAVEN'T DONE ANYTHING WITH THIS, SO I THINK

21    THAT IS AN ARGUMENT THAT MISDIRECTS FROM TWO RELEVANT

22    POINTS.  THE CLAIMS THAT THEY IN GOOD FAITH ASSERT

23    AGAINST US IN LITIGATION HAVE BEEN SUBSTANTIALLY NARROWED

24    IN THE PROSECUTION BY ADDING "EUKARYOTIC" TO THE

25    LIMITATION.

1          AS TO THE '605 PATENT, MR. RICHTER ARGUED THAT

2     ADDING "CHROMOSOMAL" TO THE MODIFIED DNA WAS IRRELEVANT,

3     WAS INHERENT ANYWAY BECAUSE DNA CANNOT BE PASSED TO

4     PROGENY UNLESS IT'S CHROMOSOMAL.

5          IN FACT, WE HAVE AN EXPERT THAT SAYS THAT IS

6     NOT TRUE.  NON-CHROMOSOMAL MAY -- DNA CAN PASS CERTAIN

7     TRAITS ON, BUT EVEN MORE IMPORTANTLY, IF IT'S SO INHERENT

8     IN THE CLAIM, THEN WHY DID THE PATENT OFFICE REJECT THOSE

9     CLAIMS ON REEXAMINATION AND WHY DID THE PATENT ATTORNEY

10    NEVER MOVE TO AMEND TO ADD CHROMOSOMAL IF IT'S INHERENT.

11         WE THINK IT'S NOT INHERENT.  THEY ARE ADDING

12    IT FOR A VERY OBVIOUS REASON.

13         YOUR HONOR, I APOLOGIZE IF I WAS

14    MISUNDERSTOOD, IF I SAID WE WERE HALFWAY THROUGH

15    DISCOVERY.  WHAT I MEANT TO SAY -- AND I WOULD CLARIFY --

16    IS THAT WE WERE HALFWAY TO TRIAL FROM A COST AND

17    INCONVENIENCE AND PREJUDICE PERSPECTIVE FOR OUR CLIENT.

18         WHAT IS COMING UP IS EXPERT DISCOVERY,

19    DISPOSITIVE MOTIONS, PREPARING FOR TRIAL.  I ASSURE THE

20    COURT THAT FROM MY CLIENT'S PERSPECTIVE, MORE THAN HALF

21    OF THE CASE IS STILL TO COME WHEN THEY SEE OUR BILLS.

22         THE COURT:  I UNDERSTAND, MR. BASSETT.

23         MR. BASSETT:  IF I COULD HAVE JUST A MOMENT,

24    YOUR HONOR.

25         THE COURT:  TAKE WHATEVER TIME YOU NEED.

1    MR. BASSETT:  AS I POINTED OUT WHEN I MADE MY

2    ORIGINAL ARGUMENTS, YOUR HONOR, CLEARLY THE AMENDMENTS IN

3    THE PROSECUTION IN THE REEXAM PROCESS HAVE BEEN ADDED TO

4    OVERCOME PRIOR ART IF THIS CASE GOES FORWARD.

5    THEREFORE, WE BELIEVE -- LET'S SAY THOSE

6    AMENDMENTS ARE ALLOWED.  PRECISION SHOULD THEN BE ALLOWED

7    TO ALTER OR TO AMEND ITS INDIVIDUAL CONSTRUCTIONS IN

8    LIGHT OF THE AMENDMENTS AND IT MAKES NO SENSE TO HOLD

9    PRECISION TO THE VALIDITY ARGUMENTS THAT RELATE TO THE

10   CURRENT CLAIMS BEING ASSERTED.

11   YOUR HONOR, I THINK MR. RICHTER'S ESTOPPEL

12   ARGUMENTS SUPPORT A STAY HERE.  IT IS TRUE THAT IN AN

13   INTER PARTES REEXAMINATION PROCESS THAT WE CAN BE AND ARE

14   ESTOPPED IF WE MAKE CERTAIN ARGUMENTS IN THE REEXAM

15   PROCESS, BUT IF THE PTO, IN FACT, REJECTS THOSE ARGUMENTS

16   AND WE WOULD BE ESTOPPED, WOULDN'T THE COURT WANT TO KNOW

17   THAT?  WOULDN'T THAT BE IMPORTANT FOR PART OF THE PROCESS

18   SO WE DON'T REINVENT THE WHEEL AND HAVE THIS COURT AND

19   THE JURY DECIDE THE VALIDITY ISSUE THAT, IN FACT, WE

20   WOULD BE ESTOPPED FROM ARGUING UNDER THEIR ARGUMENT.

21   SO, IT'S -- TO ME, THAT SUGGESTS, IN FACT, IN

22   FAVOR OF A STAY TO SEE WHAT THE PATENT OFFICE IS GOING TO

23   DO.

24   MR. RICHTER CITED STATISTICS ABOUT THE TIMING

25   OF REEXAMS AND APPEALS, AND I AM NOT GOING TO CONTEST THE

1    STATISTICS AS AN AVERAGE, BUT, YOUR HONOR, THOSE ARE

2    GENERAL STATISTICS.  THIS REEXAM PROCESS HAS MOVED WITH

3    LIGHTNING SPEEDS BY COMPARISON TO MOST REEXAMS IN THE

4    PATENT OFFICE, AND OUR SUGGESTION IS THAT BECAUSE THE

5    CLAIMS ARE SO CLEARLY INVALID AS THE EXAMINERS HAVE SAID,

6    THIS IS AN EASY ONE, LET'S MOVE IT ALONG.

7            THE FINAL POINT, YOUR HONOR, THE BARTEX CASE

8    THAT MR. RICHTER SAID IS ONE OF THE KEY CASES WHERE THE

9    MOTION FOR STAY WAS DENIED, IN THAT CASE THE DEFENDANT

10   FILED THE REQUEST FOR A STAY, THE MOTION FOR A STAY UPON

11   THE MERE GRANTING OF THE REEXAM PETITION.

12           THAT IS EXACTLY WHAT WE DID NOT DO, YOUR

13   HONOR.  WE ARE BETWIXT AND BETWEEN.  WE GET BLAME FOR

14   DELAY BECAUSE WE WAITED TO MAKE SURE THE PATENT OFFICE

15   ACTED ON THE SUBSTANCE OF THE CLAIM AND REJECTED BEFORE

16   WE FILED MOTION FOR A STAY, SO WE WEREN'T WASTING

17   ANYONE'S TIME FOR FILING A PREMATURE MOTION.

18           BUT NOW IT HAPPENED.  THEY CITE THE BARTEX

19   CASE AGAINST US, BUT THAT WAS DENIED BECAUSE THE MOTION

20   WAS PREMATURE BECAUSE THE PATENT OFFICE SAID WE ARE GOING

21   TO REEXAMINE.

22           THE COURT:  LET ME ASK, IF I CAN, ASK THE

23   PLAINTIFF TO PULL UP PAGE 7.

24           MR. BASSETT:  THE QUESTION IS FOR ME?

25           THE COURT:  YES, MR. BASSETT.  THAT

1    SCHEDULE -- AND I THINK YOU HAVE PRETTY MUCH ANSWERED

2    THIS -- BUT MR. BASSETT, THAT WAS -- I MEAN, THAT IS A

3    LITTLE TROUBLING TO ME.  I AM JUST GOING TO CANDIDLY TELL

4    YOU THE LENGTH OF TIME THERE, AND I UNDERSTAND YOUR

5    ARGUMENT IN RESPONSE THAT YOU ARE NOT CONTESTING THOSE

6    FIGURES, PER SE.  I KNOW YOU HAVEN'T HAD A CHANCE TO, BUT

7    YOU ARE SAYING THAT THIS CASE YOU BELIEVE WILL MOVE MORE

8    QUICKLY BECAUSE YOU SAY IT HAS VERY LITTLE MERIT.

9            MR. BASSETT:  I THINK THE ONE THING I CAN SAY

10   WITH SOME CERTAINTY, THE AVERAGE INTER PARTES

11   REEXAMINATION PENDENCY IS 36.5 MONTHS.  WE ARE LESS THAN

12   A YEAR FROM THE FILING OF OUR REEXAMINATION PETITION AND

13   WE ARE NEAR THE END, SO THAT PIECE OF THE REEXAM, SO

14   THERE IS NO DOUBT THAT THIS REEXAM IS MOVING MUCH MORE

15   QUICKLY THAN THESE AVERAGE STATISTICS.

16           AND AGAIN, I WON'T PLAY ADVOCATE AND SUGGEST

17   WHY THAT IS, BUT WE THINK THERE IS A REASON FOR THAT, BUT

18   I AGREE THAT KIND OF DELAY WOULD TROUBLE ME AS WELL, BUT

19   THAT IS NOT WHAT WE HAVE.  MOST LIKELY NO ONE CAN PREDICT

20   FOR SURE.

21           THE COURT:  I AM NOT ASKING YOU TO BE A

22   FORTUNE TELLER.  ALL RIGHT.

23           MR. RICHTER, IF YOU WANT TO HAVE A BITE AT THE

24   APPLE IN RESPONSE.  IF NOT -- I AM NOT ENCOURAGING IT.

25           MR. RICHTER:  ONE, I RECOGNIZE YOU ARE NOT

1     ENCOURAGING.

2             THE COURT:  I UNDERSTAND NO ONE COULD RESIST

3     THE TEMPTATION, SO I THOUGHT YOU WOULD TAKE MY

4     INVITATION.

5             MR. RICHTER:  ON THE 36 AND A HALF MONTHS

6     PENDENCY, AND THE FACT THAT THIS ONE HAS BEEN PENDING FOR

7     A YEAR, THE REASON YOU CAN'T PREDICT IS AGAIN PRECISION

8     SEEMS TO THINK THAT THE NEXT OFFICE ACTION WILL BE A

9     FINAL APPEALABLE ACTION NO MATTER WHAT.  THAT IS NOT

10    TRUE.  THERE CAN BE MULTIPLE REITERATIONS BEFORE YOU GET

11    TO APPEAL.

12            THE FINAL THING ON THE SUPPOSEDLY ONLY

13    EXPERIMENTAL USE OF MAMMALIAN CELLS AND CELL LINES AND

14    THAT ACCORDING TO PRECISION DIMINISHES IMPORTANCE IN THE

15    CASE.  NOT TO CELLECTIS.  THAT IS EXTREMELY IMPORTANT.

16    IN FACT, DISCOVERY HAS SHOWN PRECISION HIRED SOMEBODY

17    ESPECIALLY TO GEAR UP PROJECT X, A MAMMALIAN CELL

18    BIOLOGIST TO HANDLE THAT PROJECT.  THOSE EXPERIMENTS ARE

19    VERY IMPORTANT.  WE ARE ENTITLED TO AN INJUNCTION.

20            WHETHER OR NOT YOU HAVE COMMERCIALIZED

21    SOMETHING, YOU ARE CLEARLY TRYING TO DEVELOP A COMMERCIAL

22    PRODUCT FOR GENE THERAPY AND OTHER VERY EXCITING EDGE

23    CUTTING OF THESE ENGINEERED ENDONUCLEASES.  THE FACT THAT

24    IT'S EXPERIMENTAL FORM, NOW WE WANT AN INJUNCTION.  THAT

25    DOESN'T DIMINISH THE VALUE OF CLAIM 12.  YOU WANT AN

1    INJUNCTION AGAINST EXPERIMENTS THAT ARE NOT BEING

2    MARKETED.

3            WE DON'T KNOW WHEN THEY WILL BE MARKETED.  THE

4    PATENT EXPIRES IN 2012.

5            BUT THEY ARE ALREADY ENGAGED WITH OTHERS WHO

6    MAY HAVE USES FOR TECHNOLOGY, GETTING GRANTS TO DO

7    EXPERIMENTS.

8            THE COURT:  I AM A SIMPLE COUNTRY GUY.  A DAY

9    AFTER THE PATENT EXPIRES, THAT COULD PUT SOMETHING ON THE

10   MARKET THE DAY AFTER THE PATENT EXPIRES.

11           MR. RICHTER:  WELL, IT DEPENDS, YOUR HONOR.

12   IF THEY STARTED MAKING IT THE DAY AFTER THE PATENT

13   EXPIRED, YES, BUT THE THINGS THAT THEY MAKE PRIOR TO

14   THAT, IMAGINE IF THEY WERE MAKING THINGS PRIOR TO THAT

15   BASED ON THE PATENT TECHNOLOGY, OBTAINING BUSINESS DEALS

16   WITH PEOPLE.

17           THE COURT:  I UNDERSTAND THAT.  I UNDERSTAND

18   THAT.

19           MR. RICHTER:  THAT IS WHAT WE ARE PURSUING IN

20   THE DISCOVERY AND THAT IS WHAT WE INTEND TO DEMONSTRATE

21   AT TRIAL, THAT THERE IS A REASON THAT THE EXPERIMENTS ARE

22   BEING DONE.  THEY STARTED A WHOLE NEW PROJECT JUST TO DO

23   THOSE EXPERIMENTS.

24           THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

25           MR. BASSETT:  YOUR HONOR, IF I CAN OFFER ONE

1    CITATION.

2              THE COURT:  ONE QUICK CITATION.

3              MR. BASSETT:  JUST A STATUTORY CITE TO ADDRESS

4    THE ISSUE ABOUT THE DELAY.  THOSE STATISTICS AREN'T

5    LIMITED TO CASES, I DON'T BELIEVE, TO REEXAMS ALSO IN

6    LITIGATION, AND UNDER THE 35 U.S.C. SECTION 305, "A

7    REEXAM THAT IS BEING CONDUCTED ON PATENTS THAT ARE ALSO

8    IN LITIGATION, THAT REEXAMINATION, BY STATUTE, MUST MOVE

9    FORWARD WITH SPECIAL DISPATCH."  (CLOSED QUOTE)

10             SO, AGAIN, THOSE STATISTICS DON'T NECESSARILY

11   APPLY TO THIS CASE.

12             THE COURT:  I UNDERSTAND AND APPRECIATE THAT.

13             ALL RIGHT.  I AM CONTENT WITH THE INFORMATION

14   WITH REGARD TO THE MOTION TO STAY.  I DO WANT TO ALSO

15   HEAR ARGUMENTS ON THE MOTION TO COMPEL, MR. BASSETT OR

16   MS. FERRERA, WHOEVER IS ARGUING THAT.

17             MS. FERRERA, I WOULD BE GLAD TO HEAR FROM YOU.

18             MS. FERRERA:  GOOD MORNING, YOUR HONOR.

19             I DO WANT TO PUT THESE MOTIONS IN CONTEXT.  I

20   DO WANT TO GO BACK JUST BRIEFLY TO SOME OF THE EARLY

21   PROCEDURAL HISTORY IN THE CASE.

22             AS YOUR HONOR HEARD AND PROBABLY IS AWARE, ONE

23   OF THE FIRST THINGS THAT HAPPENED IN THIS CASE IS THAT

24   PRECISION FILED A MOTION TO DISMISS THE ACTION ON THE

25   GROUNDS THAT CELLECTIS, IT BELIEVED, DID NOT HAVE

1    STANDING TO PURSUE THE PATENT INFRINGEMENT CLAIMS BECAUSE

2    IT WAS JUST LICENSEE OF THE PATENTS AND NOT THE ACTUAL

3    OWNER OF THE PATENTS-IN-SUIT, AND PRECISION'S BELIEF WAS

4    THAT THE TWO PATENT HOLDERS WHO ARE TWO FRENCH

5    UNIVERSITIES OUGHT TO BE PLAINTIFFS IN THE CASE AS WELL

6    IN PART BECAUSE OF THE NEED TO GET DISCOVERY FROM THEM

7    AND THE DIFFICULTY OF DOING THAT IF THEY WERE NOT

8    PLAINTIFFS IN THE CASE.

9              AS YOUR HONOR KNOWS, JUDGE HOWARD ULTIMATELY

10   DID DENY THAT MOTION, BUT IN DOING SO, HE RELIED IN

11   SIGNIFICANT PART ON REPRESENTATIONS BY CELLECTIS AND BY

12   THE PATENT HOLDERS THAT THE PATENT HOLDERS WOULD

13   COOPERATE IN DISCOVERY.

14             NOW, CELLECTIS, IN ITS OPPOSITION, SAYS THAT

15   PRECISION IS JUST TRYING TO RELITIGATE THIS ISSUE AND

16   TRYING TO REVISIT THE MOTION TO DISMISS.  THAT IS NOT

17   AT ALL WHAT WE ARE DOING.  THE SIMPLE FACT, HOWEVER, IS

18   THAT THERE WERE REPRESENTATIONS MADE IN CONNECTION WITH

19   THE MOTION TO DISMISS THAT JUDGE HOWARD RELIED ON IN

20   DENYING THE MOTION TO DISMISS, AND SINCE DISCOVERY HAS

21   GOTTEN UNDER WAY, IT APPEARS THAT THOSE REPRESENTATIONS

22   WERE LESS THAN ACCURATE AND THAT, IN FACT, PRECISION HAS

23   BEEN THWARTED IN ITS ATTEMPTS TO OBTAIN DISCOVERY FROM

24   CELLECTIS ITSELF.

25             THERE ARE TWO PARTICULAR AREAS THAT THIS

1   MOTION IS DIRECTED TO.  THE FIRST RELATES TO SOME

2   PRIVILEGED ISSUES, AND IN PARTICULAR THE ISSUE IS WHETHER

3   OR NOT COMMUNICATIONS BETWEEN CELLECTIS OR BETWEEN PATENT

4   HOLDERS OR THE INVENTORS ON THE ONE HAND AND

5   COMMUNICATIONS BETWEEN FOREIGN PATENT AGENTS OR FOREIGN

6   IN-HOUSE COUNSEL ARE PRIVILEGED.

7           PRECISION'S POSITION IS THAT THERE ARE

8   COMMUNICATIONS THAT ARE NOT PRIVILEGED; HOWEVER,

9   CELLECTIS WITHHELD A LARGE NUMBER OF DOCUMENTS ON THE

10  BASIS OF CLAIMED PRIVILEGE WITH RESPECT TO THOSE

11  COMMUNICATIONS EVEN THOUGH THERE IS NO QUESTION THAT

12  THOSE INDIVIDUALS ARE NOT A MEMBER OF ANY BAR AND

13  CERTAINLY NOT A MEMBER OF ANY U.S. BAR, AND NOT A MEMBER

14  OF THE BAR EVEN IN FRANCE, WHERE THEY ARE LOCATED, THAT

15  WOULD RENDER THOSE COMMUNICATIONS PRIVILEGED.

16          THE SECOND AREA THAT I WOULD LIKE TO TALK

17  ABOUT ALSO ARE DOCUMENTS SPECIFICALLY IN THE POSSESSION,

18  CUSTODY OR CONTROL OF THE TWO PATENT HOLDERS, INSTITUTE

19  PASTEUR AND UNIVERSITE -- I DON'T KNOW HOW TO SPEAK

20  FRENCH -- UNIVERSITE PIERRE ET MARIE CURIE, I BELIEVE, IS

21  THE NAME OF THE OTHER INSTITUTE.

22          PRECISION MADE NUMEROUS REQUESTS FOR THE

23  PATENT HOLDERS FOR THE DOCUMENTS RELATING TO THE

24  PATENTS-IN-SUIT AND RELATING TO THE DOCUMENTS OF THOSE

25  PATENTS.  IT MADE THOSE REQUESTS THROUGH CELLECTIS

1    BECAUSE OF IT'S INABILITY TO SERVE FORMAL DISCOVERY

2    REQUESTS ON THEM.  AND IN SPITE OF THOSE REQUESTS AND IN

3    SPITE OF THEIR PROMISES OF COOPERATION, ONLY A HANDFUL OF

4    DOCUMENTS HAVE BEEN PRODUCED.

5              I WOULD LIKE TO START WITH THE PRIVILEGE ISSUE

6    BECAUSE I THINK THAT INFORMS, IN PART, THE OTHER ISSUE AS

7    WELL.  AS I INDICATED, CELLECTIS HAS ASSERTED A PRIVILEGE

8    WITH RESPECT TO A LARGE NUMBER OF COMMUNICATIONS BETWEEN

9    FOREIGN PATENT AGENTS, NOT PATENT AGENTS, NOT ATTORNEYS,

10   BUT IN-HOUSE COUNSEL AT CELLECTIS OR INSTITUT PASTEUR AND

11   CLAIMED THAT THOSE DOCUMENTS ARE PROPERLY WITHHELD.  IN

12   FACT, IT PROVIDED A PRIVILEGED LOG THAT CONTAINS ALMOST

13   3,000 ENTRIES, AND ALTHOUGH UNDOUBTEDLY SOME OF THE

14   DOCUMENTS ARE PRIVILEGED, A LARGE NUMBER OF THEM APPEAR

15   NOT TO BE PRIVILEGED BECAUSE THEY DO NOT INVOLVE A U.S.

16   ATTORNEY OR ANOTHER INDIVIDUAL WHO WOULD BE SUFFICIENT TO

17   CREATE A PRIVILEGE.

18             NOW, PRECISION RAISED CONCERNS ABOUT THE

19   PROPRIETY OF CELLECTIS' PRIVILEGED DESIGNATIONS IN AUGUST

20   OF LAST YEAR.  THERE WAS A SERIES OF CORRESPONDENCE BACK

21   AND FORTH BETWEEN THE PARTIES OVER THE COURSE OF THE NEXT

22   TWO MONTHS OR SO WHERE WE WERE ATTEMPTING TO NARROW THE

23   ISSUES AND ATTEMPTING TO REACH SOME RESOLUTION OR

24   AGREEMENT ON THOSE ISSUES.

25             ULTIMATELY, CELLECTIS AGREED TO GIVE WHAT IT

1    DESCRIBES IN AN ATTORNEY LEGEND WHICH IDENTIFIED ROLES OR

2    TITLES OF THE INDIVIDUALS WHO WERE ON ITS PRIVILEGE LOG,

3    AND BASED ON THAT LEGEND, IT APPEARS AT LEAST SEVEN OF

4    THE INDIVIDUALS ON WHOM CELLECTIS BASES ITS PRIVILEGED

5    DETERMINATIONS ARE EITHER FOREIGN PATENT AGENTS OR

6    IN-HOUSE COUNSEL FOR CELLECTIS OR FOR INSTITUTE PASTEUR.

7          BASED ON RECEIVING THIS INFORMATION AND BASED

8    ON REVIEW OF THIS, CELLECTIS' CONTINUED ASSERTION OF

9    PRIVILEGE RELATING TO THOSE COMMUNICATIONS, PRECISION

10   FILED THIS MOTION IN DECEMBER OF LAST YEAR.

11         FUNDAMENTAL TO THIS ISSUE IS THE PRINCIPLE

12   THAT FOR AN ATTORNEY/CLIENT PRIVILEGE TO EXIST, ONE OF

13   THE INDIVIDUALS ON THE COMMUNICATION MUST BE A MEMBER OF

14   THE BAR OF THE COURT.  THAT IS BLACK LETTER LAW.  THERE

15   IS NO DISPUTE ABOUT THAT.  FOREIGN PATENT AGENTS ARE

16   TYPICALLY NOT ATTORNEYS, YET ALONE MEMBERS OF A BAR OF

17   COURTS, AND BASED UPON THAT, JUDGE HOWARD RULED IN THE

18   BURROUGHS WELLCOME CASE THAT THE STANDING RULE IN THE

19   CIRCUIT IS THAT COMMUNICATIONS WITH FOREIGN PATENT AGENTS

20   ARE NOT SUBJECT TO AN ATTORNEY/CLIENT PRIVILEGE IN THE

21   UNITED STATES, AND THAT THE CITE FOR THAT IS 143 F.R.D.

22   611 AT PAGE 616.

23         NOW, THERE ARE EXCEPTIONS TO THE RULE SUCH AS

24   WHERE THE PATENT AGENT IS ACTING AT THE DIRECTION OR

25   UNDER THE CONTROL OF THE U.S. ATTORNEY, BUT IT IS

1    CELLECTIS THAT BEARS THE BURDEN OF DEMONSTRATING THAT

2    THAT IS THE CASE HERE AND IT HAS NOT MADE ANY ATTEMPTS TO

3    DO THAT.

4         THE LAW IS ALSO CLEAR THAT BECAUSE UNDER

5    FRENCH LAW, IN-HOUSE COUNSEL, IN-HOUSE COUNSEL IN FRANCE,

6    ARE NOT PERMITTED TO BECOME MEMBERS OF THE BAR OF THE

7    COURT.  COMMUNICATIONS WITH SUCH IN-HOUSE COUNSEL ARE

8    ALSO NOT PRIVILEGED AND THAT RULE WAS DESCRIBED AND THE

9    CASE LAW RELATING TO THAT RULE WAS DESCRIBED IN THE LOUIS

10   VUITTON MALLETIER CASE FROM THE SOUTHERN DISTRICT OF NEW

11   YORK, 2006 U.S. -- I THINK IT'S A LEXIS 87096.  AND

12   CELLECTIS HAS NOT CITED ANY CONTRARY AUTHORITY TO THAT

13   POINT.

14        NOW, CELLECTIS ATTEMPTS TO ARGUE THAT THE

15   DOCUMENTS AT ISSUE ARE PRIVILEGED FOR TWO REASONS.

16   FIRST, IT SAYS THAT THE ATTORNEY/CLIENT PRIVILEGE DOES

17   EXTEND TO FOREIGN PATENT AGENTS.  AND SECOND, IT ARGUES

18   THAT THE DOCUMENTS, EVEN IF THAT IS NOT TRUE, THAT THE

19   DOCUMENTS ARE PRIVILEGED BECAUSE THEY WERE COMMUNICATIONS

20   WITH U.S. COUNSEL.  NEITHER OF THOSE ARGUMENTS HAS MERIT.

21        AS TO THE FIRST ARGUMENT REGARDING THE

22   APPLICATION OF PRIVILEGED OR FOREIGN PATENT, CELLECTIS

23   HAS THE LAW WRONG ON THAT.  CELLECTIS CITES THE DUPLAN

24   CASE IN SUPPORT OF ITS ARGUMENT, BUT IN FACT THAT CASE

25   EXPLICITLY REJECTED THE ARGUMENT THAT CELLECTIS IS TRYING

1    TO MAKE HERE THAT BECAUSE COMMUNICATIONS WITH PATENT

2    AGENTS ARE PROTECTED UNDER FRENCH LAW, THEY SHOULD ALSO

3    BE PRIVILEGED IN THE UNITED STATES, AND IN FACT THE

4    DISTRICT COURT IN THAT CASE REJECTED THAT HOLDING AND

5    SAID THAT IT WOULD (QUOTE) "ADOPT THE RULE THAT NO

6    COMMUNICATIONS FROM PATENT AGENTS, WHETHER AMERICAN OR

7    FOREIGN, ARE SUBJECT TO AN ATTORNEY/CLIENT PRIVILEGE IN

8    THE UNITED STATES."  AND THAT WAS THE HOLDING THAT JUDGE

9    HOWARD RELIED UPON IN THE BURROUGHS WELLCOME CASE.

10         IN ARGUING TO THE CONTRARY, CELLECTIS

11   ERRONEOUSLY RELIES ON A PORTION OF THE OPINION WHICH

12   RELATES TO THE APPLICATION OF PRIVILEGE WHEN PROSECUTING

13   FRENCH APPLICATIONS AND ACTING AS PATENT COUNSEL IN

14   FRANCE.  HOWEVER, AS CELLECTIS POINTS OUT IN ITS

15   OPPOSITION BRIEF, THERE ARE NO FRENCH PATENT APPLICATIONS

16   AT ISSUE.  WE ARE TALKING ABOUT U.S. PATENT APPLICATIONS

17   AND U. S. PROSECUTION, AND UNDER THE DUPLAN CASE AND

18   UNDER THE BURROUGHS WELLCOME CASE, THOSE COMMUNICATIONS

19   ARE NOT PRIVILEGED.

20         AS TO THE SECOND ARGUMENT THAT U.S. COUNSEL

21   WAS INVOLVED IN THE COMMUNICATIONS, THAT ALONE WOULD NOT

22   NECESSARILY RENDER THE COMMUNICATIONS PRIVILEGED.  FOR

23   EXAMPLE, AS JUDGE HOWARD EXPLAINED IN THE BURROUGHS

24   WELLCOME CASE, IF THE U.S. ATTORNEY IS MERELY SERVING AS

25   CONDUIT, THEN THE COMMUNICATION MAY NOT BE PRIVILEGED.

1        THE PROBLEM IS THAT BASED ON THE DESCRIPTIONS

2    AND CELLECTIS' PRIVILEGED LOG, WE CAN'T TELL ONE WAY OR

3    THE OTHER WHAT ROLE THE FRENCH ATTORNEYS OR FRENCH PATENT

4    AGENTS ARE PLAYING AND WHAT ROLE THE U. S. PATENT

5    ATTORNEYS ARE PLAYING.

6        IT IS CELLECTIS' BURDEN TO SHOW THAT THE

7    PRIVILEGE APPLIES AND CELLECTIS' BURDEN TO SHOW THAT THE

8    COMMUNICATIONS OUGHT TO BE PRIVILEGED BECAUSE THE U.S.

9    PATENT ATTORNEY IS PLAYING A SUBSTANTIVE ROLE IN THE

10    COMMUNICATIONS.  IT HAS FAILED TO DO THAT HERE AND THAT

11    WEIGHS IN FAVOR OF DISCLOSURE.

12        IN ADDITION, BASED ON THE PRIVILEGE LOG

13    ENTRIES, THERE ARE A LARGE NUMBER OF DOCUMENTS THAT DO

14    NOT APPEAR TO INVOLVE U.S. COUNSEL AT ALL, AND THEREFORE

15    SHOULD BE PRODUCED.  AND I HAVE A COPY OF CELLECTIS'

16    PRIVILEGE LOG AND CAN POINT OUT SOME EXAMPLES OF THAT

17    THAT WOULD BE HELPFUL TO THE COURT.

18        THE COURT:  THANK YOU.  THAT WAS ONE OF MY

19    QUESTIONS AS TO THE SPECIFIC DOCUMENTS THAT ARE AT ISSUE.

20        MR. FERRERA:  THIS IS A REVISED PRIVILEGE LOG

21    THAT CELLECTIS SENT AFTER DETERMINING SOME OF THE

22    COMMUNICATIONS IT HAS PREVIOUSLY IDENTIFIED WERE

23    PRIVILEGED BUT, IN FACT, WERE NOT.  BUT NOTWITHSTANDING

24    THAT, WE BELIEVE THERE ARE A NUMBER OF DOCUMENTS THAT --

25    A LARGE NUMBER OF DOCUMENTS THAT ARE NOT PROTECTED BY THE

1    PRIVILEGE.

2              AND AS I NOTED, THERE ARE ALMOST 3,000 ENTRIES

3    ON HERE.  I CAN'T GIVE YOU AN INCLUSIVE LIST OF ALL OF

4    THE ONES THAT WE SAY ARE NOT PROVIDED BECAUSE THERE ARE

5    SO MANY, BUT I CAN POINT OUT EXAMPLES.

6              FOR EXAMPLE, IF YOU TURN TO PAGE 2 OF THE LOG,

7    ENTRY NUMBERS 22 THROUGH 25, FOR EXAMPLE, INVOLVE

8    SOMEBODY BY THE NAME OF BRUNO BRISSON, ISABELLE BRESSAC,

9    ANDRE CHOULIKA AND FREDERIC PAQUES.

10             WE UNDERSTAND PRIVILEGE BASED UPON MS.

11   BRESSAC, HOWEVER OUR UNDERSTANDING IS MS. BRISSON IS A

12   LICENSED ATTORNEY FOR CELLECTIS, SO SHE IS IN-HOUSE

13   COUNSEL AT CELLECTIS, AND BASED ON THE CASE LAW, SHE

14   WOULD NOT BE SUFFICIENT TO CREATE A PRIVILEGE.  THERE

15   DOESN'T APPEAR TO BE ANY U.S. ATTORNEY ON THIS PRIVILEGED

16   COMMUNICATION.

17             SIMPLY, IF YOU LOOK AT ENTRIES 51 AND 52,

18   AGAIN, THERE IS COMMUNICATION BETWEEN ISABELLE BRESSAC

19   AND ANDRE CHOULIKA.  SO, AGAIN, THERE APPEARS TO BE NO

20   U. S. ATTORNEY LICENSED ON THOSE DOCUMENTS.

21             ANOTHER EXAMPLE IS ENTRY 101 THROUGH 104.  MR.

22   SOURDIVE IS AN ENGINEER, A SCIENTIST.  MS. BRESSAC AGAIN

23   IS ON THE DOCUMENT.  SAME THING WITH ENTRIES 102 AND 104

24   OR 103 AND 104.  I COULD GO ON.  THERE ARE MANY, MANY

25   OTHER EXAMPLES, BUT THESE ARE JUST A HANDFUL.  THERE

1    DOESN'T APPEAR TO BE ANY U.S. ATTORNEY THAT WOULD SUFFICE

2    TO CREATE A PRIVILEGE.

3          SO, IN SHORT, YOUR HONOR, WITH RESPECT TO THIS

4    ISSUE OF PRIVILEGE, CELLECTIS' CLAIM BASED ON

5    COMMUNICATION WITH FOREIGN PATENT AGENTS OR FOREIGN

6    IN-HOUSE COUNSEL IS IMPROPER AND WE BELIEVE THOSE

7    DOCUMENTS SHOULD BE PRODUCED.

8          WITH RESPECT TO THE SECOND ISSUE WHICH IS THE

9    PATENT HOLDERS FAILURE TO PRODUCE DOCUMENTS REQUESTED BY

10   PRECISION RELATING TO THE PATENTS-IN-SUIT AND RELATING TO

11   THE PROSECUTION, PRECISION, OF COURSE, IS HAMSTRUNG BY

12   THE FACT THAT NEITHER INSTITUT PASTEUR NOR THE OTHER

13   ENTITY, UPMC, AS WE BELIEVE, ABBREVIATING, ARE SUBJECT TO

14   THE JURISDICTION OF THE COURT AND IT'S IMPOSSIBLE FOR

15   PRECISION TO MAKE ANY FORMAL DISCOVERY REQUESTS TO THEM,

16   AND THAT'S ONE OF THE REASONS WHY PRECISION FILED THIS

17   MOTION TO DISMISS THE ACTION EARLIER.

18         HOWEVER, AT THAT TIME CELLECTIS REPRESENTED TO

19   THE COURT IN ITS OPPOSITION THAT THE PATENT HOLDERS WOULD

20   COOPERATE WITH DISCOVERY AND THE COURT RELIED ON THAT IN

21   DENYING THE MOTION TO DISMISS.

22         SINCE THAT TIME, PRECISION HAS PROCEEDED AND

23   ATTEMPTED TO OBTAIN DOCUMENTS FROM THOSE ENTITIES BY

24   SENDING THE REQUESTS TO CELLECTIS EITHER IN

25   CORRESPONDENCE OR SENDING ACTUAL REQUESTS TO THEM AND HAS

1    BEEN ATTEMPTING TO GET THE DOCUMENTS THROUGH CELLECTIS

2    FROM THE PATENT HOLDERS, AND PRECISION'S UNDERSTANDING,

3    BASED ON THE REPRESENTATIONS MADE IN CELLECTIS' FILINGS

4    WITH THE COURT, THAT THE PATENT HOLDERS WOULD RESPOND TO

5    THE REQUESTS AS IF THEY WERE PARTIES TO THE ACTION.

6           HOWEVER, AS IT'S NOTED EARLIER, ONLY A HANDFUL

7    OF DOCUMENTS HAVE BEEN PRODUCED.  I THINK IN TOTAL WE

8    HAVE RECEIVED A NUMBER OF LAB NOTEBOOKS, TWO DOCTORAL

9    THESES, AND 21 PAGES OF LOOSE LAB NOTES.  THAT IS IT.

10   THAT IS THE ENTIRETY OF THE PRODUCTION FROM INSTITUT

11   PASTEUR AND FROM UPMC.  THEY HAVE REFUSED TO PRODUCE ANY

12   OTHER DOCUMENTS RELATING TO THE CONSTRUCTION OR THE

13   INVENTION DISCLOSURE OR INTERNAL COMMUNICATIONS BETWEEN

14   THE INVENTORS AND REFUSED TO PRODUCE DOCUMENTS WHERE SUCH

15   COMMUNICATIONS BETWEEN PASTEUR AND UPMC OR BETWEEN

16   PASTEUR AND INVENTORS OR BETWEEN CELLECTIS AND PASTEUR.

17           THEY HAVE FAILED TO PRODUCE ANY DOCUMENTS

18   RELATING TO THE FIRST PUBLIC USE OR PUBLIC DISCLOSURE OF

19   THE INVENTIONS WHICH IS SOMETHING RELATED TO THE VALIDITY

20   OF THE PATENTS, AND FAILED TO PRODUCE ANY OTHER DOCUMENTS

21   RELATING TO THE VALIDITY OR ENFORCEABILITY SUCH AS PRIOR

22   ART AND INVENTION OF THE PRIOR ART.

23           THERE IS NO QUESTION THAT ALL OF THIS

24   INFORMATION IS RELEVANT TO THE VALIDITY AND

25   ENFORCEABILITY OF THE PATENTS, AND I DON'T UNDERSTAND

1    CELLECTIS TO BE DISPUTING THAT.  THERE HAS BEEN NO

2    SUGGESTION THAT THE PATENT HOLDERS DON'T HAVE THESE

3    DOCUMENTS.  THEY HAVE SIMPLY CHOSE NOT TO PRODUCE THEM,

4    AND THIS IS PARTICULARLY PROBLEMATIC AS IT RELATES TO

5    PRECISION'S INEQUITABLE PRIOR CLAIMS.  IT'S UNDISPUTED

6    THAT THE PRIOR ART REFERENCES THAT ARE THE SUBJECT OF

7    PRECISION'S INEQUITABLE CONDUCT COUNTERCLAIM WERE KNOWN

8    TO THE INVENTORS, AND IN PARTICULAR TO BERNARD DUJON WHO

9    IS THE LEAD INVENTOR ON BOTH PATENTS.

10            WHEN WE DEPOSED MR. DUJON, HE SAID HE GAVE ALL

11   THE INFORMATION TO THE IN-HOUSE ATTORNEYS OR PATENT

12   AGENTS AT PASTEUR.  BUT BECAUSE WE HAVE NOT RECEIVED ANY

13   OF THEIR INTERNAL COMMUNICATIONS, WE HAVE NOT BEEN ABLE

14   TO VERIFY THIS.  WE HAVE NOT BEEN ABLE TO DETERMINE WHO

15   AT PASTEUR HE GAVE THE INFORMATION TO.  WE HAVE NOT BEEN

16   ABLE TO DETERMINE WHAT THEY DID WITH THE INFORMATION ONCE

17   THEY RECEIVED IT OR WHY IT WASN'T DISCLOSED PROPERLY TO

18   THE PATENT OFFICE AS WE CLAIM IN THE COUNTERCLAIM.

19            CELLECTIS' PRIMARY RESPONSE TO THIS ARGUMENT

20   IS IT'S OUTSIDE PATENT COUNSEL.  THE LAW FIRM PROSECUTING

21   THE PATENT HAS PRODUCED DOCUMENTS, HAS PRODUCED ITS FILES

22   RELATING TO THE PROSECUTION OF THE PATENT, BUT THAT

23   MISSES THE POINT.  THERE IS NO QUESTION THAT FINNEGAN,

24   HENDERSON, THE LAW FIRM THAT PROSECUTED THE PATENT,

25   WOULDN'T HAVE ACCESS TO PASTEUR'S INTERNAL FILES OR

1    CELLECTIS' INTERNAL FILES, AND EVEN WITH RESPECT TO

2    COMMUNICATIONS BETWEEN THOSE ENTITIES AND FINNEGAN.

3    THERE IS NO GUARANTEE THAT FINNEGAN'S FILES ARE COMPLETE.

4    AND, IN FACT, BASED ON THE INFORMATION WE HAVE RECEIVED,

5    IT SEEMS CERTAIN THAT THEY ARE NOT COMPLETE.

6              SO THE MERE FACT THAT IT'S SOME OTHER ENTITY

7    THAT PRODUCED DOCUMENTS DOESN'T MEAN PASTEUR OR CELLECTIS

8    SHOULD NOT HAVE TO PRODUCE DOCUMENTS THAT THEY HAVE THAT

9    ARE NOT DUPLICATIVE OF THE ONES PRODUCED.

10             THE COURT:  NOT TO INTERRUPT YOU AGAIN, BUT

11   WHAT CONTROL DO THEY HAVE OVER THOSE DOCUMENTS?

12             MS. FERRERA:  WELL, WITH RESPECT TO CELLECTIS,

13   CELLECTIS ISN'T A PARTY TO THE LAWSUIT, SO THIS

14   IMPLICATES BOTH DOCUMENTS IN THE POSSESSION AND CUSTODY

15   OF THE PLAINTIFF, A PARTY TO THE LAWSUIT, AS WELL AS

16   THOSE THAT MAY BE IN THE POSSESSION OF THE PATENT HOLDERS

17   WHO ARE NOT PARTIES TO THE LAWSUIT.

18             AS TO THOSE DOCUMENTS, YOUR HONOR, WE

19   RECOGNIZE THAT THIS IS A PROBLEM AND THIS WAS WHY WE

20   FILED THE MOTION TO DISMISS.  I THINK WHAT WE ARE LOOKING

21   FOR, YOUR HONOR, IS AN ORDER FROM THE COURT THAT WOULD

22   MAKE CLEAR THAT JUST BECAUSE FINNEGAN, HENDERSON PRODUCED

23   SOME DOCUMENTS DOESN'T NECESSARILY RELEAVE THE PATENT

24   HOLDERS OR ANYONE ELSE FROM PRODUCING DOCUMENTS IN THEIR

25   FILES.

1          SECONDLY, WE WOULD LIKE TO GET THE PRIVILEGE

2    ISSUE RESOLVED SO TO THE EXTENT THAT THEY ARE WITHHOLDING

3    THE DOCUMENTS ON THE BASIS OF THE PRIVILEGE ISSUE, WE

4    WOULD WANT IT MADE CLEAR THAT THAT IS AN IMPROPER BASIS

5    FOR WITHHOLDING THE DOCUMENTS.  AND IF THE PATENT HOLDERS

6    STILL CHOSE TO IGNORE THE REQUESTS AND STILL CHOSE TO NOT

7    PRODUCE THE DOCUMENTS, I THINK WHAT WE WOULD END UP WITH

8    WHEN WE GET TO TRIAL, WE THINK IT WOULD BE APPROPRIATE AT

9    THAT TIME FOR THERE TO BE AN INSTRUCTION THAT SOME KIND

10   OF ADVERSE INFERENCE IS APPROPRIATE THAT THEY WERE

11   REQUESTED TO PRODUCE DOCUMENTS THAT WOULD EVIDENCE THAT

12   THEY DIDN'T HAVE THE APPROPRIATE INTENT OR THAT THEY

13   DIDN'T -- THEY TOOK APPROPRIATE ACTIONS AND THE FACT THAT

14   THEY FAILED TO PRODUCE THEM IS SOMETHING THAT THE JURY OR

15   THE FACT FINDER MAY TAKE INTO ACCOUNT.

16         IN SHORT, YOUR HONOR, WHAT PRECISION IS

17   LOOKING FOR HERE IS JUST THEY WANT TO BE ON THE LEVEL

18   PLAYING FIELD.  IT'S NOT APPROPRIATE FOR CELLECTIS AND

19   THE PATENT HOLDERS TO BE ABLE TO PICK AND CHOOSE WHAT

20   DISCOVERY THEY WANT TO PROVIDE JUST BECAUSE IT'S

21   CONVENIENT OR HELPFUL TO THEM, AND IGNORE DISCOVERY

22   REQUESTS THAT ARE INCONVENIENT OR UNHELPFUL TO THEM.

23         THE COURT:  ALL RIGHT.  THANK YOU.  ALL RIGHT.

24   MR. RICHTER.

25         MR. RICHTER:  I AM BACK.

1          THE COURT:  YOU DON'T HAVE ANY ASSISTANCE FROM

2     YOUR TEAMMATES, OR AT LEAST YOU ARE GOING THROUGH THE

3     LINES.

4          MR. RICHTER:  THANK YOU.  IF IT'S OKAY WITH

5     THE COURT, WE WILL CONTINUE WITH OUR PRESENTATION.

6          THE COURT:  THAT IS VERY HELPFUL.  AS A MATTER

7     OF FACT, I WOULD LIKE TO GET A COPY OF THAT TO THE EXTENT

8     POSSIBLE.  ALL RIGHT, MR. RICHTER.  DRIVE ON.

9          MR. RICHTER:  THANK YOU, YOUR HONOR.  I WOULD

10    START WITH, I THINK, SLIDE 19, PLEASE.  THE FIRST POINT

11    IS CELLECTIS HAS NOT IMPROPERLY WITHHELD ANY DOCUMENTS

12    HERE.  NOT SURPRISINGLY, I DISAGREE, AGAIN, WITH

13    PRECISION, BUT JUST GOING TO THE MOTION TO DISMISS, THAT

14    HEARING WAS HELD ON NOVEMBER 13, 2009.  I DON'T RECALL

15    ANY MENTION OF A MOTION TO COMPEL AT THAT HEARING.  AND

16    WE CERTAINLY DID NOT MISREPRESENT ANYTHING DURING THE

17    HEARING.  AND IN FACT, THE DECISION OF JUDGE HOWARD WITH

18    REGARD TO CELLECTIS' STANDING TO SUE ON ITS OWN WAS BASED

19    ON THE FACT THAT CELLECTIS, AS THE EXCLUSIVE LICENSEE

20    UNDER THE TERMS OF ITS LICENSE, HAS ALL SUBSTANTIAL

21    RIGHTS NECESSARY TO BRING A LAWSUIT ON ITS OWN WITHOUT

22    PASTEUR, AND THAT WAS THE BASIS OF THE DECISION.

23          AND JUDGE HOWARD INVITED, IN HIS ORDER, THE

24    PARTIES TO RAISE ANY ISSUE THAT THEY THOUGHT HAD SOME

25    BEARING ON HIS DECISION ON THE MOTION TO DISMISS DURING

1    THE HEARING, AND THE MOTION TO COMPEL, BY MY

2    RECOLLECTION, WAS NOT RAISED AT THAT TIME.

3            AND FRANKLY, YOUR HONOR, WE FEEL A LITTLE BIT

4    AMBUSHED BY THE PRESENTATION THAT WAS JUST MADE IN THE

5    SENSE THAT THE DOCUMENTS IDENTIFIED ON OUR PRIVILEGED LOG

6    I DON'T BELIEVE WERE EVER IDENTIFIED TO US DURING OUR

7    MEET AND CONFER, AND WE DON'T BELIEVE THAT THEIR MOTION

8    EVEN COMPLIES WITH THE LOCAL RULE 7.1(C) WHICH REQUIRES A

9    DEGREE OF SPECIFICITY WITH REGARD TO THE DOCUMENTS AT

10   HAND AND THE ISSUES AT HAND.

11           AND I KNOW MS. FERRERA CITED THE BURROUGHS

12   WELLCOME CASE FROM 1992.  I READ THAT CASE, AND IN THAT

13   CASE JUDGE HOWARD WAS SPECIFICALLY ADDRESSING IN DETAIL

14   DOCUMENTS IDENTIFIED BY A NUMBER ON A PRIVILEGE LOG AND

15   WE DIDN'T HAVE THAT OPPORTUNITY, AND WE DIDN'T GET THE

16   IDENTIFICATION JUST GIVEN BY MS. FERRERA.  SO I DON'T

17   THINK THAT IT'S EVEN RIPE.

18           IF YOU WOULD TURN, PLEASE, TO SLIDE 21, THIS

19   SHOWS THE TIMELINE FOR THE MOTION TO COMPEL.  YOU KNOW,

20   WE LONG AGO, IN SEPTEMBER 2008, SERVED OUR OBJECTIONS TO

21   THE OVERBREADTH OF THE DOCUMENT REQUEST.  THAT WAS IN

22   SEPTEMBER 2008.

23           FROM MAY TO AUGUST 2009, THE PARTIES DISCUSSED

24   RELEVANT AND PRIVILEGED ISSUES AS TO FOREIGN PATENTS,

25   PROSECUTION, AND OTHER PROSECUTION.

1      IN AUGUST 2009, WE BELIEVE WE REACHED AN

2  AGREEMENT WITH PRECISION THAT WE WOULD GO TO YOU TO

3  ADDRESS THIS ISSUE BECAUSE IT WAS AN ISSUE AND OUR JOINT

4  RECOLLECTION WAS THE LAST TIME WE WERE ON THE PHONE WITH

5  YOUR HONOR, YOU MENTIONED IF THERE WERE ANY DISCOVERY

6  ISSUES THAT THE PARTIES BELIEVED THAT YOU COULD HELP US

7  WITH, THAT YOU WERE AVAILABLE BY PHONE AND WE EMBRACED

8  THAT PROCEDURE.

9      WE DID SUGGEST THAT GIVEN THE COMPLEXITY OF

10  THE ISSUES AND THE LAW THAT YOU MIGHT WANT TO SEE SOME

11  WRITTEN SUBMISSIONS BECAUSE WE DIDN'T THINK YOU WOULD

12  DECIDE IT OVER THE PHONE.  WE WERE -- WE REITERATED THAT

13  SUGGESTION IN SEPTEMBER.  PRECISION DIDN'T RESPOND.

14      AND THEN ON OCTOBER, 20 2009, WE GOT A LETTER

15  DEMANDING THAT WE REVISIT OUR ENTIRE PRIVILEGE LOG.  THEY

16  IDENTIFIED 26 DOCUMENTS AND THAT WAS IT, BUT I DON'T

17  BELIEVE ANY OF THE DOCUMENTS WERE THE DOCUMENTS POINTED

18  OUT BY MS. FERRERA.

19      ON OCTOBER 23, WE COULDN'T REVISIT THE

20  ENTIRETY OF THE PRIVILEGE LOG IN TWO DAYS.  I THINK WE

21  WERE AT THE DEPOSITION OF DR. SERLACHA, AND WE EXPLAINED

22  WE CAN'T DO IT IN TWO DAYS, BUT WE ARE HAPPY TO TALK TO

23  YOU.

24      ON OCTOBER 23, WE GOT A LETTER SAYING THEY

25  WANTED TO MOVE TO COMPEL, AND THEN THE HEARING ON THE

1    MOTION TO DISMISS, THAT WAS NOVEMBER 13, 2009.

2             NO MOTION OF A MOTION TO COMPEL BY MY

3    RECOLLECTION.  THEN THE COURT DECIDES THAT PASTEUR DOES

4    NOT HAVE TO BE A PARTY TO THE LITIGATION.

5             THEN ON DECEMBER 31, 2009, WHILE I WAS GETTING

6    READY FOR THE NEW YEAR'S EVE PARTY, I NOTICED AN ACTIVITY

7    IN THE CASE AND ACTUALLY I THINK IT WAS THE END OF THE

8    NEW YEAR'S PARTY BECAUSE I THINK IT WAS FILED AT 11:59,

9    BY MR. MORRIS.  MAYBE HE WAS AT HIS OWN PARTY.

10            SO I GOT THAT, AND I WAS LIKE WHAT IS THIS?

11   AND WE THOUGHT THAT ISSUE HAD SUBSIDED, BUT NO HEARING

12   WAS HELD ON THE MOTION TO COMPEL, AND THAT IS WHERE WE

13   ARE NOW.

14            AND GOING ON WITH THE TIMELINE, I WOULD NOTE

15   THAT, YOU KNOW, THEY HAVE MADE A LOT DURING TODAY'S

16   HEARING IN BOTH OF THESE MOTIONS ABOUT SUPPOSEDLY

17   INEQUITABLE CONDUCT BY THE PATENT HOLDERS AND BY

18   CELLECTIS.

19            AND THE DOCUMENTS THAT THEY ARE SEEKING IN

20   THEIR MOTION TO COMPEL GO BACK TO 1992 WHEN THIS FILING

21   WAS MADE.  THE ORIGINAL FILING FOR THESE PATENTS WAS MADE

22   IN 1992.  IT GREW AS A TREE INTO 13 DIFFERENT PATENTS

23   NOW.

24            IN THE MOTION TO COMPEL, THEY ARE SAYING THEY

25   WANT EVERYTHING GOING BACK TO 1992.  BUT WHEN IT WAS

1    REVEALED RECENTLY THAT, IN FACT, A WILMERHALE PARTNER

2    WHILE EMPLOYED AT FINNEGAN AND HENDERSON WORKED ON

3    APPLICATIONS THAT LEAD TO THE PATENTS-IN-SUIT IN MID-1990

4    OR IN THE MID-90'S AND AROUND 1995 OR 1996, WHEN THAT

5    CAME TO LIGHT AND WE MOVED TO DISCOVERY, WILMERHALE,

6    BECAUSE IN OUR VIEW IT'S NOT PROPER TO ALLEGE INEQUITABLE

7    CONDUCT EVEN THOUGH THEY -- WHICH NOBODY DID ANYTHING

8    IMPROPER, INCLUDING THEIR PARTNER WHEN SHE WAS AT

9    FINNEGAN -- BUT IF YOU WERE GOING TO MAKE THAT

10   ALLEGATION, YOU SHOULDN'T BE ABLE TO MAKE IT ON BEHALF OF

11   PRECISION WHEN ONE OF THE PARTNERS WAS DAMAGED IN THE

12   CONDUCT YOU SAY WAS INEQUITABLE.

13            SO WHEN WE BROUGHT THE MOTION, NOW THEY SAY

14   NOTHING BAD -- SOMETHING BAD HAPPENED, BUT NOTHING BAD

15   HAPPENED UNTIL AFTER SHE LEFT.

16            SO NOW THE EARLIEST ANYTHING BAD HAPPENED WAS

17   1998 OR JANUARY OF 2000.  THAT IS THE ARGUMENT IN DEFENSE

18   TO THE MOTION TO DISQUALIFY AT THE SAME TIME THAT THE

19   MOTION TO COMPEL THEY ARE SEEKING DOCUMENTS GOING BACK TO

20   1992 BECAUSE AS MS. FERRERA SAID, DR. DUJON TESTIFIED

21   THAT HE HANDED OVER THE PRIOR ART IN 1992.  WHY IS THAT

22   RELEVANT IF NOTHING BAD HAPPENED UNTIL 1998 AT THE

23   EARLIEST?  I THINK THOSE ARE INCONSISTENT IN THE

24   ARGUMENT.

25            THE OTHER THING I WOULD SAY IS THAT GOING BACK

1    TO SLIDE 19, PLEASE, IT HAS BEEN POINTED OUT THAT --

2    I THINK MS. FERRERA SAID 3,000 ENTRIES ON OUR PRIVILEGE

3    LOG.  IN FACT, THERE ARE ONLY 1,700 OR SO, EVEN ON THE

4    ONE SHE HANDED UP TO YOU.  I THINK THERE MIGHT BE A POINT

5    OF CONFUSION IN THE SENSE THAT ORIGINALLY THERE WERE

6    MORE.  IT MAY HAVE BEEN ALMOST 3,000.  THAT IS BECAUSE WE

7    SERVED OUR PRIVILEGE LOG IN TWO PARTS, THE FIRST

8    PRIVILEGE LOG AND A SUPPLEMENTAL ONE, AND THERE WAS

9    OVERLAP.  SOME OF THE FIRST PRIVILEGE LOG WAS MISTAKENLY

10   REPLICATED ON THE SECOND PRIVILEGE LOG AND THERE WERE

11   ONLY ABOUT 1,700 DOCUMENTS ON THE LOG.

12              THAT MAY SOUND LIKE A LOT FOR A PATENT

13   CASE.  IT'S PRETTY LOW IN MY EXPERIENCE, AND IN FACT, I

14   WOULD HAVE ONE COPY OF THEIR PRIVILEGE LOG.  IT'S DOUBLE

15   SIDED.  SO IT'S EVEN BIGGER THAN IT LOOKS, BUT I THINK

16   THERE ARE 4,500 ENTRIES ON THEIR LOG, AND THE ENTRIES ARE

17   OF THE SAME -- ARE OF THE SAME ILK AS OURS IN TERMS OF

18   THE DESCRIPTIONS.

19              THE FIRST ONE, COMMUNICATION BETWEEN OR AMONG

20   PRECISION EMPLOYEES AND OTHER OUTSIDE COUNSEL SOLICITING

21   OR RELAYING LEGAL ADVICE.  THEY ARE GIVING THE SAME

22   DESCRIPTION WE GAVE.  THAT IS MY EXPERIENCE IN DOING THIS

23   FOR ALMOST 20 YEARS IS THAT YOU TYPICALLY GIVE WHAT YOU

24   GET.  BUT WE WERE WILLING TO TALK TO THEM.

25              WE WERE SURPRISED BY THE MOTION.  IF THEY HAD

1    SAT DOWN WITH US AND SAID EXACTLY WHAT MS. FERRERA SAID

2    HERE, I QUESTION ENTRY 21, I QUESTION ENTRY 51, 52 AND

3    103 AND 104.  WE COULD HAVE LOOKED AT THOSE AND HAD A

4    DISCUSSION BEFORE THE MOTION WAS FILED.  I DON'T THINK

5    IT'S FAIR TO SURPRISE US WITH A MOTION THAT IS

6    ESSENTIALLY, AS WE NOTE IN THE BRIEF, CHALLENGING EVERY

7    DOCUMENT ON OUR LOG.

8              I DON'T THINK WE HAVE THE BURDEN OF LOOKING AT

9    EVERY DOCUMENT ON THE LOG JUST BECAUSE THEY BELIEVE SOME

10   OF THEM MAY NOT BE PRIVILEGED.  NOTWITHSTANDING THAT,

11   EVEN AFTER GETTING THE MOTION, WE DID TAKE A LOOK AT THE

12   DOCUMENTS THAT IDENTIFIED ONE OR MORE OF THE INDIVIDUALS

13   THAT THEY QUESTIONED IN THEIR MOTION, AND AS A RESULT OF

14   THAT, THERE WERE SOME DOCUMENTS THAT WE PRODUCED AND SOME

15   OF THOSE RELATED TO BUSINESS ADVICE THAT ARGUABLY WAS NOT

16   LEGAL ADVICE.  WE PRODUCED THAT IN AN ABUNDANCE OF

17   CAUTION.

18             ON THE ISSUE OF CONTROL, AS I SAID, CELLECTIS

19   HASN'T WITHHELD ANYTHING.  CELLECTIS LOOKED AT THE

20   DOCUMENT REQUEST, SCHEDULED WHAT IT BELIEVED TO BE

21   PRIVILEGED IN GOOD FAITH, PRODUCED WHAT WAS RESPONSIVE

22   AND NOT PRIVILEGED.  WE ARE NOT WITHHOLDING ANYTHING.

23   THERE IS NO BASIS FOR THAT ALLEGATION.

24             IN TERMS OF CONTROL OVER THE PROSECUTION, THEY

25   CITED DR. CHOULIKA'S TESTIMONY IN THEIR OPENING BRIEF

1    WITH A SUGGESTION THAT SOMEHOW CELLECTIS CONTROLLED THE

2    PROSECUTION.  WHEN YOU ACTUALLY LOOK AT THE TESTIMONY,

3    DR. CHOULIKA SAYS WE HAVE AN EXCLUSIVE LICENSE, SO WE

4    HAVE CONTROL OF THE PATENTS IN THAT SENSE.

5            THEN THEY ASKED HIM DIRECTLY, DO YOU CONTROL

6    THE PROSECUTION.  HE SAID, I DON'T KNOW WHAT YOU MEAN BY

7    THAT, AND THERE WAS NO FOLLOW-UP QUESTION.  SO THERE IS

8    NO EVIDENCE THAT CELLECTIS CONTROLS THE PROSECUTION.  WE

9    DON'T HAVE CONTROL OVER THOSE DOCUMENTS.

10            BUT EVEN SETTING ASIDE THAT LACK OF CONTROL

11   OVER THE PROSECUTION, I DISAGREE WITH MS. FERRERA'S

12   SUMMARY OF THE DUPLAN CASE.  IN THAT CASE, THE COURT DID

13   RELY ON ARTICLE 378 OF THE FRENCH PENAL STATUTE WITH

14   REGARD TO DESCRIBING THE PRIVILEGE TO FRENCH PATENT

15   AGENTS WHO ARE UNDER AN OBLIGATION OF SECRECY IN TERMS OF

16   BUSINESS INFORMATION OR PROFESSIONAL INFORMATION RECEIVED

17   FROM THEIR CLIENTS, AND IT DID FIND SOME OF THE

18   COMMUNICATIONS BETWEEN A FRENCH PATENT AGENT AND CLIENT

19   WERE PRIVILEGED AND HE WOULD ACCORD THAT PRIVILEGE IN THE

20   U.S. ARTICLE.

21            THAT ARTICLE 3778 WAS SUPERSEDED BY AND

22   INCORPORATED INTO ORDER 2000-916.  THIS IS AT D.E. 118,

23   AND NOW IT'S EXPRESSED THAT FRENCH PATENT AGENTS ARE

24   COVERED BY THAT OBLIGATION OF SECRECY WHICH SHOULD ACCORD

25   THEM A PRIVILEGE.

1           WITH RESPECT TO -- AND THIS IS WHY THE MEET

2    AND CONFER AND GOING THROUGH THE LIST OF ACTUALLY

3    CHALLENGED DOCUMENTS WOULD HAVE BEEN SO HELPFUL HERE.

4    YOU CAN'T LOOK AT A DOCUMENT AND SAY THAT PERSON IS A

5    FRENCH PERSON AND THAT PERSON IS A FRENCH PERSON AND

6    THEREFORE THERE IS NO BASIS FOR PRIVILEGE.  THERE HAS TO

7    BE MORE TO IT.  IT COULD BE THAT THOSE TWO FRENCH PEOPLE

8    ARE DISCUSSING FOR THE PURPOSE OF THEIR COMPANY

9    CONFIDENTIAL U.S. LEGAL ADVICE FROM THEIR ATTORNEYS.

10   THERE IS PLENTY OF BASIS FOR ASSERTING PRIVILEGE, BUT I

11   CAN'T DO IT IN ABSTRACT.  I NEED THE OPPORTUNITY TO

12   CONFER WITH OPPOSING COUNSEL AND GO THROUGH PIECE BY

13   PIECE, AND THAT IS WHAT SEEMED TO HAVE OCCURRED IN THE

14   BURROUGHS WELLCOME CASE THAT JUDGE HOWARD HANDLED BECAUSE

15   HE LOOKED AT 300 DOCUMENTS AND ANALYZED THE LAW WITH

16   RESPECT TO WHERE EACH OF THE DOCUMENTS EMANATED FROM.

17   THE U.K., NO WAY, BUT HE LOOKED AT THE LAW WITH REGARD TO

18   EACH COUNTRY AND EACH DOCUMENT.  WE DIDN'T HAVE THAT

19   OPPORTUNITY.

20           THE COURT:  DRIVE ON.  I UNDERSTAND THE POINT.

21           MR. RICHTER:  IF WE CAN GO TO THE NEXT SLIDE,

22   PLEASE.  THIS IS JUST LARGELY SUMMARY OF WHAT I SAID,

23   THAT THERE IS PLENTY OF BASIS FOR ASSERTING PRIVILEGE

24   IRRESPECTIVE OF WHETHER THERE IS AN ATTORNEY NAMED IN A

25   DOCUMENT.  I THINK THAT IS BEYOND DISPUTE.  YOU CAN'T SAY

1    BASED ON THE PRIVILEGE LOG THAT IT'S NOT PRIVILEGED

2    BECAUSE IT DOESN'T NAME A U.S. ATTORNEY, AND I THINK WE

3    NEED THE OPPORTUNITY TO HANDLE THAT ON A POINT BY POINT

4    BASIS IF THEY ARE GOING TO CHALLENGE ANY SPECIFIC REQUEST

5    OR ANY SPECIFIC DOCUMENT ON THE LOG.

6            IF YOU WOULD GO TO SLIDE 22, PLEASE.

7    CELLECTIS BELIEVES, FROM ITS PERSPECTIVE, THAT INSTITUT

8    PASTEUR HAS COOPERATED.  PASTEUR, IN FACT, WAS THE

9    FIRST -- IT'S NOT A PARTY TO THE SUIT, BUT IT WAS THE

10   FIRST ENTITY TO PRODUCE ANYTHING OF RELEVANCE IN THIS

11   LAWSUIT WHEN IT PRODUCED OVER 5,000 PAGES OF LABORATORY

12   NOTEBOOKS BACK IN 2008, AND THOSE NOTEBOOKS RELATE TO THE

13   WORK THAT LED TO THE PATENTS-IN-SUIT.

14           AS I SAID, I HAVE BEEN DOING THIS 20 YEARS.

15   THAT IS TYPICALLY THE MOST CRITICAL INFORMATION IN ANY

16   PATENT LAWSUIT.  YOU WANT TO SEE THE INVENTORY,

17   LABORATORY NOTEBOOKS, AND WHAT WAS DONE BEFORE THE PATENT

18   FILING WAS MADE.  THIS IS A U.S. LAWSUIT.  SO, NATURALLY,

19   THE FINNEGAN FIRM WHICH PROSECUTED THE PATENTS-IN-SUIT

20   WOULD HAVE THE MOST RELEVANT DOCUMENTS ON THAT

21   PRODUCTION, AND THEY PRODUCED THEM, ABOUT 6,700 PAGES OF

22   DOCUMENTS.  THERE IS A LOT OF PRIVILEGES THERE.  I DON'T

23   THINK PRECISION DISPUTES THAT PASTEUR, THROUGH FINNEGAN,

24   IS ENTITLED TO ASSERT PRIVILEGE OVER ITS U.S. LAWYERS.

25           DR. DUJON, THE LEAD NAME INVENTOR AND

SCIENTIST AT PASTEUR WHO DEVELOPED THIS, ALONG WITH DR.
CHOULIKA, HE HAD NO OBLIGATION TO COME TO TESTIFY IN THIS
CASE. HE HAS NO -- THERE IS NOTHING RIDING ON THE CASE
FOR HIM. AS FAR AS I KNOW, HE HAS NO MONETARY INTERESTS.
HE SHOWED UP IN THE NEW YORK VOLUNTARILY FOR A U.S. STYLE
DEPOSITION. THAT IS FAR MORE INFORMATIVE TO THE
DEFENDANT THAN ANY HAGUE CONVENTION DEPOSITION I HAVE
EVER BEEN AT.

I DON'T KNOW IF YOUR HONOR HAS HAD THE
EXPERIENCE OF BEING TO A HAGUE CONVENTION DEPOSITION. I
HAVE. I HAVE BEEN IN COUNTRIES WHERE THE WITNESS TAKES
THE STAND AND GIVES TESTIMONY IN FRONT OF THE JUDGE AND
THAT IS NOT THE RECORD. THE JUDGE SAYS HERE IS WHAT THE
WITNESS SAID. HERE IS THE TESTIMONY, I AM GOING TO TELL
YOU WHAT HIS TESTIMONY IS. SO THEY HAVE HAD A
FREE-FLOWING U.S. DEPOSITION WITH DR. DUJON VOLUNTARILY.

DR. FAIRHEAD, ANOTHER INVENTOR AND PASTEUR
SCIENTIST, SHE AGREED TO VOLUNTARILY APPEAR FOR HER
DEPOSITION ON DECEMBER 10. A FEW DAYS BEFORE THAT DAY,
THEY CANCELED THE DEPOSITION. THEY COULD HAVE TAKEN HER
DEPOSITION. SHE WAS READY TO GO.

DR. BERNEMAN, FORMERLY IN THE PASTEUR PATENT
DEPARTMENT, SHE AGREED TO SHOW UP FEBRUARY 10 IN NEW YORK
OF THIS YEAR VOLUNTARILY FOR HER DEPOSITION. THEY
CANCELED AT THE LAST MINUTE. THERE IS A LOT OF DISCOVERY

1   THEY HAVE AVOIDED THROUGH CANCELLATION OF DEPOSITION.

2   DR. BERNEMAN WAS IN THE PASTEUR PATENT DEPARTMENT WHEN

3   THE PATENT WAS FILED.  YOU CAN'T SAY WE WERE NOT GIVING

4   INFORMATION WHEN SHE WAS WILLING TO SHOW UP FOR THE

5   DEPOSITION IN NEW YORK AND THEY WOULDN'T TAKE THE

6   DEPOSITION.

7           IF YOU WOULD TURN TO THE NEXT SLIDE, PLEASE.

8   THE OTHER CONCERN THAT CELLECTIS HAS WITH RESPECT TO THE

9   MOTION, YOUR HONOR, IS THAT, AS I MENTIONED, THERE ARE 13

10  MEMBERS OF THE PATENT FAMILY.  IT'S NOT JUST THE TWO

11  PATENTS IN THE SUIT.  THERE ARE 11 OTHER PATENTS.  AS YOU

12  KNOW FROM EXHAUSTIVE ARGUMENT EARLIER THIS MORNING, FOUR

13  OF THE PATENTS ARE NOW IN REEXAMINATION -- THE TWO

14  DIFFERENT, BUT UNRELATED, AND THE TWO PATENTS-IN-SUIT.

15          THERE HAS BEEN A LETTER WRITING CAMPAIGN WITH

16  CELLECTIS WITH COPIES TO PASTEUR STARTING LAST SEPTEMBER

17  WHERE PRECISION HAS INDICATED THAT THEY ARE GOING TO TRY

18  TO REEXAMINE ALL OF THE PATENTS IN THE 13 MEMBER FAMILY,

19  AND BEYOND THAT, ANY PATENTS YOU HAVE.  SO PASTEUR AND

20  CELLECTIS, IF YOU HAVE ANY PATENTS ON ANYTHING, WE ARE

21  COMING AFTER THAT ON REEXAMINATION.  THAT IS WHAT THEY

22  HAVE TOLD THEM IN WRITING A BUNCH OF TIMES, AND FROM

23  CELLECTIS' STANDPOINT, THAT IS FINE.

24          WE ARE IN LITIGATION.  I CAN ONLY ASSUME -- I

25  DON'T KNOW -- BUT I CAN ONLY ASSUME WHAT PASTEUR WOULD

1    THINK WHEN SOMEONE SAID YOU BETTER VOLUNTARILY COOPERATE,

2    I AM NOT GETTING ENOUGH COOPERATION OUT OF YOU.  AT THE

3    SAME TIME, THEY ARE SAME SAYING, I AM GOING AFTER EVERY

4    SINGLE ONE OF THE PATENTS.  THEY AGREED TO VOLUNTARILY

5    COOPERATE WITH REGARD TO THE TWO PATENTS-IN-SUIT WITH

6    REASONABLE DISCOVERY REQUESTS.

7            THERE IS A BIG DIFFERENCE BETWEEN THAT AND

8    SAYING HAND OVER EVERYTHING YOU HAVE GOT ON THAT PATENT

9    FAMILY, AND BY THE WAY, I AM GOING AFTER ALL THE PATENTS

10   IN THE PATENT OFFICE.  THOSE TWO THINGS ARE COMPLETELY

11   DIAMETRICALLY OPPOSED.

12           THE COURT:  I UNDERSTAND, MR. RICHTER.  DRIVE

13   ON.  I HEAR YOUR POINT.

14           MR. RICHTER:  THAT IS LARGELY IT, YOUR HONOR.

15   I WOULD SAY WE HAVEN'T WITHHELD ANYTHING.  EVERYTHING ON

16   THE PRIVILEGE LOG IS PROPERLY DISCUSSED.  WE WERE WILLING

17   TO DISCUSS IT.  WE DON'T BELIEVE WE HAD THE OPPORTUNITY.

18           AND THE REMAINING SLIDES ARE LARGELY ON THE

19   INEQUITABLE CONDUCT WHICH WE DISPUTE AND WHICH I

20   ADDRESSED DURING THE MOTION TO STAY.

21           MY FINAL NOTE IS SIMPLY THAT -- WELL, I THINK

22   I WILL STOP WITH THAT.  THANK YOU, YOUR HONOR.

23           THE COURT:  MS. LI MADE THE TROUBLE OF GOING

24   UP THERE.  SO WHAT -- YOU DON'T HAVE TO, BUT MS. FERRERA

25   WAS MAKING NOTES, AND MS. LI, SO I WOULD SAY I HAVE GREAT

1    CONFIDENCE ON BOTH OF THE COLLEAGUES.

2            MR. RICHTER:  IT IS A GOOD POINT, AND I WILL

3    SAY HERE THAT THE POINT OF THE NOTE IS THAT THEY AGREED

4    TO COOPERATE WITH VOLUNTARY DISCOVERY.  WITH REASONABLE

5    REQUESTS, PEOPLE WERE WILLING TO COME HERE.  DR. DUJON

6    DID COME HERE.  IF THEY DIDN'T THINK THEY WERE GETTING

7    THAT LEVEL OF COOPERATION THAT THEY ANTICIPATED, THEY

8    DIDN'T ATTEMPT TO GET IT ANY OTHER WAY.  THEY DIDN'T TRY

9    TO GO TO THE HAGUE.

10            THE COURT:  MS. FERRERA, DO YOU WANT TO

11    BRIEFLY RESPOND?  MS. FERRERA, I AM GOING TO CUT TO THE

12    CHASE.  I AM MOST CONCERNED BY THE PLAINTIFF'S PRIMARY

13    ARGUMENT THAT THE SPECIFIC DISPUTES WEREN'T IDENTIFIED

14    AND THAT IS TROUBLING TO ME IN TRYING TO DRAFT ANY ORDER

15    ADDRESSING YOUR CONCERNS.

16            MS. FERRERA:  AND I THINK, YOUR HONOR, ON THAT

17    POINT WHERE IT'S WHETHER IT'S 3,000 ENTRIES OR 1,700

18    ENTRIES ON THE PRIVILEGE LOG, I DON'T THINK THAT -- THOSE

19    ARE BOTH BIG NUMBERS, AND THE ISSUE IS NOT THAT IT WAS

20    ONE DOCUMENT OR FIVE DOCUMENTS OR TEN DOCUMENTS THAT WERE

21    A PROBLEM.  THERE ARE HUNDREDS OF ENTRIES ON THE

22    PRIVILEGE LOG THAT IMPLICATE THE PRIVILEGE CONCERNS THAT

23    WE ARE TALKING ABOUT HERE.

24            THE COURT:  BUT FOR ME TO RULE, I HAVE TO KNOW

25    WHICH DOCUMENTS AND THE SPECIFIC ISSUES BECAUSE I DON'T

1    KNOW ANY OF THESE PEOPLE.  IT MAKES IT VERY DIFFICULT

2    WITHOUT IDENTIFYING WITH SPECIFICITY EXACTLY WHAT YOU

3    ASSERT IS NOT SUBJECT TO THE PRIVILEGE.

4              MS. FERRERA:  WELL, I THINK, YOUR HONOR, WHERE

5    THE DISPUTE BETWEEN THE PARTIES IS WHETHER OR NOT A

6    PRIVILEGE APPLIES TO FOREIGN PATENT AGENTS OR FOREIGN

7    IN-HOUSE COUNSEL, CELLECTIS' POSITION, WHICH THEY HAVE

8    STATED IN THEIR BRIEFS, IS THAT THERE IS A PRIVILEGE FOR

9    THOSE INDIVIDUALS.

10             OUR POSITION IS THAT THERE IS NOT, AND I THINK

11   IF YOU RULE ON THAT ISSUE, THAT WILL CUT THROUGH A LOT OF

12   THE INDIVIDUAL QUESTIONS ON THE DOCUMENTS, AND IF THERE

13   ARE STILL SPECIFIC DOCUMENTS THAT BASED ON THAT GUIDANCE

14   FROM YOUR HONOR ABOUT WHETHER OR NOT THERE IS A PRIVILEGE

15   THAT APPLIES TO THOSE INDIVIDUALS, IF THERE ARE STILL

16   DOCUMENTS THAT WE HAVE DISPUTE ABOUT, THEN WE CAN ATTEMPT

17   TO NARROW IT FURTHER.  BUT AT THIS POINT, IT'S A

18   FUNDAMENTAL DISPUTE ABOUT WHETHER OR NOT THERE IS A

19   PRIVILEGE THAT APPLIES TO THOSE COMMUNICATIONS WHERE

20   THERE IS NO, ON THE FACE OF IT, NO U.S. PATENT ATTORNEY

21   INVOLVED THAT WOULD OTHERWISE CREATE A PRIVILEGE.

22             SO I DON'T THINK IT'S NECESSARILY NECESSARY

23   FOR YOU TO REVIEW INDIVIDUAL ENTRIES BECAUSE THIS IS A

24   BLANKET -- THIS IS A MORE FUNDAMENTAL DISPUTE ABOUT

25   WHETHER THERE IS A PRIVILEGE.

1          THE COURT:  I WANT TO LET MR. RICHTER RESPOND

2     TO THAT SPECIFIC ISSUE, IF YOU ARE PREPARED TO.

3          MR. RICHTER:  THE DIFFICULTY I HAVE WITH THAT

4     ISSUE IS JUST THIS.  I THINK THE CASE LAW, IF IT SHOWS

5     ANYTHING WITH REGARD TO FOREIGN PATENTS, PROVIDES THAT IT

6     IS COUNTRY BY COUNTRY, AND I THINK THAT IS THE ANALYSIS

7     THAT JUDGE HOWARD WENT THROUGH.

8          I DON'T BELIEVE THERE IS A UNIFORM LAW THAT

9     SAYS PATENT AGENTS IN EVERY SINGLE COUNTRY IN THE WORLD

10    ARE NOT ENTITLED TO A PRIVILEGE.  I THINK YOU LOOK AT THE

11    LAW OF THE COUNTRY AND ANALYZE IT COUNTRY BY COUNTRY.

12         MS. FERRERA:  YOUR HONOR, I HAVE TO DISAGREE

13    WITH THAT.  I THINK WHAT THE DUPLAN CASE SAYS AND WHAT

14    THE BURROUGHS WELLCOME CASE SAYS WITH RESPECT TO THE

15    ISSUE OF PATENT PROSECUTION OF U. S. PATENT APPLICATIONS,

16    FOREIGN PATENTS, AGENTS, JUST LIKE U.S. PATENT AGENTS, DO

17    NOT CREATE A PRIVILEGE.  YOU HAVE TO LOOK AT INDIVIDUAL

18    COUNTRY'S LAWS TO DETERMINE WHETHER THERE IS ANY

19    PRIVILEGE.  THAT ONLY ARISES WHEN A COMMUNICATION IS AT

20    ISSUE, ARE COMMUNICATIONS RELATING TO PROSECUTION OF

21    PATENTS IN THOSE FOREIGN COUNTRIES.

22         AND THAT IS WHAT THE DUPLAN CASE AND THAT IS

23    THE PORTION OF THE DECISION THAT MR. RICHTER RELIED UPON

24    EARLIER.  THAT IS WHAT THE JUDGE IN THAT CASE WAS TALKING

25    ABOUT.  THAT IS NOT AN ISSUE HERE BECAUSE CELLECTIS HAS

1    SAID THERE ARE NO FOREIGN APPLICATIONS WE ARE TALKING

2    ABOUT.  THESE ARE ALL U.S. PATENT APPLICATIONS.

3              THE COURT:  MR. RICHTER, I WOULD GIVE YOU A

4    CHANCE TO RESPOND.  MS. FERRERA, DRIVE ON.

5              MS. FERRERA:  JUST TO CLOSE THE LOOP ON THIS

6    ISSUE ABOUT WHETHER OR NOT YOU NEED ADDITIONAL GUIDANCE

7    IN TERMS OF PARTICULAR DOCUMENTS, IF YOU THINK THAT WOULD

8    BE HELPFUL, WE WOULD BE HAPPY TO MEET AND CONFER WITH

9    CELLECTIS AND REPORT BACK WITHIN THE NEXT TEN DAYS,

10   ALTHOUGH AS I INDICATED, I THINK THERE IS A FUNDAMENTAL

11   ISSUE THAT COULD BE RESOLVED AND THAT WOULD HELP IN

12   NARROWING THAT ISSUE.

13             IN ADDITION, YOUR HONOR, CELLECTIS ATTEMPTS TO

14   MAKE THIS ARGUMENT BASED ON THE DISQUALIFICATION MOTION

15   THAT IT FILED RECENTLY.  I AM NOT GOING TO GET INTO THE

16   MERITS OF THAT MOTION, YOUR HONOR.  THAT IS NOT BEFORE

17   THE COURT TODAY.

18             HOWEVER, I WILL SAY THAT THEIR ARGUMENT

19   APPEARS TO BE THAT BECAUSE WE HAVE STATED THAT CONDUCT,

20   THAT THERE WAS CERTAIN CONDUCT THAT OCCURRED AFTER JULY

21   OF 1998 OR AFTER JANUARY 2000, THAT INFORMATION EARLIER

22   THAN THAT IS NOT RELEVANT AND THAT JUST DOESN'T MAKE ANY

23   SENSE.

24             EVEN IN THE BASIS FOR THE INEQUITABLE CONDUCT,

25   THE NON-DISCLOSURE DIDN'T OCCUR UNTIL AFTER 1998.  THERE

1    CERTAINLY MAY BE INFORMATION IN THE FILES OF INSTITUT

2    PASTEUR OR UPMC OR IN CELLECTIS' FILES THAT IS RELEVANT

3    TO THE INEQUITABLE CONDUCT CLAIMS IN TERMS OF WHO KNEW

4    WHAT WHEN THAT PREDATES THE JULY 1998 AND JULY 2000

5    DATES.

6         WITH RESPECT TO THE ISSUE OF THE DOCUMENTS IN

7    THE POSSESSION OF INSTITUT PASTEUR AND UPMC, AGAIN,

8    CELLECTIS MAKES THIS ARGUMENT THAT THERE WAS A MOTION TO

9    DISMISS HEARING.  WE DIDN'T RAISE THE MOTION TO COMPEL AT

10   THAT TIME.  THE REASON WE DIDN'T RAISE IT, YOUR HONOR, IS

11   BECAUSE WE WERE HOPING THAT WE WOULD PREVAIL ON THE

12   MOTION AND EITHER THE CASE WOULD BE DISMISSED OR THAT THE

13   PATENT HOLDERS WOULD BE ADDED AS PLAINTIFFS TO THE CASE.

14        IF THAT HAD HAPPENED, THEN ALL OF THE ISSUES

15   RELATING TO THE DISCOVERY FROM THOSE PARTIES WOULD HAVE

16   BEEN DEALT WITH EASILY BECAUSE WE WOULD BE ABLE TO SERVE

17   DISCOVERY REQUESTS ON THEM.  SO THE MOTION TO COMPEL ONLY

18   BECAME NECESSARY WITH RESPECT TO THOSE DOCUMENTS AFTER

19   THE MOTION TO DISMISS WAS DECIDED.

20        FINALLY, YOUR HONOR, WITH RESPECT TO THE

21   DEPOSITION THAT MR. RICHTER NOTED, DEPOSITIONS OF

22   PROFESSOR DUJON AND DR. FAIRHEAD AND DANIELLE BERNEMAN,

23   PARTICULARLY MS. BERNEMAN, SHE IS, AS MR. RICHTER SAID,

24   SHE IS IN THE PATENT DEPARTMENT OF INSTITUT PASTEUR.  SHE

25   CERTAINLY HAS RELEVANT KNOWLEDGE, BUT IT DOES US NO GOOD

1    TO GO FORWARD WITHOUT HER DOCUMENTS.  THERE IS NO WAY TO

2    TEST THE ACCURACY IF WE DON'T HAVE DOCUMENTS TO DETERMINE

3    WHETHER OR NOT WHAT SHE SAID IS TRUE.

4            I THINK THAT'S ALL I HAVE AT THIS POINT, YOUR

5    HONOR.

6            THE COURT:  ALL RIGHT.  MR. RICHTER, YOU ARE

7    CHOMPING AT THE BIT TO SAY SOMETHING.

8            MR. RICHTER:  I WILL BE BRIEF, I PROMISE.

9    JUST TO CLARIFY, I THINK DR. BERNEMAN NO LONGER WORKS AT

10   PASTEUR, BUT I BELIEVE SHE WAS IN THE PASTEUR DEPARTMENT,

11   IN CASE THERE IS CONFUSION.  I DON'T THINK THAT IS

12   RELEVANT.

13           BUT IN TERMS OF PRIVILEGE, AS I UNDERSTAND, IF

14   I UNDERSTAND CORRECTLY WHAT MS. FERRERA IS SAYING, SHE IS

15   SAYING IF THERE ARE DOCUMENTS FROM A FOREIGN PATENT AGENT

16   WITH RESPECT TO U.S. PROSECUTION, THEY WOULD ARGUE THAT

17   THOSE ARE NOT PRIVILEGED.  I DON'T KNOW.  I THINK EVEN

18   THAT DEPENDS ON A DOCUMENT BY DOCUMENT ANALYSIS.

19           I AM NOT AWARE OF ANY SUCH DOCUMENTS OFF THE

20   TOP OF MY HEAD.  AS I SAID, WE HAVE 1,700 DOCUMENTS ON

21   THE LOG.  THEY HAVE 4,500.  I DOUBT THEY KNOW THE

22   CONTENTS OF EACH OF THEIR DOCUMENTS ON THEIR LOG EITHER.

23   BUT I CAN THINK OF SCENARIOS WHERE THAT WOULD BE

24   PRIVILEGED IF THAT PERSON WAS WORKING WITH THE U.S.

25   LAWYERS, FOR EXAMPLE.

1          SO YOU CAN'T -- THIS IS NOT AMENABLE TO A

2    BLANKET DETERMINATION OF WHETHER SOMETHING IS PRIVILEGED

3    OR NOT.

4          HAVING SAID THAT, AS BEFORE, WE WELCOME THE

5    OPPORTUNITY TO CONFER ON A DOCUMENT BY DOCUMENT BASIS

6    BECAUSE AS I LOOK AT THE CASE LAW, THAT SEEMS TO HAVE

7    HAPPENED IN VIRTUALLY EVERY INSTANCE OF CITED CASE LAW,

8    AND THE REASON FOR THAT IS BECAUSE PRIVILEGE IS A

9    SPECIFIC INQUIRY AND IT DEPENDS ON THE CONTENTS, AND WE

10   ARE HAPPY TO DO THAT, BUT WE DON'T THINK IT'S FAIR TO

11   SUBJECT US TO A BLANKET ORDER BECAUSE I DON'T THINK YOU

12   CAN CRAFT ONE THAT COVERS ALL 1,700 DOCUMENTS.

13   THANK YOU, YOUR HONOR.

14          THE COURT:  THANK YOU, MR. RICHTER.  ALL

15   RIGHT.  MR. BASSETT, I THINK THAT'S ALL I HAVE ON MY

16   PLATE.  DO YOU HAVE ANYTHING ELSE?

17          MR. BASSETT:  NOTHING FROM PRECISION.

18          THE COURT:  I HAVE SOMETHING ELSE FOR YOU.

19   ALL RIGHT.  MR. BASSETT, I AM GOING TO PUT YOU ON THE

20   SPOT BECAUSE YOU HAVE DONE SUCH A GOOD JOB, BUT I AM

21   GOING TO PUT MR. RICHTER AND HIS COLLEAGUES IN THE SAME

22   SPOT.

23          IF I WERE TO DENY THE MOTION TO STAY OR THE

24   MOTION TO STAY WERE TO BE DENIED, WHAT IS A REASONABLE

25   TIME TABLE FOR THE CASE TO PROCEED?  AND I HATE TO ASK

1    YOU THAT OFF THE CUFF, BUT HOW WOULD YOU SEE THE CASE?

2              I WILL ALLOW YOU TO CONFER, AND I WOULD ASK

3    THE PLAINTIFFS TO CONFER, ALSO.

4              MR. BASSETT:  YOUR HONOR, THE STEPS THAT FROM

5    OUR NOTES WOULD NEED TO BE COMPLETED ARE COMPLETING THE

6    REMAINING FACT DISCOVERY IN LIGHT OF THE MOTION TO

7    COMPEL.  WE THINK THAT WOULD REASONABLY TAKE ABOUT A

8    MONTH AND A HALF AFTER THE RULING.

9              CLAIM CONSTRUCTION NEEDS TO BE ARGUED AND

10   DECIDED.  OBVIOUSLY, THAT SCHEDULE IS WITHIN THE CONTROL

11   OF THE COURT.  WE WOULD SUGGEST THAT THEN THERE ARE THREE

12   ROUNDS OF EXPERT REPORTS.  IT WOULD MAKE SENSE TO HAVE

13   THE COURT'S GUIDANCE ON CLAIM CONSTRUCTION BEFORE THE

14   EXPERT REPORTS WERE COMPLETED, BUT AGAIN, DEPENDING ON

15   THE ORDER, WE WOULD THINK THAT A REASONABLE TIME FRAME

16   FOR THE EXPERT DISCOVERY WOULD BE ABOUT THREE MONTHS TO

17   GET THE REPORTS DONE AND HAVE EXPERT DEPOSITIONS.

18             AFTER THAT POINT, WE THINK THERE SHOULD BE A

19   PERIOD OF TIME FOR BRIEFING AND ARGUING OF DISPOSITIVE

20   MOTIONS.

21             THE COURT:  HOW LONG DO YOU THINK IT WOULD

22   TAKE?  DO YOU THINK IT WOULD TAKE MORE THAN 30 DAYS AFTER

23   THE EXPERTS' DISCOVERY IS DISCLOSED TO PREPARE

24   DISPOSITIVE MOTIONS?

25             MR. BASSETT:  I THINK THAT IS A REASONABLE

1   TIME PERIOD TO FILE THE MOTION.

2           THE COURT:  BEYOND THAT, I HAVE IT UNDER

3   CONTROL.  I AM LOOKING TO SEE WHAT YOU WANT ALONG THAT.

4   SO A MONTH AFTER EXPERT DISCOVERY TO FILE DISPOSITIVE

5   MOTIONS.

6           MR. BASSETT:  I THINK THAT IS A PERFECTLY

7   REASONABLE TIME FRAME.

8           THE COURT:  ALL RIGHT.  MR. RICHTER, SEE IF

9   YOU CAN DO IT AS WELL.

10          MR. RICHTER:  I GENERALLY AGREE.

11          THE COURT:  WELL, THAT IS ALWAYS GOOD TO HEAR.

12          MR. RICHTER:  SO I THINK THE MOST IMPORTANT

13  THING WOULD BE THE MARKMAN HEARING WHICH BECAUSE OF THE

14  WAY THIS CASE IS SET UP UNDER THE NEW LOCAL PATENT RULES,

15  WE HAVE ALREADY DONE THE EXPERT DISCOVERY ON CLAIM

16  CONSTRUCTION, SO YOU CAN HAVE A HEARING RIGHT AWAY ON

17  THAT, WHICH WOULD FACILITATE EXPERTS' DISCOVERY AND

18  DISPOSITIVE MOTION PRACTICE, SO I GENERALLY AGREE WITH

19  THAT.

20          IT SEEMS TO ME THAT THE CASE COULD BE TRIAL

21  READY IN MAYBE SIX MONTHS OR SO MAYBE UNDER THAT KIND OF

22  SCHEDULE.

23          THE COURT:  THAT IS ABOUT WHERE MR. BASSETT

24  HAS INDICATED, THE SAME.

25          MR. RICHTER:  YES.

1          THE COURT:  WELL, ACTUALLY NOT.  YOU HAVE --
2  YOU WOULD HAVE DISPOSITIVE MOTIONS IN SIX MONTHS.
3          MR. BASSETT:  WE WOULD APPRECIATE THE
4  OPPORTUNITY TO HAVE RULINGS BEFORE.
5          THE COURT:  ABSOLUTELY.  AND MR. BASSETT,
6  PLEASE, THIS IS NOT MEANT TO TELEGRAPH THAT THE MOTION TO
7  STAY WOULD BE DENIED.  I AM TRYING TO GET THE BIG PICTURE
8  ON THAT.
9          DO YOU AGREE WITH MR. RICHTER THAT THE CLAIM
10  CONSTRUCTION, WERE THE MOTION TO STAY TO BE DENIED, THAT
11  I COULD PROCEED FAIRLY EXPEDITIOUSLY, THE MARKMAN HEARING
12  COULD BE HELD WITH REASONABLE NOTICE.
13          MR. BASSETT:  ABSOLUTELY, YOUR HONOR.
14          THE COURT:  OKAY.  THANK YOU.  ALL RIGHT.  MR.
15  RICHTER AND MR. BASSETT, ANYTHING FURTHER THAT WE CAN DO
16  TODAY TO ASSIST THE PARTIES?
17          MR. RICHTER:  NOTHING FROM OUR SIDE.
18          MR. BASSETT:  NOTHING FROM US, YOUR HONOR.
19          THE COURT:  ALL RIGHT.  I AM HOPING TO GET AN
20  ORDER OUT ON THE DEFENDANT'S TWO MOTIONS PRETTY QUICKLY,
21  CERTAINLY BY SOME TIME NEXT WEEK, SO WE WILL HAVE SOME
22  RULING ON THAT.
23          ALL RIGHT.  IF THERE IS NOTHING FURTHER, I
24  COMMEND ALL COUNSEL ON THE ARGUMENTS AND APPRECIATE THE
25  THOUGHT YOU PUT INTO THIS MATTER, AND YOU ALL PUT A LOT

1    OF THOUGHT.  ALL RIGHT.

2              COURT WILL STAND IN RECESS.

3              (WHEREUPON, THE PROCEEDINGS WERE ADJOURNED.)

4

5

6

7

8                        CERTIFICATE

9

10             THIS IS TO CERTIFY THAT THE FOREGOING

11   TRANSCRIPT OF PROCEEDINGS TAKEN IN THE UNITED STATES

12   DISTRICT COURT IS A TRUE AND ACCURATE TRANSCRIPTION OF

13   THE SHORTHAND NOTES OF THE PROCEEDINGS TAKEN BY ME IN

14   MACHINE SHORTHAND AND TRANSCRIBED BY COMPUTER UNDER MY

15   SUPERVISION.

16             DATED THIS 2ND DAY OF JULY, 2010.

17

18

19                              /S/ SHARON K. KROEGER
                                COURT REPORTER
20

21

22

23

24

25